Exhibit 1001

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,  )
SECRETARY OF LABOR, UNITED  )
STATES DEPARTMENT OF LABOR,  )
                                  )
             Plaintiff,  )     Case No. 5:18-cv-01194-GEKP
                                    )
   vs.            .       )
                                    )
EAST PENN MANUFACTURING  )
COMPANY,  )
             Defendant.

## DECLARATION OF KEVIN D. BORDER

1.     My name is Kevin D. Border and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.     I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since August 4, 1986. My current position is Assistant Senior Supervisor in the Motive Power Division. I work, primarily, in the S-1 and Industrial Plants. I have worked in that role since January 2019. I previously worked as a COS Foreman in the S-1 Plant from June 22, 2014 through January of 2019. In my role as COS Foreman at the S-1 Plant I supervised Brett Meeks, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.     As a COS Foreman in the S-1 Plant I worked from 6:30 am to 3:30 pm. As part of that job I supervised about 50 workers in the COS Department, including Brett Meeks, who worked for me as a COS takeoff on the first shift.

4.     Mr. Meeks' scheduled work shift as a COS takeoff under my supervision was from 7:00 am through 3:00 pm.

Ex. 1001-01

5. I did not tell my workers that they had to be on the production floor before their shift start time. Additionally, COS takeoffs were not required to complete their first piece inspection reports before their shift start time. In other words, Mr. Meeks was not required to complete his first piece inspection report before 7:00 am. In fact, Mr. Meeks routinely showed up to the work floor after his shift start time, which was okay with me. I was very lenient with my employees in regards to when they would show up to the work floor after changing into their work uniform. As long as the employees arrived a reasonable amount of time after their shift start time it was okay with me.

6. There are no tools the COS takeoff employees must pick up on their walk from the locker room to the work floor. Rather, all tools a COS takeoff would need are available in the department.

7. I have never disciplined an employee for arriving to the production floor after their shift start time.

8. COS takeoffs were required to clean-up their workstation before being released to the locker rooms to shower and change back into their street clothes. The clean-up performed by the COS takeoffs did not involve waiting until the machine "ran out of a batch" as Mr. Meeks suggests in his declaration. There are no "batches" of any kind for the COS machines.

9. I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17___ day of _Feb_ 2020 in Lyon Station, Pennsylvania.

_____
Kevin Border

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,  )
SECRETARY OF LABOR, UNITED  )
STATES DEPARTMENT OF LABOR,  )
)
                Plaintiff,  )    Case No. 5:18-cv-01194-GEKP
)
vs.  )
)
EAST PENN MANUFACTURING  )
COMPANY,
                Defendant.

### DECLARATION OF HEIDY COLDREN

1.     My name is Heidy Coldren and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.     I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since October 17, 2011. My current position is a Foreperson in the Industrial Automotive Plant in the Fill, Form, and Finish Department on the first shift. I have worked in that role since June 2017. I previously worked as a Leader in the same department beginning in September 2016. In my role as Leader and Foreperson in the Industrial Automotive Plant I supervised Angela Acevedo, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.     I currently work Monday through Friday from are 5:30 am to 3:00 pm. My current work schedule as a Foreperson is the same as my work schedule as a Leader.

4.     Ms. Acevedo worked a weekend shift (Friday, Saturday, Sunday, and Monday; 10 hours per day) which began at 4:45 am and ended at 2:45 pm.

Ex. 1001-02

5.     I never told Ms. Acevedo that she must arrive on the production floor at her scheduled shift time nor did I tell her that she would be subject to discipline if she arrived to the production floor after her scheduled shift start time. I have never disciplined an employee for arriving to the production floor after their shift start time.

6.     I have always given the employees in my department a reasonable amount of time to arrive on the production floor after their shift start time.

7.     I usually release employees from the production floor thirteen minutes before their shift end time. For example, in Ms. Acevedo's case, I released her from the production floor at about 2:32 pm, which is thirteen minutes before her 2:45 paid shift end time.

8.     It takes employees in my department, on average, about two minutes to walk from the department on the production floor to the locker room.

9.     I shower at the end of my work shift in one of many individual shower stalls in the women's locker room. I have never had to wait 7-10 minutes to shower. And, I have never heard of anyone having to wait that long to shower at the end of their work shift.

