UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EUGENE SCALIA, SECRETARY OF LABOR, <br> U.S. DEPARTMENT OF LABOR, <br><br> Plaintiff, <br><br> v. <br><br> EAST PENN MANUFACTURING CO. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )  Case No. 5:18-cv-01194-GEKP <br> ) <br> ) <br> ) <br> ) |

**EAST PENN'S NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING
THE PARTIES' SUMMARY JUDGMENT BRIEFING IN THE WAKE OF THE
DEPARTMENT OF LABOR'S LATE PRODUCTION OF DOCUMENTS REQUESTED
IN 2018 PURSUANT TO THE FREEDOM OF INFORMATION ACT**

**Exhibits to East Penn's Notice of Supplemental Authority Regarding the Parties' Summary Judgment Briefing in the Wake of the Department of Labor's Late Production of Documents Requested In 2018 Pursuant to the Freedom of Information Act**

| Ex. No. | Bates Nos. | Description |
|---|---|---|
| 66 | DOL-FOIA-00000001 – DOL-FOIA-00000002 | May 28, 2020 Production Letter from DOL in response to FOIA request |
| 67 | DOL-FOIA-00000717 – DOL-FOIA-00000720 | June 9, 1948 Memorandum |
| 68 | DOL-FOIA-00000054 – DOL-FOIA-00000055 | April 20, 1956 DOL Opinion Letter |
| 69 | DOL-FOIA-00000105 – DOL-FOIA-00000107 | December 3, 1997 Opinion Letter |
| 70 | DOL-FOIA-00000108 – DOL-FOIA-00000110 | June 6, 2002 Opinion Letter |
| 71 | DOL-FOIA-00000053 | FOH Memorandum of Analysis, dated June 12, 1956 |
| 72 | DOL-FOIA-00000052 | August 10, 1956 handwritten notes on new Field Operations Handbook section addressing "Clothes-changing and wash-up time on a formula basis" |
| 73 | DOL-FOIA-00000408 | 1996 version of Chapter 31b of the Field Operations Handbook |
| 74 | DOL-FOIA-00000026 – DOL-FOIA-00000037 | DOL Interpretive Bulletin, "Hours Worked," dated December 1955 |
| 75 | DOL-FOIA-00000003 – DOL-FOIA-00000007 | 1978 brochure, "A Look at Hours Worked Under the Fair Labor Standards Act," Publication 1199 (revised) |
| 76 | DOL-FOIA-00000008 – DOL-FOIA-00000013 | 1967 brochure, "A Quick Look at Hours Worked Under the Fair Labor Standards Act" |
| 77 | DOL-FOIA-00000017 – DOL-FOIA-00000022 | 1973 brochure, "How to Keep Time and Pay Records under the Fair Labor Standards Act" |
| 78 | DOL-FOIA-00000078 – DOL-FOIA-00000079 | DOL Fact Sheet #21 rev. July 2008 |
| 79 | DOL-FOIA 00000088 | DOL Opinion Letter FLSA-268, dated December 18, 1970 |
| 80 | DOL-FOIA-00000444 – DOL-FOIA-00000446 | DOL Opinion Letter dated January 28, 1974 |
| 81 | DOL-FOIA-00000090 – DOL-FOIA-00000093 | DOL Opinion Letter FLSA-1122, dated June 27, 1983 |
| 82 | DOL-FOIA 00000094 – DOL-FOIA-00000095 | DOL Opinion Letter FLSA-671, dated July 15, 1983 |
| 83 | DOL-FOIA 00000100 | DOL Opinion Letter FLSA-420, dated October 26, 1993 |
| 84 | DOL-FOIA 00000101 – DOL-FOIA-00000102 | DOL Opinion Letter FLSA-843, dated November 7, 1994 |
| 85 | DOL-FOIA-00000103 – DOL-FOIA-00000104 | DOL Opinion Letter FLSA 1240, dated December 28, 1994 |

| Ex. No. | Bates Nos. | Description |
|---|---|---|
| 86 | DOL-FOIA-00000113 – DOL-FOIA-00000114 | DOL Opinion Letter FLSA 2007-1NA, dated May 14, 2007 |

