Mr. Joseph Goldberg
Wage Determinations & Exemptions Branch

A. Jordan
Wage Determinations & Exemptions Branch

UNRESTRICTED

June 9, 1948

Lone Star Cement Corporation
Clothes-Changing and Bathing Time

The inspection file on this case was forwarded to the National Office for a determination as to whether time spent by the company's packing department employees in changing clothes before and after work and in taking showers at the end of the work day is hours worked under the provisions of the Fair Labor Standards Act and the Portal Act.

<u>Facts from Inspection File</u>.

Subject company does not compensate employees for time spent in showering and clothes changing or consider such time as hours worked. There is no indication that it has ever done so.

The packing department employees wear heavy long sleeved, long legged underwear while working, winter and summer, for protection against cement burns. The underwear and outer clothing worn at work are never washed, and are thrown away after periods varying from two weeks to two months. In addition, the employees wrap socks around their ankles and improvise aprons from sacks as further protection.

The company furnishes the packing department employees with showers and individual lockers. These employees always change clothes at the plant before and after work, and they always take a shower after work, using a special soap furnished by the employer, except that in cold weather one or two of the workers who live close to the plant occasionally wait until they get home before bathing. They spend about 5 minutes a day changing from street clothes to work clothes before starting work and about 25 minutes showering and changing back to street clothes at the end of the workday.

In spite of these precautions many of the packing department employees have suffered from cement burns, which are sometimes severe. When burns occur, the injured employees are asked to continue reporting for work if they are able to do so, and are kept at the plant and recorded

67

as working even then they are unable to perform their duties, in order to avoid showing a time lost accident on the company's safety record.

### Laws with Respect to Clothes Changing in the Industry.

Mr. Roland P. Blake of the Division of Labor Standards advised that there are probably no specific state laws or regulations in regard to the requirement of special protective clothing or of washing and clothes changing in the cement manufacturing industry. He stated that the general laws and regulations relating to occupational disease prevention in some states probably give state inspectors the authority to require such preventive measures where they are necessary to protect workers under the conditions that exist in any particular cement manufacturing plant. There is no practical way of checking state laws on this question.

### Provisions in Union Agreements relating to Clothes Changing in the Industry.

A representative sample of 15 collective bargaining agreements in the file of the Industrial Relations Branch, Bureau of Labor Statistics, was reviewed for clauses relating to this subject. These agreements cover cement manufacturing plants in 12 different states. Thirteen are with the United Cement, Lime and Gypsum Workers, A.F. of L., one with the International Union of Mine, Mill and Smelter Workers, C.I.O., and one with a Cement Workers Local Industrial Union, C.I.O.

None of the union agreements examined contains any provision for the requirement of, or furnishing by the company of special protective work clothes, or any provision for compensating employees for the time spent in bathing and clothes changing or for counting such time as hours worked. Practically all of the contracts contain safety and welfare clauses which require the company to maintain a wash house with heat, light and hot and cold running water. A majority of the safety and welfare clauses pledge strict observance of applicable laws, regulations and codes of the state departments of labor or industrial relations.

### Requirement of Clothes Changing and Bathing by Nature of Work.

For information on the occupational hazards of exposure to cement dust and the preventive measures necessary to protect workers from the effects of such exposure the following sources were consulted: Louis H. Milford, Safety Engineer in the Field Operations Branch; Roland P. Blake, Senior Safety Engineer, Division of Labor Standards; Dr. Paul C. Campbell, Chief, Dermatology Section, Industrial Hygiene Division, United States Public Health Service; officials in the Washington offices of the various unions having jurisdiction in the cement manufacturing industry; the Washington office of the Portland Cement Association; various library sources including publications of the National Safety Council, the United

Mr. Joseph Goldberg — 3 — June 9, 1948

States Public Health Service and the Division of Labor Standards.

Persons contacted in the local offices of the unions and the Portland Cement Association could not supply any useful information on the subject, but in each case suggested that we write to their respective National Offices in other cities.

From the information secured in a conference with Mr. Gafafer of the Field Operations Branch, in phone conversations with Mr. Blake of the Division of Labor Standards and Dr. Campbell of the Public Health Service, and from the published material examined, the following facts seem fairly well established.

Cement dust is a definite health hazard. Cement, itself, and lime which is a principle ingredient of cement (about 60%), are primary cutaneous irritants which, in contact with the skin, cause dermatoses (dermatitis, burns and skin ulcers). Industrial skin disorders (dermatoses) constitute over 50% of all occupational disease cases reported under state workmen's compensation laws. It is essential that cement dust be kept off the skin, or that it be completely removed by washing at the end of an 8 hour shift. Where contact with cement dust cannot be avoided, the preventive measures which are recommended and generally considered essential include the use of protective work clothing, frequent laundering and changing of work clothing, complete washing, bathing and changing from work clothes to street clothes at the end of an 8 hour shift, and the use of creams, lotions or ointments. The Accident Prevention Manual published by the National Safety Council states, with respect to employees who handle "toxic or irritating solid materials", that "washable suits of tightly woven fabric, preferably full-length overalls, and washable caps should be worn. Suits, caps, socks and underwear should be laundered daily at the plant."

All or practically all employers in the industry provide washing, showering and locker facilities. Most employers furnish double compartment lockers so that work clothes do not come in contact with the street clothes into which the employees change after washing-up at the end of the shift. Some employers provide the special protective clothing employees whose work exposes them to cement dust, and some employers maintain laundry facilities for the work clothes used by the employees. It was not possible to determine the extent of these practices from the available sources. Mr. Blake of the Division of Labor Standards said that in industry generally, where special protective clothing is required, it is common practice for employers to pay the extra expense of the protective clothing over the cost of ordinary work clothes, and that this would probably be true in the cement industry. He cited the Bethlehem Cement Company as one which furnished the workers with special close-knit long underwear and dust proof coveralls, and paid the extra expense of this clothing, which cost about twice as much as ordinary work clothes.

Mr. Joseph Goldberg — 4 — June 9, 1942

Mr. Campbell of the Public Health Service informed me that his agency recommends, both in its publications and in advice furnished on request to employers, that employees whose work exposes them to any type of primary irritant dust should be given 10 minutes at the end of the day to wash up and change clothing. For cement workers specifically, they recommend that special protective clothing be worn and that it be laundered and changed daily, and that employees wash and shower completely before changing to street clothes at the end of the day. He stated that it is the experience of the authorities concerned with the prevention and control of industrial disease that unless employees are compensated for wash-up and clothes changing time they are likely not to change their clothes completely, or to wash up thoroughly enough to protect themselves from dermatitis or burns which result from exposure to primary irritant dusts.

Mr. Blake of the Division of Labor Standards advised that where exposure to cement dust is not or cannot be avoided it has been found necessary that workers wear proper protective clothing and that they wash completely, apply ointment and change clothing at the end of the shift. If dust conditions and clothes worn are such that skin contact with cement dust occurs immediately on starting work, cement burns may result in the course of an 8 hour shift, but if reasonable precautions are observed while working, complete washing, application of ointment, and clothes changing at the end of the shift, followed by avoidance of exposure to cement dust for 16 hours will generally prevent burns.

I am retaining in our files some pamphlets and my notes containing more detailed information on the matters discussed above.