10.    I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____17____ day of _February_ 2020 in Lyon Station, Pennsylvania.

Heidy Coldren

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
SECRETARY OF LABOR, UNITED⠀⠀)
STATES DEPARTMENT OF LABOR,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀)⠀⠀⠀Case No. 5:18-cv-01194-GEKP
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
EAST PENN MANUFACTURING⠀⠀⠀)
COMPANY,
⠀⠀⠀⠀⠀⠀⠀Defendant.

### DECLARATION OF JARRETT W. COLEMAN

1.⠀⠀⠀⠀My name is Jarrett Coleman and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.⠀⠀⠀⠀I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since June 23, 2008. My current position is Senior Supervisor for Gridmaking Motive Power and Reserve Power in the Industrial Division. I have worked in that role since May 2019. I previously worked as Assistant Senior Supervisor for Automotive Gridmaking. I held that role from February of 2015 through May 2019. Before that I worked as Foreman in A4 Gridmaking beginning in March of 2014. Before that I worked as a Leader in A4 Gridmaking beginning in November 2013. In my role as Leader and Foreman in A4 I supervised Edwin Barnhart and Evan Sychterz. I understand that both Mr. Barnhart and Mr. Sychterz submitted declarations in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.⠀⠀⠀⠀My hours as a Foreperson were 2:00 to 11:00 pm (second shift). As a Leader I also worked the same hours on second shift.

**Ex. 1001-03**

4.      The A4 parking lot is enormous.  It is probably the largest parking lot on East Penn's Lyon Station campus.  I have never had a problem finding a parking space and I have not received a complaint from any employee about finding a parking space.

5.      Employees who are waiting at the time clock are usually waiting to scan out for the day, after they have showered and changed back into their street clothes.

6.      Mr. Barnhart and Mr. Sychterz were not required to check in with me when arriving on the production floor.

7.      I have never held a meeting on the production floor at the beginning of an employee's paid shift time.

8.      Both Mr. Barnhart and Mr. Sychterz arrived to the production floor on or around their paid shift start time.

9.      I have never disciplined an employee for arriving to the production floor after their paid shift start time.

10.     Mr. Barnhart and Mr. Sychterz were not required to perform any first piece inspection reports.

11.     I have never received any complaint of any kind from Mr. Barnhart, including any complaint that he was not paid for time spent: (1) getting dressed in his uniform; (2) putting on his PPE; (3) undressing; and/or (4) showering.  In fact, I have not received any complaint from any employee in regards to these four categories.

12.     Employees were usually released from the production floor 12 or 13 minutes before their paid shift end time.

13.     I have never waited to shower.

14.  It would take me 3 minutes, at the very most to walk from the far end of the parking lot to A-4 plant doors.

15.  Mr. Barnhart and Mr. Schertz did not perform calibration checks under my supervision.  Rather, employees in the calibration department would perform the calibration checks.

16.  I have always had a clean towel in the men's locker room.

17.  I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____17th_____ day of _FEBRUARY_ 2020 in Lyon Station, Pennsylvania.

Jarrett Coleman
Jarrett Coleman

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,                       )
SECRETARY OF LABOR, UNITED           )
STATES DEPARTMENT OF LABOR,          )
                                     )
               Plaintiff,            )          Case No. 5:18-cv-01194-GEKP
                                     )
       vs.                           )
                                     )
EAST PENN MANUFACTURING              )
COMPANY,                             
               Defendant.

## DECLARATION OF BILL GALL

      1.      My name is Bill Gall.  I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

      2.      I am employed by East Penn Manufacturing Company ("Company") and currently work as a weekend Shift Leader in the A4 plant.  I previously worked as a weekend Shift Leader in the A3 plant from 2013 until February 2017.   When I worked in the A3 plant, I supervised Benjamin Garcia when he worked on the Finish Line.

      3.      When I was Shift Leader in the A3 plant, employees sometimes arrived a few minutes after their shift start time.  In such instances, the employee was not disciplined or written up.  The only employee that I wrote up for late arrival habitually (almost every day) arrived to the line around 7-9 minutes after the start of paid time.