Defendant East Penn Manufacturing Co. respectfully submits this Notice of Supplemental Authority in support of its Motion for Partial Summary Judgment on its Good Faith Defense to Liquidated Damages and Plaintiff's Willfulness Claim (dkt. no. 155) and Opposition to Plaintiff's Motion for Partial Summary Judgment (dkt. no. 176). The Supplemental Authority comprises numerous Department of Labor documents produced on May 28, 2020, in response to a Freedom of Information Act request submitted in July 2018.[1] Together, these documents establish the following points relevant to the parties' summary judgment briefing:

- DOL has recognized that "reasonable" time is an acceptable standard for paying for compensable clothes-changing and showering activities since 1956, when the Supreme Court held in *Steiner v. Mitchell*, 350 U.S. 247 (1956) that certain clothes-changing and showering activities are compensable.[2]

- DOL first communicated to employers that "reasonable time" was an acceptable standard for paying for these activities in early 1956, shortly after the Supreme Court decided *Steiner* but left answered the question of how to measure compensable time pre- and post-shift.

---

[1] To authenticate these documents, East Penn will seek a seal under Fed. R. Evid. 902(1), or in the alternative a signature and certification under Fed. R. Evid 902(2). However, we do not believe the Department will contest the authenticity of the documents that it just produced from its own files.

[2] East Penn does not dispute that under *Steiner v. Mitchell*), so long as it remains good law, donning and doffing the uniform and showering time are compensable because they are "integral and indispensable" to the employee's work. However, East Penn also reserves the right to appeal on grounds that *Steiner* was wrongly decided as a matter of statutory construction because it represents a judicial re-write of the Portal Act to re-establish the compensability of certain pre- and post-shift activities that the Portal Act had excluded from the purview of the FLSA.

- Also in 1956, DOL added a section to its enforcement guidelines, the Field Operations Handbook, recognizing the permissibility of paying for clothes-changing and showering time on a formula basis.  Contrary to DOL's assertion in its summary judgment briefing, this new section, 31b011 – later 31b01a, and later again 31b01(a) – was not intended as a subsection to another provision dealing only with unionized facilities.

- For decades, DOL has communicated to employers that the popular practice of allowing employees to punch in and out a set number of minutes before and after their shift while paying for shift time, known as "longpunching," is an acceptable recordkeeping and pay practice.

- DOL has long been aware that some employers that use longpunching refer to employee clock times as "actual" times and paid shift times as "adjusted" times.  Contrary to DOL's position in this litigation, DOL historically has not considered this terminology or practice to be impermissible "time shaving."

- DOL has recognized as permissible the practice of paying employees for clothes-changing and washing time by allotting a certain number of paid minutes during the shift for such activities.

- DOL has told employers on numerous occasions that time clocks need not be used to record employee working time in compliance with FLSA recordkeeping requirements.

- DOL has recognized in correspondence with employers the potential applicability of the de minimis doctrine to small amounts of time spent on compensable clothes-changing activities, rather than requiring that all such amounts of "actual" time spent on such activities be compensated.

2

- The materials produced by DOL go back to June 9, 1948, which covers nearly the entire period originally sought by East Penn in discovery in this case, and which proves that the Secretary's objection of undue burden was not well founded.  *See* DOL-FOIA-00000717 (Ex. 67).[3]

In turn, as further set forth below, these facts demonstrate (i) the objective reasonableness of East Penn's pay practices; (ii) East Penn's lack of willfulness in adopting such pay practices; (iii) that DOL has not established a recordkeeping violation; and (iv) that Plaintiff is not entitled to summary judgment on the de minimis issue.

## I.     FACTUAL BACKGROUND

Through the law firm of Wiley Rein LLP, East Penn made a FOIA request to the Department of Labor on July 13, 2018.  The FOIA request was submitted less than four months after the Secretary filed this lawsuit.  By law, the government was required to respond within 20 days unless there were "unusual circumstances."  After years of false promises to produce the documents, the Department finally produced 894 pages on May 28, 2020 in response to FOIA Tracking No. 865148.  *See* Ex. 67 attached hereto (DOL's cover letter accompanying the May 28 production).

The reasons for the delay are inexplicable.  The government now admits that it did not even start searching for documents until November 11, 2018.  *See id.*  By July 31, 2019, it already had printed all documents pertaining to its prior investigations of battery manufacturers, as evidenced by the print dates on the bottom line of each.  (Indeed, this collection of documents from industry investigations seems to be the reason why the Department undertook its campaign

---

[3] DOL produced the documents without Bates numbers.  We numbered them consecutively for ease of reference.

of issuing subpoenas to battery companies and trade associations after discovery closed in this case.)  Numerous promises were made to produce the documents while discovery and the summary judgment briefing were occurring in this case, but none were honored.