      4.      I have never heard of a supervisor telling an employee to arrive five minutes before the shift start, and I never told Mr. Garcia that.  On the "dry" end of the Finish Line, where Mr. Garcia worked, the first five minutes of the shift are spent doing first-piece paperwork, so there is no production need to arrive early.

      5.      The dry end of the Finish line does not accumulate lead dust, and there is no requirement for employees to vacuum when leaving the floor.

1

Ex. 1001-04

6.      I never asked Mr. Garcia or any other employee to stay 3 to 8 minutes past dismissal time at 2:35 pm (for 2:45 pm end of shift).  In fact, on the weekend shifts that I supervised, I often dismissed employees two to three minutes early (2:32 or 2:33 pm).   Employees that I supervised were always allowed to leave at least 10 minutes before the end of paid shift.

7.      Right before dismissal time from the line, Finish Line employees in A3 would congregate near the stairwell leading to the locker room.  This means that their walk to the locker room was much less than 2 to 3 minutes, more like 45 seconds.

8.      The men's locker room in A3 has more than 20 showerheads.  There are actually two shower areas in that locker room, with a total of over 40 showerheads.

9.      I have never written any employee up for clocking out more than 14 minutes after the end of shift.  Mr. Garcia never complained to me about having to stay late to do extra work or to clean more.

10.      I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17th___ day of ___FEBRUARY___ 2020 in Lyon Station, Pennsylvania.

_William S Gall_
Bill Gall

Ex. 1001-05

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA, )
SECRETARY OF LABOR, UNITED )
STATES DEPARTMENT OF LABOR, )
                      )
                 Plaintiff, )     Case No. 5:18-cv-01194-GEKP
                      )
vs. )
                      )
EAST PENN MANUFACTURING )
COMPANY,
                 Defendant.

## DECLARATION OF BRYAN HEFFNER

1.      My name is Bryan Heffner and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since August 26, 1985. My current position is COS Foreman in the Industrial Plant. I work the first shift, from 5:45 am through 2:45 pm. I have worked in that role since March of 2012. I supervised Roberto Medina while he worked in the Industrial Plant. I understand Mr. Medina submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.      Mr. Medina was employed as a utility floater, which means that he was trained to work any job in the department. His job assignment changed daily. He would receive his job assignment each day after the beginning of his paid work shift and after I determined staffing issues for the day. I made my staffing decisions for the utility floater position, usually, 15 minutes after the beginning of their paid shift start time. In other words, I usually gave Mr. Medina his daily work assignment at about 6:00 am, after I determined which employees in the

department were present. While waiting on paid time to receive his daily job assignment, Mr. Medina was permitted to, and did, socialize with his coworkers.

4.      I allow, and have always allowed, employees in my department to arrive to the production floor up to 5 minutes after the beginning of their paid shift start time.

5.      I have never disciplined an employee for arriving to the production floor after the beginning of their paid shift start time.

6.      Mr. Medina usually arrived on the production floor at or after the beginning of his paid shift start time.  Mr. Medina, on some occasions, would arrive to the production floor 10 minutes after the beginning of his paid shift start time.  I did not discipline Mr. Medina for arriving to the production floor more than five minutes after the beginning of his paid shift start time.

7.      Mr. Medina was terminated for accumulating three Group 1 violations, one of which related to his sleeping on the job.

8.      It takes me less than 30 seconds to wash my hands.

9.      I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ~~February~~ day of __17__, 2020 in Lyon Station, Pennsylvania.

Bryan Heffner

Ex. 1001-06

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,               )
SECRETARY OF LABOR, UNITED   )
STATES DEPARTMENT OF LABOR,  )
                             )
                 Plaintiff,  )     Case No. 5:18-cv-01194-GEKP
                             )
    vs.                      )
                             )
EAST PENN MANUFACTURING      )
COMPANY,                     )
                 Defendant.

### DECLARATION OF TIM HEFFNER

1.      My name is Tim Heffner and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since December 8, 1980. My current position is first shift supervisor in the Smelter Plant. I have held this role since the mid-1990's. I work the first shift. In my role as supervisor I supervised Steven Graczyk during his employment with the Company. I understand Mr. Graczyk submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.      I conduct tailgates (meetings with employees) about once per month, many of which are related to safety measures for employees at the Smelter Plant.

4.      The Smelter Plant has an enhanced PPE requirement, which includes a fire-retardant suit that employees must wear.