Thus, on March 9, 2020, a FOIA enforcement action was filed in the District for the District of Columbia.  Even then, the Department dragged its feet, refusing to produce documents and claiming that there were thousands of pages already gathered that still had to be reviewed.  The court finally called the Department's bluff and ordered that it produce responsive documents by July 31, 2020.  East Penn received the documents on May 28, 2020, almost two years after making its request.  The FOIA production contains a trove of documents supporting East Penn's position at summary judgment.

It turned out that the Department had no good reason for delaying the production in response to the FOIA request.  There were only 894 pages in the production, including documents about East Penn that the Solicitor's office had already produced in this action.  Thus, it seems obvious that the Solicitor's office had a hand in the document review and delay.  Given the wealth of documents in the FOIA production that support East Penn's position in this lawsuit, it seems that the delay was purposeful and intended to prevent East Penn from using them during discovery and summary judgment briefing.  Accordingly, now that we have received the documents and promptly reviewed them, we are making this supplemental filing in support of our summary judgment briefing to show why various internal DOL documents support East Penn's arguments or disprove arguments that had been made by the Secretary.[4]  As explained in

---

[4] If the state-of-mind issues are still in the case after summary judgment rulings, East Penn may seek re-open the Plaintiff's Rule 30(b)(6) deposition, or be permitted to propound new topics relating to these documents.  This may depend on how the Court rules on various issues raised in the summary judgment briefing, including Plaintiff's attempt to dragoon the practices of other battery manufacturers into the litigation, as the FOIA documents include summaries of

4

our prior briefing and below, these documents support East Penn's position whether or not it was aware of them.

## II.     SUMMARY OF THE SUPPLEMENTAL AUTHORITY

### A. History of Current Section 31b01(a) of the Field Operations Handbook

In the summary judgment briefing regarding the state-of-mind issues (i.e., willfulness and the good faith defense to liquidated damages), East Penn pointed to a publicly-available portion of DOL's enforcement guidelines, the Field Operations Handbook, in existence in 2003 when East Penn's outside counsel Gary Melchionni of Stevens & Lee advised East Penn on its pay practices. What was then section 31b01a[5] states that an employer may set up a formula to pay for clothes-changing and washing time so long as the formula is reasonable in relation to the actual time spent on the activities. East Penn's briefing established that Mr. Melchionni's advice (and East Penn's pay practices) is consistent with Section 31b01a, and that as a labor and employment lawyer Mr. Melchionni was aware of the Field Operations Handbook as a resource for employers on FLSA compliance issues. This is turn demonstrates the objective and subjective reasonableness of East Penn's reliance on Mr. Melchionni's advice and disproves Plaintiff's allegation of willfulness. In addition, Section 31b01a supports East Penn's assertion, supported by ample case law starting with the landmark *Anderson v. Mt. Clemens Pottery*

---

DOL's investigations of the pay practices of other battery manufacturers where DOL's position differs from its position in this litigation. *See* dkt. no. 127 (denying *without prejudice* East Penn's motion in the alternative to re-open the Rule 30(b)(6) deposition on certain topics (dkt. no. 104)).

[5] As the Secretary has explained in his summary judgment briefing, the section is *currently* designated as FOH 31b01(a). That is, at some point parentheses were placed around the (a), thus ostensibly making it a *sub*section of FOH 31b01, which concerns clothes-changing and washing in unionized facilities. The Secretary has not explained when the parentheses were placed around the (a), and we cannot discern this from publicly available information. But it does not matter to the point in our prior briefing or in the text above.

Supreme Court decision, that reasonable time, not actual time, is the applicable standard for compensable clothes-changing and showering activities.