5.      Mr. Graczky was a continuous operations employee during his time working for me in the Smelter Plant. As a continuous operations employee in the Metals Division, he was

given 10 minutes of paid time to change into his work uniform and put on his PPE. And, he was given 20 minutes of paid time to remove his work uniform, remove his PPE, and shower.

6.      I have never told employees in my department that they must arrive to the production floor before their paid shift start time. Employees in my department are required to be on the production floor by 7:55 am. And, these same employees are released from the production floor at 3:55 pm. They are, however paid from 7:45 am through 4:15 pm (with a 30 minute unpaid break during their shift).

7.      It takes me about 5 minutes to change into my work uniform and put on my PPE, including my fire-retardant suit.

8.      It takes me about five minutes to change out of my work uniform and shower at the end of my paid shift.

9.      I have never disciplined an employee for arriving to the production floor after their shift start time.

10.     I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this Feb 17 day of ___17___ 2020 in Lyon Station, Pennsylvania.

_____
Tim Heffner

Ex. 1001-07

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,                        )
SECRETARY OF LABOR, UNITED            )
STATES DEPARTMENT OF LABOR,           )
                                      )
                    Plaintiff,        )        Case No. 5:18-cv-01194-GEKP
                                      )
                                      )
        vs.                           )
                                      )
EAST PENN MANUFACTURING               )
COMPANY,                              
                    Defendant.

## DECLARATION OF KEVIN HENNINGER

1.      My name is Kevin Henninger and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since February 14, 2000. My current position is a gridmaking Foreperson in the Industrial Automotive Plant on the first shift.  I have worked in that role since August 2016. I previously worked as a gridmaking Foreperson in the A2 Plant on the first shift. I worked in that role from July 2015 through August 2016.  In my role as a Foreperson in the A2 Plant I supervised Barry Moyer, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.      I have never told any employee they he or she had to be at their workstation before their shift start time. Nor have I told any employee that he or she must be on the production floor at their shift start time.

4.      I have never written up any employee, or issued discipline to any employee for being late to the production floor. It has always been my practice not to document any employee

for tardiness unless he or she is excessively late, which means an employee arriving to the production floor over 5 minutes after his or her shift start time.  If an employee arrived on the production floor 5 or more minutes after their shift start time I would informally tell the employee that they should watch the clock more carefully. If an employee arrives on the production floor less than 5 minutes after their shift start time I would not say anything to the employee, as their arrival would fall within the Company's five minute grace period.

5.      Any employee who has a problem with the location of his or her uniform locker or personal locker can request a new locker.  I never received such a request from Mr. Moyer.

6.      The Company used to provide an $80 voucher to each employee to purchase metatarsal boots.  That voucher is now $110.  The Company does not sell those boots; employees purchase them from third-party retailers.   There are a number of options of metatarsal boots available for $80 or less.

7.      The Company recommends that employees vacuum their work uniform after leaving the work floor and before entering the locker room.  The vacuuming process takes about ten seconds in total.  I have never seen a long line of workers waiting to vacuum before leaving the work floor. The vacuum is almost always available and if an employee would have to wait to use the vacuum it would be a very short wait, usually under 30 seconds.

8.      Gridcasters in the A2 Plant have staggered shift start times.  They do not overlap.

9.      I have never seen 100 or more individuals in the men's locker room in the A2 Plant at any one time. The A2 Plant has locker rooms on both the East side and the West side, each with three staggered shifts.  As a result, at the busiest times, there are never anywhere near 100 employees in the men's locker room.

Executed this _____*18*_____ day of *February* 2020 in Lyon Station, Pennsylvania.

Kevin Henninger

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,                                   )
SECRETARY OF LABOR, UNITED                       )
STATES DEPARTMENT OF LABOR,                      )
                                                 )
                              Plaintiff,          )          Case No. 5:18-cv-01194-GEKP
                                                 )
        vs.                                       )
                                                 )
EAST PENN MANUFACTURING                          )
COMPANY,                                         )
                              Defendant.