In its summary judgment briefing, Plaintiff responded that in the current version of the FOH, section 31b01(a) appears in the table of contents as a subsection of another section addressing unionized facilities, and is thus inapplicable to East Penn. The following DOL documents disprove Plaintiff's assertions and show that immediately after the Supreme Court's decision in *Steiner v. Mitchell*, DOL addressed the issue of how employers should pay for such activities and determined that a "reasonable time" standard was appropriate. A new section was added to the FOH to make this point clear. Rather than re-number all the sections in chapter 31, though, DOL assigned it the section number 31b011. The contemporaneous documents cited below demonstrate that the new section was meant to be a free-standing section, *not* a subsection of an existing section addressing unionized facilities, which is Plaintiff's current litigation position. And when Mr. Melchionni gave his advice in 2003, the section was labeled as 31b01a, *not* with any parentheses suggesting that it was a subsection of 31b01. Thus, Plaintiff cannot dismiss section 31b01(a) as inapposite to the issue of the correct standard for compensable clothes-changing and showering activities.

1. **April 20, 1956 DOL Opinion Letter [DOL-FOIA-00000054] (Ex. 68)**

This DOL Opinion Letter, signed by the Deputy Administrator and copied to the Solicitor of Labor, responds to a series of questions posed by an employer in light of the *Steiner* decision issued on January 30, 1956, which held that certain clothes-changing and showering activities are compensable because they are "integral and indispensable" to an employee's principal activities. The employer's request was submitted in February 1956, immediately after the Supreme Court issued the *Steiner* decision. The first question asked whether, in the wake of

*Steiner*, an employer could pay a set number of minutes for compensable clothes-changing and showering activities "without keeping any more accurate or detailed records." DOL expressed the position ultimately memorialized in Section 31b011 of the FOH (later 31b01a), namely, that a formula is permissible so long as it is "reasonable" in relation to the actual time spent on the activities. There is no evidence in the FOIA production that this opinion letter was ever withdrawn.[6]

This letter is notable for several reasons. First, it underscores that DOL's position since *Steiner* was decided in 1956 has been that reasonable time is a permissible method for compensating for *Steiner* activities. In fact, employers began seeking guidance on complying with *Steiner* immediately after the decision was issued, and DOL decided on and communicated its position promptly. Second, DOL did *not* inform the employer that it must keep "any more accurate or detailed records" given its practice of paying by a formula. Third, given that this letter was addressed to an employer, it shows that DOL first communicated the reasonable time standard to employers in 1956, making it objectively reasonable, and, indeed, unexceptional, that East Penn adopted its reasonable-time pay practices. Fourth, in no way does DOL condition its response to the employer on the existence of a collective bargaining agreement, further demonstrating that from the outset section 31b011, later 31b01a, was never intended to be a "subsection" applicable only to unionized facilities.

---

[6] The FOIA production denotes where a December 3, 1997 opinion letter (not pertinent here) was withdrawn by a handwritten note at the top stating "Withdrawn." *See* DOL-FOIA-00000105-107 (Ex. 69). Likewise, a June 6, 2002 Opinion Letter in the production notes at the top that it has been withdrawn. *See* DOL-FOIA-00000108-110 (Ex. 70).

### 2. FOH Memorandum of Analysis, dated June 12, 1956 [DOL-FOIA-00000053] (Ex. 71)

On June 12, 1956, the DOL wrote an internal memorandum as to why it was including the new FOH 31b011 in the Field Operations Handbook. This internal DOL document is dated less than five months after the Supreme Court ruled in *Steiner,* and soon after DOL issued the April 1956 Opinion Letter setting forth its position on how to comply with *Steiner*, described above. The internal DOL memorandum undergirding FOH 31b011 poses a single question: "Whether clothes-changing time may be compensated for on a formula basis." This was one of the questions posed by the recipient of the April 20, 1956, Opinion Letter described above. It is also one of the key disputes between the parties in the summary judgment briefing, with Plaintiff claiming that "actual" time, not a formulaic "reasonable time," must be paid. Between the April 1956 Opinion Letter and this June 1956 Memorandum, DOL made its position crystal clear. It adopted the rule, still in existence today, recognizing that a formula compensating for the reasonable time spent on compensable clothes-changing activities is permissible under the FLSA. The "recommendation" section of this memorandum instructs that a section addressing the use of a reasonable time formula was to be added as a "new section" to the FOH, *not*, as DOL has claimed, as a subsection to another section addressing unionized facilities.