## DECLARATION OF KYLE MOHN

1.      My name is Kyle Mohn and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since December 27, 2006. My current position is COS Foreman in the A1 Plant. I work second shift, from 2:00 pm to 10:00 pm. I have worked in that role since July 10, 2017. I previously worked as a COS Foreman in the A2 Plant on the second shift. I began working in that role on January 11, 2015. In my role as Foreman in the A2 Plant I supervised Thomas Caine, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.      Mr. Caine had severe back problems, which resulted in him being a very slow walker.

4.      Employees in my departments were not required to arrive on the production floor before the beginning of their paid shift start time. Once the employee in my departments had all

**Ex. 1001-08**

arrived, I would give out orders for the day.  My orders to my employees always took place after the beginning of their paid shift start time.

5.      I have never disciplined an employee for arriving to the production floor after the beginning of their paid shift start time.

6.      COS employees in the A2 Plant use the locker rooms on the West side of the A2 Plant.  There is a parking lot adjacent to the entrance to the West side of the A2 Plant.  I have never had any problem finding a parking spot in that parking lot.  I have also never received any complaint from any employee about there being insufficient parking in that parking lot.

7.      I have never had to wait for a shower at the end of my work shift.

8.      I have agreed to make this statement voluntarily, entirely of my own free will and choice.  It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17___ day of _February_ 2020 in Lyon Station, Pennsylvania.

_____
Kyle Mohn

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EUGENE SCALIA,<br>SECRETARY OF LABOR, UNITED<br>STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>vs.<br><br>EAST PENN MANUFACTURING<br>COMPANY,<br>Defendant. | ) ) ) ) ) ) ) ) ) ) | Case No. 5:18-cv-01194-GEKP |

### DECLARATION OF SHAWN PARSONS

1.      My name is Shawn Parsons.  I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      I am employed by East Penn Manufacturing Company ("Company") and currently work in the A2 plant as a First Shift Finish Line Leader. I have held this position since January 2016.  In this position, I supervised Dwight Beck when he worked in the A2 Warehouse as a Material Handler.

3.      As a supervisor, I understand it takes a few minutes to change clothes and get from the locker room to the production floor. I allow employees to arrive a few minutes after their shift start time and have never written anyone up or disciplined them for arriving to the floor a few minutes after shift start.   I personally never told Mr. Beck that he had to be at his workstation by shift start time of 6:15 am.

4.      Mr. Beck was permitted to and did use the handicapped parking spot next to the plant entrance.  It is just steps from the door into the plant.

1

**Ex. 1001-09**

5.      I have never written anyone up in A2 Finish department for arriving late to the workstation.

6.      The first part of Mr. Beck's job was to check inventory.   He had another employee helping him with this task.  This initial part of his job should take no more than 20 to 30 minutes, and it is performed on paid (shift) time.

7.      Mr. Beck's job did not normally accumulate lead dust, as his department did not have direct lead exposure, so there was no need for him to vacuum at the end of shift for purposes of reducing his exposure to lead.

8.      The latest that employees in A2 Finish area (where Mr. Beck worked) are released from the production floor is 2:05 pm, which is 10 minutes before the end of their paid shift time.

9.      At the end of shift, Finish Line employees wait at the production door to be dismissed 10 minutes before the end of shift.  The approximate walk from the door to the men's locker room is about 30 seconds maximum, as the locker room is just a few steps from the door. This was also the case when I supervised Mr. Beck.

10.      There are more than 20 showerheads in the men's locker room in the A2 plant, and any shower wait time is minimal.  I know this because I leave the production floor and go to the locker room with the employees I supervise to shower and change.  I have never had to wait five minutes to shower.

11.      Ten minutes is enough time for me to shower and change back into my street clothes at the end of shift.

12.      I never observed Mr. Beck wearing a respirator, and one should not be required as a Material Handler on the Finish line.

2

13.   I have never received employee complaints about not being paid enough time for dressing and showering.

14.   I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____18TH_____ day of _Febuary_ 2020 in Lyon Station, Pennsylvania.