3. **August 10, 1956 handwritten notes on new Field Operations Handbook section addressing "Clothes-changing and wash-up time on a formula basis" [DOL-FOIA-00000052] (Ex. 72)**

The typewritten portion of this document is the text of what became Section 31b011 (later 31b01a). Handwritten notes on the document show that in 1956 DOL intended to add it "as a new FOH section following 31b01," *not* as a *sub*section to 31b01 (addressing unionized facilities), as claimed by Plaintiff.

4. **1996 version of Chapter 31b of the Field Operations Handbook [DOL-FOIA 00000408] (Ex. 73)**

DOL has produced a 1996 version of 31b011, which by that time had become 31b01a. This 1996 version of the FOH, which we understand existed at the time of Mr. Melchionni's advice to East Penn in 2003, still shows section 31b01a as a separate, stand-alone section, *not* as a subsection to 31b01. As of 1996, all of the sections in this Chapter, 31b, fell under the heading "Sleeping Time and Certain Other Activities," proving (as does the original 1956 version), that most of the sections in this chapter address general employment locations. Indeed, only Section 31b01 addresses unionized facilities. In other words, the section that East Penn relies upon, like all other sections within chapter 31b *except* 31b01, apply to East Penn.

B. **Department of Labor Publications For Employers**

1. **DOL Interpretive Bulletin, "Hours Worked," dated December 1955 [DOL-FOIA-00000026] (Ex. 74)**

On page 8 of this Bulletin, which pre-dates *Steiner*, under the heading, "recording working time," DOL recognizes that time clocks are not required to comply with the FLSA. It also recognizes as permissible the practice (known as "longpunching") whereby an employee's time card punches may exceed his paid working time because the employee chooses to arrive early or depart late for personal convenience. As East Penn demonstrated in its summary judgment briefing, longpunching is the timekeeping system that it uses, and DOL's current

9

enforcement manual, the Field Operations Handbook, like the 1955 Interpretive Bulletin, recognizes it as an acceptable practice. This Interpretive Bulletin shows not only that longpunching has long been considered to be acceptable industrial practice (as opposed to some sort of nefarious time-shaving scheme as asserted by Plaintiff), but also that DOL communicated its acceptance of the practice to employers even before *Steiner*. This supports the objective reasonableness of East Penn's pay and timekeeping practices for purposes of East Penn's good faith defense to liquidated damages (as well as disproving Plaintiff's willfulness claim).

> **2. 1978 brochure, "A Look at Hours Worked Under the Fair Labor Standards Act," Publication 1199 (revised) [DOL-FOIA-00000003] Ex. 75)**

This document from 1978 is directed to employers and explains to them what the FLSA does and does not require. Page 5 of this document includes the heading, "A Few Words About Timeclocks And Timekeeping." The multi-paragraph discussion informs employers that time clocks are not required. It acknowledges that "[t]imecard punches often do not show the true hours of an employee's work." The brochure makes explicit that it is acceptable under the FLSA for an employer to record both timecard punch times and the hours actually worked, recognizing that these times can be different. Indeed, the brochure recognizes the practice of longpunching, noting that "[m]any times workers arrive early at the plant for personal reasons and punch in right away, but they don't start work until their shift begins." DOL goes on to notes that "[t]his kind of early punching may be disregarded in counting hours worked."

This brochure supports East Penn's position in opposition to Plaintiff's Motion for Partial Summary Judgment that Plaintiff is not entitled to summary judgment on its recordkeeping claim, as there is nothing inherently unlawful about East Penn's tracking timeclock punch times and shift start and end times (including time allotted for clothes-changing and showering), and

using the latter for pay purposes. It also establishes the objective reasonableness of East Penn's pay and timekeeping practices for purposes of East Penn's good faith defense to liquidated damages (as well as disproving Plaintiff's willfulness claim), as they are consistent with the statements made by DOL to employers in documents specifically intended to address FLSA compliance issues.

### 3. 1967 brochure, "A Quick Look at Hours Worked Under the Fair Labor Standards Act" [DOL-FOIA-00000008] (Ex. 76)

This brochure includes the same information note above, but in an earlier version.