Shawn Parsons

3

Ex. 1001-10

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EUGENE SCALIA, <br> SECRETARY OF LABOR, UNITED <br> STATES DEPARTMENT OF LABOR, <br><br>  Plaintiff, <br><br> vs. <br><br> EAST PENN MANUFACTURING <br> COMPANY, <br><br>  Defendant. | ) <br> ) <br> ) <br> ) <br> )   Case No. 5:18-cv-01194-GEKP <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF ESDRAS PLACENCIA**

1.     My name is Esdras Placencia and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.     I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since May 7, 2007. My current position is Gridmaking Foreman in the A2 Plant. I work second shift, from 1:45 pm to 11:15-30 pm.  I have worked in that role since December 9, 2013. In my capacity as Gridmaking Foreman I supervised Scott Daniels, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.     Mr. Daniels' job title was strip maker punch operator in the A2 plant.  His last day of work for the Company was October 13, 2015.

4.     It has been my practice to conduct monthly safety tailgates.

5.     I have always given employees in my department a reasonable amount of time to arrive on the production floor after the beginning of their paid shift start time.  To me, a reasonable amount of time is 5 minutes.  So, if a particular employee's work shift began at 1:30

pm, I would allow that employee until 1:35 pm to arrive on the production floor. If, however, a particular employee needed more than 5 minutes after the beginning of their paid shift start time to arrive on the production floor, it has been my practice to allow that employee to arrive to the production floor more than 5 minutes after the beginning of their paid shift start time.

6.     I have never disciplined an employee for arriving on the production floor after their paid shift start time.

7.     I have never had to wait for a shower in the men's locker room.

8.     Mr. Daniels was never disciplined for being tardy to the production floor.

9.     I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17___ day of ___Feb.___ 2020 in Lyon Station, Pennsylvania.

_____
Edras Placencia

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,  )
SECRETARY OF LABOR, UNITED  )
STATES DEPARTMENT OF LABOR,  )
   )
              Plaintiff,  )    Case No. 5:18-cv-01194-GEKP
   )
    vs.  )
   )
EAST PENN MANUFACTURING  )
COMPANY,  )
              Defendant.

## DECLARATION OF JASON REESE

1.    My name is Jason Reese and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.    I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since April 30, 2001. My current position is Senior Supervisor for the Industrial Plant. I have worked in that role since August 13, 2017. Previously, I was a Foreman in the Industrial Automotive Plant in the Fill, Form, and Finish Department. I worked in that role from September 12, 2016 through August 13, 2017. Prior to that role I worked as a Foreman in the A2 Plant in the Finishing Department on the second shift. I worked in that role from November 3, 2013 through September 12, 2016. In my role as a Foreman in the A2 Plant I supervised Curtis Rauch, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.    My hours as a Foreperson in the A2 Plant were, generally, from noon through 10:00 pm, although I had the freedom to modify my schedule based on my scheduling and the plant's production needs.

**Ex. 1001-11**

4.      The A2 Plant has both an East Side and West Side, which each have their own set of locker rooms. Mr. Rauch used the East Side locker rooms.

5.      Mr. Rauch would park in a parking lot which was adjacent to the A2 East Side locker rooms. It was a very short walk from the parking area into the plant and parking spots were always available.

6.      Mr. Rauch had very bad back and leg problems, which caused him to walk very slowly. He did not sustain his injury on the job. Of all the employees I have supervised in my career as a supervisor with the Company, Mr. Rauch is one of, if not the, slowest walkers.

7.      The uniform locker in the East Side of the A2 Plant is adjacent to the locker room area. At its closest distance, the uniform locker is two feet from the doors to the locker room. At its furthest distance, the uniform locker is about twenty feet away from the doors to the locker room. Although Mr. Rauch was a slow walker, I suspect that it would take him less than 15 seconds to walk from his uniform locker to the locker room.

8.      I allowed my subordinate employees to show up to the production floor after their shift start time. I have never disciplined an employee for arriving to the production floor after their shift start time.

9.      I have never experienced any problem or malfunction with any timeclock. I have also never received any complaint from any employee, including Mr. Rauch, about a time clock malfunction.

10.     I have never had to wait to shower at the end of my work shift. I have also never received a complaint from an employee about having to have to wait to shower at the end of their work shift.

11.     I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17___ day of ___FEB___ 2020 in Lyon Station, Pennsylvania.

_____
Jason Reece

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,                          )
SECRETARY OF LABOR, UNITED              )
STATES DEPARTMENT OF LABOR,             )
                                        )
                    Plaintiff,          )     Case No. 5:18-cv-01194-GEKP
                                        )
        vs.                             )
                                        )
EAST PENN MANUFACTURING                 )
COMPANY,
                    Defendant.