### 4. 1973 brochure, "How to Keep Time and Pay Records under the Fair Labor Standards Act" [DOL-FOIA-00000017] (Ex. 77)

In this 1973 brochure written for employers, DOL reiterates that timeclocks may be used by employers, although they are not required. It recognizes that it is permissible for an employee to be credited with fewer hours of compensated work than the time punches show because of situations such as an employee choosing to come in early or stay late for personal reasons. To illustrate such a permissible practice, the brochure includes, at page 5, a sample time card showing both actual punches and time paid, where the two values are not the same. In particular, the example shows that on every single weekday, the employee was properly paid for eight hours even though the time punches on *every* one of those days *exceeds* eight hours. This document, too, supports denial of Plaintiff's motion for summary judgment on his recordkeeping claim and supports the establishes the objective reasonableness of East Penn's pay and timekeeping practices.

### 5. DOL Fact Sheet #21 rev. July 2008 [DOL-FOIA-00000078] (Ex. 78)

This Fact Sheet, which appears at some point to have been posted on DOL's website, reiterates the permissibility of longpunching and provides an illustrative example similar to that included in the 1973 brochure (i.e., showing actual punches and time paid, where the two values

11

are not the same). Again, all three of the examples shown allow for eight hours of pay even though the punches on every day equal *or exceed* eight hours.

C. **Department of Labor Opinion Letters**

   1. **DOL Opinion Letter FLSA-268, dated December 18, 1970 [DOL-FOIA 00000088] (Ex. 79)**

This Opinion Letter makes clear that the time elapsing between when an employee clocks in early at the time clock and when the employee's work shift begins need not be paid. This is relevant to rebutting Plaintiff's position at summary judgment that East Penn should at a minimum be paying by employee clock times rather than by shift time (which includes time for compensable clothes-changing and showering).

   2. **DOL Opinion Letter dated January 28, 1974 [DOL-FOIA-00000444] (Ex. 80)**

The Opinion Letter responds to an employer's inquiry asserting that clothes-changing took only three to four minutes per day and thus was not compensable because it was de minimis. DOL responded that the issue required further investigation to determine if the employer's practice was compliant. DOL's response indicates that that amount of time allotted for clothes-changing (and showering) activities is not dispositive but must be further evaluated, in contrast to its position at summary judgment in this case that East Penn should have conducted a time study and that the de minimis doctrine can be dismissed out-of-hand. The response is also notable for DOL not taking the position that the employer was required to track the actual time spent on the clothes-changing activities, in contrast to its position in this case.

   3. **DOL Opinion Letter FLSA-1122, dated June 27, 1983 [DOL-FOIA-00000090] (Ex. 81)**

This Opinion Letter reaffirms the permissibility of "longpunching." The employer requesting the opinion allowed employees to clock in up to a certain number of minutes before

shift and to clock out up to a certain number of minutes after shift. DOL found this system of timekeeping, which is similar to East Penn's, permissible. In addition, certain employees who changed clothes on the premises did so as part of their paid shift time, which is also the way East Penn compensates non-Metals Division employees for clothes-changing and showering. DOL did not opine that this method of paying for clothes-changing violated the FLSA.

4. **DOL Opinion Letter FLSA-671, dated July 15, 1983 [DOL-FOIA 00000094] (Ex. 82)**

This Opinion Letter reiterates DOL's position that "[t]ime clocks are a good means of recording work hours, but they are not required."

5. **DOL Opinion Letter FLSA-420, dated October 26, 1993 [DOL-FOIA 00000100] (Ex. 83)**

This Opinion Letter addresses an employer's use of a timekeeping system that recorded "actual" punch times and "adjusted" shift times and concludes that such systems can be permissible where employees don and doff on the premises before and after their work duties. The employer had inquired about the permissibility of its electronic timekeeping system, whereby employees could clock in and out up to 20 minutes before and after shift for their own convenience, including for purposes of socializing and changing clothes "at their own pace." Rather than paying by clock times, the employer paid for shift time, which included seven minutes of clothes-changing time. DOL responded that (i) the employer's timekeeping system satisfied the FLSA's recordkeeping requirements; and (ii) formulas for paying for clothes-changing time such as by building in paid changing time during the shift are acceptable so long as the time paid is "reasonable" in relation to the "actual" time spent on the activities.