## DECLARATION OF ALEX ROUDYBUSH

1.      My name is Alex Roudybush and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since October 10, 2010.  My current position is Assistant Senior Supervisor in the Automotive Division (A1, A2, A3, and A4).  I have worked in that role since September 2017.  I previously worked as a Leader in the A2 Plant on the first shift, from September 2016 through September 2017.  Prior to that role I worked as a Foreman in the A4 Plant on the second shift, from September 2012 through September 2016.  In my role as second shift foreman in the A4 plant I supervised Amanda Wertz, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.      During my time working at the A4 Plant there was always ample parking.  The designated parking area for the A4 Plant is one of the largest parking lots at the Company's Lyon

**Ex. 1001-12**

Station campus. In fact, it might be the largest parking lot. I have also never heard of an employee claim that he or she could not find a parking space in the A4 lot.

4.    Ms. Wertz worked as a rawfill operator on the second shift, with set work hours from 2:45 pm through 10:45 pm. Once the workers in her department all arrived on the production floor, I would distribute work assignments for the day. I usually liked to have the workers begin running their machines fifteen (15) minutes after their shift start time, which was 3:00 pm.

5.    The first piece inspection process would take between 5-10 minutes.

6.    Cleanup for employees in Ms. Wertz's department would begin at 10:20 pm and then I would release employees from the production floor at 10:30 pm, which is 15 minutes before their paid shift end time. I released the employees earlier than other departments because it was a 2-3 minute walk from the department on the production floor to the locker room.

7.    Employees were required to check in with the office before beginning their assignment for the day, but that process does not take any additional time, as the office is in the department.

8.    I have never disciplined an employee for arriving to the production floor after their shift start time.

9.    I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17th___ day of _Febuary_ 2020 in Lyon Station, Pennsylvania.

Alex Roudybush

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EUGENE SCALIA,<br>SECRETARY OF LABOR, UNITED<br>STATES DEPARTMENT OF LABOR, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | Case No. 5:18-cv-01194-GEKP |
| vs. | )<br>) | |
| EAST PENN MANUFACTURING<br>COMPANY, | ) | |
| Defendant. | | |

**DECLARATION OF KYLE SMITH**

1.      My name is Kyle Smith and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since September 19, 1983.  My current position is Foreman in the Finishing Department in the Industrial Plant.  I work first shift, beginning at 5:30 am and ending at 2:30 pm.  I have worked in that role since July 30, 2017. I previously worked as a Leader in the same department, beginning on October 24, 2011.  In my role as Leader in the Industrial Plant I supervised Harold Carter, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.      Mr. Carter worked the first shift, from 6:30 am to 2:30 pm.

4.      I gave weekly tailgates (meetings with employees, usually every Monday morning) which often times related to preventative safety measures and best practices for safely operating the machines in the department.

Ex. 1001-13

5.      I have never had any trouble finding a parking space in the designated parking area for Industrial Plant employees.  I have also never received any complaint from an employee regarding insufficient parking spaces.

6.      The walk from the men's locker room to the Finishing Department on the production floor takes me about 30 seconds.

7.      Employees in the Finishing Department are not required to check in with a supervisor at the beginning of their paid work shift.

8.      I have always allowed employees in my department to arrive to the production floor up to five minutes after their paid shift start time. Employees in my department frequently take advantage of this 5 minute grace period.

9.      I have never documented or disciplined an employee for arriving to the production floor after their paid shift start time.

10.     Most workers in Mr. Carter's department would arrive to the production floor at or after their paid shift start time.

11.     While under my supervision, Mr. Carter's job title was a pack and ship, not a crane operator.

12.     While under my supervision, Mr. Carter did not have to work with molten lead, lead oxide, and/or arsenic.

13.     I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this _____ day of _____ 2020 in Lyon Station, Pennsylvania.

_____
Kyle Smith

*** The witness has confirmed all of the statements in this declaration.  His is currently out of
town on vacation but will sign and date his declaration upon his return, and his signed
declaration will be filed at time. ***

Ex. 1001-14

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,
SECRETARY OF LABOR, UNITED
STATES DEPARTMENT OF LABOR,

                Plaintiff,

    vs.