This letter puts the lie to Plaintiff's claim that East Penn has engaged in "time shaving" because it "adjusts" employees' "actual" punch times and pays by the adjusted shift time (which includes built-in reasonable time for clothes-changing and showering). This was a major theme

of Plaintiff's Motion for Partial Summary Judgment, as well as the basis for its recordkeeping claim. To the contrary, it shows that DOL is familiar with timekeeping systems that denominate "adjusted" punch times and pay by shift times, and that DOL does not consider it a per se violation of the FLSA's recordkeeping requirements. It also supports the objective reasonableness of East Penn's use of such a system, combined with paying by a formula for clothes-changing and shower time. And it also re-affirms DOL's recognition since *Steiner v. Mitchell* was decided in 1956 that paying "reasonable time" for *Steiner* activities is compliant with the FLSA, in turn making it objectively reasonable for East Penn to have adopted a reasonable time formula for paying for clothes-changing and showering.

### 6. DOL Opinion Letter FLSA-843, dated November 7, 1994 [DOL-FOIA 00000101-102] (Ex. 84)

In this Opinion Letter, DOL states that "there is no requirement in the FLSA for recording an employee's time 'down to the minute.'" This undermines Plaintiff's claim that East Penn has violated FLSA recordkeeping requirements by not recording actual time spent on compensable *Steiner* clothes-changing and showering activities. The Opinion Letter goes on to state, "It has been [DOL's] policy to disregard insubstantial and insignificant periods of time outside the scheduled working hours." This supports East Penn's position that it need not pay more than the time for which it already compensates employees because such additional time is de minimis, and Plaintiff is not entitled to summary judgment on this issue.

### 7. DOL Opinion Letter FLSA 1240, dated December 28, 1994 [DOL-FOIA-00000103] (Ex. 85)

Like the November 7, 1994, Opinion Letter discussed above, this Opinion Letter reiterates that "[t]here is no requirement under the FLSA for recording an employee's time 'down to the minute.'" This letter also discusses the de minimis doctrine (using that term) and confirms that "in recording working time insubstantial and insignificant periods of time outside

the scheduled working hours may be disregarded" because such "trifles" are de minimis. Like the November 7 letter, this Opinion Letter supports East Penn's position that it need not pay more than the time for which it already compensates employees because such additional time is de minimis, and Plaintiff is not entitled to summary judgment on this issue.

### 8. DOL Opinion Letter FLSA 2007-1NA, dated May 14, 2007 [DOL-FOIA-00000113] (Ex. 86)

This Opinion Letter is the most recent one in the FOIA response stating that time clocks are not required.

### III. CONCLUSION

The foregoing further demonstrates that the Court should deny Plaintiff's Motion for Partial Summary Judgment and grant East Penn's Motion for Partial Summary Judgment on the Good Faith Defense to Liquidated Damages and Plaintiff's Willfulness Claim.

Dated: June 12, 2020
Respectfully submitted,

/s/ Michael J. Mueller
Michael J. Mueller *pro hac vice*
Evangeline C. Paschal *pro hac vice*
Andrea R. Calem (*pro hac vice pending*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
mmueller@huntonak.com
epaschal@huntonak.com

/s/ Daniel B. Huyett
Daniel B. Huyett
Pa. Attorney I.D. No. 21385
STEVENS & LEE, P.C.
111 North Sixth Street, P.O. Box 679
Reading, PA 19603-0679
Telephone: (610) 478-2219
Facsimile: (202) 988-0801
dbh@stevenslee.com
*Counsel for Defendant East Penn Manufacturing Co.*

## CERTIFICATE OF SERVICE

I, Michael J. Mueller, hereby certify that a true and correct copy of the foregoing was served on counsel listed below on June 12, 2020, through the Court's ECF system:

OSCAR L HAMPTON
U.S. DEPARTMENT OF LABOR
THE CURTIS CENTER, SUITE 630 EAST
170 S. INDEPENDENCE MALL WEST
PHILADELPHIA, PA 19106  (all further recipients are at this same mailing address)
215-861-5120; Email: hampton.oscar@dol.gov

ADAM F. WELSH
215-861-5159; Email: welsh.adam@dol.gov

BERTHA M. ASTORGA
215-861-5126; Email: Astorga.Bertha.M@dol.gov

PATRICK M. DALIN
215-861-5165; Email: dalin.patrick@dol.gov

ETHAN M. DENNIS
215-861-5142; Email: dennis.ethan.m@dol.gov

ANDREA LUBY
215-861-5128; Email:  Luby.andrea@dol.gov

Dated:  June 12, 2020                                          /s/ Michael J. Mueller
                                                              Michael J. Mueller