EAST PENN MANUFACTURING
COMPANY,

                Defendant.

Case No. 5:18-cv-01194-GEKP

## DECLARATION OF GERALD WITMAN, JR.

1.    My name is Gerald Witman, Jr. and I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.    I am employed by East Penn Manufacturing Company ("Company") and have worked at the Company since May 4, 1992. My current position is Assistant Senior Supervisor for the Automotive Division in the Finishing Department. I have worked in that role since April 5, 2015. Before that I was a Foreman in the A4 Plant on the Finish line beginning on June 8, 2008. In my role as Foreman in A4 (and in my current role), I supervised Dennis Bittner, who I understand submitted a declaration in support of a recent court filing made by the Secretary of Labor in a lawsuit against the Company.

3.    It is my practice, and has always been my practice, to speak with an employee about their tardiness if he or she habitually arrives to the production floor more than 5 minutes after their paid shift start time. While I have informally spoken with employees about arriving to the work floor more than 5 minutes after their paid shift start time, I have never issued formal discipline to an employee for arriving to the production floor more than 5 minutes after their paid

shift start time. I have also never issued formal discipline to an employee for arriving to the production floor after their paid shift start time.

4.     All production employees receive overtime (time and a half) for hours worked over 40 in a workweek, regardless of what their schedule says.

5.     Mr. Bittner parked in a handicap parking spot adjacent to the lunchroom in the A4 Plant.  His parking spot was one of the closest parking spots to the entrance of the A4 Plant.

6.     I have observed Mr. Bittner's pre-shift routine on multiple occasions throughout the years of my supervising him.  He would always have to wait until the machines started running to begin his production work.  The machines did not start running until after his paid shift start time.

7.     Mr. Bittner and his wife (Pat Bittner) were very social. Mrs. Bittner worked in the same department as Mr. Bittner.  They would often socialize with other employees until production work began. Mr. and Mrs. Bittner would also socialize after cleaning up their work station and before being released from the production floor ten minutes before their paid shift end time.

8.     Mr. Bittner never had to do a first piece inspection.  And for this reason he did not prepare any first piece inspection reports.

9.     The walk from the production floor to the locker room took about 2 minutes or less.

10.     After being released from the production floor, Mr. Bittner would usually walk straight to the lunchroom to socialize, then shower, and then clock out.

11.     I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or

providing any particular statement in this document, and no detriment for refusing to make a statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17___ day of __FEB.__ 2020 in Lyon Station, Pennsylvania.

Gerald Witman, Jr.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA,  )
SECRETARY OF LABOR, UNITED  )
STATES DEPARTMENT OF LABOR,  )
   )
               Plaintiff,  )    Case No. 5:18-cv-01194-GEKP
   )
vs.  )
   )
EAST PENN MANUFACTURING  )
COMPANY,
               Defendant.

## DECLARATION OF NATE YOUSE

1.     My name is Nate Youse. I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.     I am employed by East Penn Manufacturing Company ("Company") and currently work as the Assistant Plant Manager of Industrial Automotive plant. I previously was a Foreperson in the A2 plant in the Filling and Formation department, from January 2010 until February 2014. During that time, I supervised David Stoudt when he worked in the Rawfill department of the A2 plant.

3.     Mr. Stoudt's title when I supervised him was Raw Filler, but his work was primarily as a Material Handler. His position was not a piece rate position, but rather his department received a team bonus incentive reflecting how his line performed for the day.

4.     As a Foreperson in the A2 plant, I monitored when employees I supervised (including Mr. Stoudt) were dismissed from the floor to go to the locker room to change and shower. We usually dismissed employees 12 minutes before the end of paid shift time (2 minutes more than the 10 minutes normally allotted in the plant) so that they could have extra

1

Ex. 1001-15

time to walk to the locker room.   I am unaware of ever releasing employees only 7 minutes before the end of shift.

5.      I have never received employee complaints that they do not receive enough paid time for clothes-changing and showering.

6.      I have agreed to make this statement voluntarily, entirely of my own free will and choice. It has been explained to me that I will receive no benefit for making this statement or providing any particular statement in this document, and no detriment for refusing to make a statement.

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___17 th___ day of ___February___ 2020 in Lyon Station, Pennsylvania.

Nate Youse