INTERPRETATIVE BULLETIN • PART **785**

# Hours Worked

### UNDER THE FAIR LABOR STANDARDS ACT AS AMENDED

*Title 29, Chapter V, Code of Federal Regulations*

## December 1955



UNITED STATES DEPARTMENT OF LABOR
JAMES P. MITCHELL, *Secretary*

*Wage and Hour and Public Contracts Divisions*
NEWELL BROWN, *Administrator*
WASHINGTON, D. C.

74

DOL-FOIA-00000026

## Table of Contents

| Section | | Page |
|---|---|---|
| 785.0 | Introductory Statement | 1 |
| 785.1 | The Principles for Determining Hours Worked | 1 |
| 785.2 | Statutory Exceptions | 2 |
| 785.3 | Application of the Principles | 2 |
| | (a) Employees "Suffered or Permitted" To Work | 2 |
| | (b) Waiting Time | 2 |
| |    (1) Waiting While on Duty | 3 |
| |    (2) Waiting Time off Duty | 3 |
| |    (3) On-Call Time | 3 |
| | (c) Rest Periods | 3 |
| | (d) Meal Periods | 3 |
| | (e) Sleeping Time and Certain Other Activities | 4 |
| |    (1) Less than 24-Hour Duty | 4 |
| |    (2) Duty of 24 Hours or More | 4 |
| |    (3) Employees Residing on Employer's Premises or Working at Home | 4 |
| | (f) Preparatory and Concluding Activities | 4 |

| Section | | Page |
|---|---|---|
| 785.3 | Application of the Principles—Con. | |
| | (g) Adjusting Grievances | 5 |
| | (h) Lectures, Meetings, and Training Programs | 5 |
| | (i) Medical Attention | 6 |
| | (j) Civic and Charitable Work | 6 |
| | (k) Suggestion Systems | 6 |
| | (l) Traveltime | 6 |
| |    (1) Travel From Home to Work | 7 |
| |    (2) Travel That Is All in the Day's Work | 7 |
| |    (3) Travel Away From Home | 7 |
| 785.4 | Recording Working Time | 8 |
| 785.5 | Applicable Statutory Provisions | 8 |
| | (a) Fair Labor Standards Act | 8 |
| | (b) Portal-to-Portal Act | 9 |

AUTHORITY: Sections 785.0 to 785.5 issued under 52 Stat. 1060, as amended; 29 U. S. C. 201 et seq.

(III)

# Part 785—Interpretative Bulletin on Hours Worked

**Section 785.0** *Introductory statement.*—The Fair Labor Standards Act [1] requires that each employee, not specifically exempted, who is engaged in interstate commerce or in the production of goods for such commerce, receive the statutory minimum wage.[2] It also provides that no such employee may be employed for more than 40 hours a week without receiving at least time and one-half of his regular rate of pay for the overtime hours. The amount of money an employee should receive cannot be determined without knowing the number of hours he has worked. This bulletin discusses the principles involved in determining what constitutes working time. It also seeks to apply these principles to situations that frequently arise. It cannot include every possible situation. No inference should be drawn from the fact that a subject or an illustration is omitted. If doubt arises inquiries should be sent to the Administrator of the Wage and Hour and Public Contracts Divisions, United States Department of Labor, Washington 25, D. C., or to any Regional Office of the Divisions. A list of such offices is contained at the end of this bulletin.

The ultimate decisions on interpretations of the act are made by the courts. The Administrator must determine in the first instance the positions he will take in the enforcement of the act. This bulletin seeks to inform the public of such positions. It should thus provide a "practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply it." [3]

These interpretations will remain in effect until they are rescinded, modified, or withdrawn. This will be done when and if the Administrator concludes upon reexamination, or in the light of judicial decision, that a particular interpretation, ruling, or enforcement policy is incorrect or unwarranted. All other rulings, interpretations, or enforcement policies inconsistent with any portion of this bulletin are superseded by it. The Portal-to-Portal Bulletin [4] is still in effect except insofar as it may not be consistent with any portion hereof. The applicable statutory provisions are set forth in section 785.5 of this part.

The principles set forth in this bulletin are also followed by the Administrator of the Wage and Hour and Public Contracts Divisions in determining hours worked by employees performing work subject to the provisions of the Walsh-Healey Public Contracts Act.[5]

**Section 785.1** *The principles for determining hours worked.*—Section 6 requires the payment of the minimum wage by an employer to his employees who are subject to the act. Section 7 prohibits their employment for more than 40 hours without proper overtime compensation.

By statutory definition, the term "employ" includes (sec. 3 (g)) "to suffer or permit to work." The act, however, contains no definition of "work." [6]

The United States Supreme Court originally stated that employees subject to the act must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer or his business." [7] Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give to his employer, that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness

---

[1] 29 U. S. C. 206-219.
[2] The minimum wage is 75 cents an hour but becomes $1 an hour on March 1, 1956.
[3] *Skidmore v. Swift*, 323 U. S. 134, 138.
[4] *General Statement as to the Effect of the Portal-to-Portal Act of 1947 on the Fair Labor Standards Act of 1938*, 29 C. F. R. 790.
[5] See Rulings and Interpretations No. 3, Walsh-Healey Public Contracts Act, Sec. 43.
[6] Sec. 3 (o) of the Fair Labor Standards Act contains a partial definition of "hours worked" in the form of a limited exemption for clothes changing and washup time.
[7] *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local*, 321 U. S. 590.

to serve, and idleness plays a part in all employments in a standby capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer."[8] The workweek ordinarily includes "all time during which an employee is required to be on duty or on the employer's premises, or at a prescribed work place."[9]

The principles are applicable even though there may be a custom, contract, or agreement not to pay for the time so spent, with certain special statutory exceptions discussed in sections 785.2 and 785.3 of this bulletin.[10]

**Section 785.2** *Statutory exceptions.*—There are certain statutory exceptions to the rules stated above. The Portal-to-Portal Act eliminates from working time certain travel and walking time and other similar "preliminary" and "postliminary" activities performed "prior" or "subsequent" to the "workday" that are not made compensable by contract, custom or practice.[11] Section 3 (o) of the Fair Labor Standards Act excludes certain time spent at the beginning or end of the workday in washing up or changing clothes, if these activities are excluded from measured working time by the provisions of, or by custom or practice under, a bona fide collective-bargaining agreement applicable to the particular employee.

**Section 785.3** *Application of the principles.*—This bulletin applies the rules to some of the problems which arise frequently.

(a) *Employees "suffered or permitted" to work.*—Work not requested but suffered or permitted is work time.[12] For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.

The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked.

In all such cases it is the duty of management to exercise its control and see that the work is not performed, if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

(b) *Waiting time.*—Whether waiting time is time worked under the act depends upon the particular circumstances. The determination involves "scrutiny and construction of the agreements between particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the circumstances.

---

[8] *Armour & Co. v. Wantock*, 323 U. S. 126; *Skidmore v. Swift*, 323 U. S. 134.

[9] *Anderson v. Mt. Clemens Pottery Co.*, 328 U. S. 680. The Portal-to-Portal Act did not change the rule except to provide an exception for preliminary and postliminary activities. See sec. 785.2.

[10] Cf. Portal-to-Portal Bulletin, 29 C. F. R. 790, for special provisions relating to travel or walking and other similar "preliminary" and "postliminary" activities.

[11] 29 U. S. C. 251–262. It should be noted that "preliminary" and "postliminary" activities do not include "principal" activities. See General Statement as to the Effect of the Portal-to-Portal Act, 29 C. F. R. 790.6–790.8. Sec. 4 of the Portal Act does not affect the computation of hours worked within the "workday." "Workday," in general, means the period between "the time on any particular workday at which such employee commences [his] principal activity or activities" and "the time on any particular workday at which he ceases such principal activity or activities." The "workday" may thus be longer than the employee's scheduled shift hours, tour of duty, or time on the production line. Also, its duration may vary from day to day depending upon when the employee commences or ceases his "principal" activities.

With respect to time spent in any "preliminary" or "postliminary" activity compensable by contract, custom, or practice, the Portal Act requires that such time must also be counted for purposes of the Fair Labor Standards Act. There are, however, limitations on this requirement.

The "preliminary" or "postliminary" activity in question must be engaged in during the portion of the day with respect to which it is made compensable by the contract, custom or practice. Also, only the amount of time allowed by the contract or under the custom or practice is required to be counted. If, for example, the time allowed is 15 minutes but the activity takes 25 minutes, the time to be added to other working time would be limited to 15 minutes. *Galvin v. National Biscuit Co.*, 82 F. Supp. 535 (S. D. N. Y.), appeal dismissed, 177 F. 2d 963 (C. A. 2).

[12] *Handler v. Thrasher*, 191 F. (2d) 120 (C. A. 10); *Kappler v. Republic Pictures Corp.*, 59 F. Supp. 112 (S. D. Iowa), aff'd 162 F. (2d) 543; 327 U. S. 757; *Republican Publishing Co. v. American Newspaper Guild*, 172 F. (2d) 943 (C. A. 1); *Rogers v. National Automotive Parts Ass'n*, 87 F. Supp. 816 (E. D. Mich.); *Barber v. Georgia Power & Light Co.*, 2 W. H. Cases 430; 8 Labor Cases, par. 61808 (M. D. Ga.); *Harper v. Brent & Stone Electric Co.*, 1 W. H. C. 803; 4 Labor Cases, 60642 (N. D. Texas).

Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged."[33] Such questions "must be determined in accordance with commonsense and the general concept of work or employment."[34]

(1) *Waiting while on duty.*—A stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, a fireman who plays checkers while waiting for alarms, and a factory worker who talks to his fellow employees while waiting for machinery to be repaired are all working during their periods of inactivity. The rule also applies to employees who work away from the plant. For example, a repair man is working while he waits for his employer's customer to get the premises in readiness. The time is worktime even though the employee is allowed to leave the premises or the job site during such periods of inactivity. The periods during which these occur are unpredictable. They are usually of short duration. In either event the employee is unable to use the time effectively for his own purposes. It belongs to and is controlled by the employer. In all of these cases waiting is an integral part of the job. The employee is engaged to wait.[35]

(2) *Waiting time off duty.*—Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived.

Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

A truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period. If the driver reaches his destination and while awaiting the return trip is required to take care of his employer's property, he is also working while waiting. In both cases the employee is engaged to wait.[36] Waiting is an integral part of the job. On the other hand, for example, if the truck driver is sent from Washington, D. C., to New York City, leaving at 6 a. m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p. m. when he again goes on duty for the return trip, the idle time is not working time. He is waiting to be engaged.[37]

(3) *On-call time.*—An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call."[38] An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

(c) *Rest periods.*—Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked.[39]

(d) *Meal periods.*—Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.[40] For

---

[33] Skidmore v. Swift, 323 U. S. 134, 137; Walling v. Dunbar Transfer & Storage, 3 W. H. Cases 284; 7 Labor Cases, par. 61835 (W. D. Tenn.).
[34] Gifford v. Chapman, 6 W. H. Cases 806; 12 Labor Cases, par. 63681 (W. D. Okla.); Thompson v. Daugherty, 40 F. Supp. 279 (D. Md.).
[35] Armour & Co. v. Wantock, 323 U. S. 126; Handler v. Thrasher, 191 F. 2d 120 (C. A. 10); Walling v. Bank of Waynesboro, Georgia, 61 F. Supp. 384 (S. D. Ga.).
[36] Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time, Ballard v. Consolidated Steel Corp., Ltd., 61 F. Supp. 996 (S. D. Calif.).
[37] Collins v. Givan L. Martin, Nebraska Co. 97 F. Supp. 603 (D. Nebr.), affirmed 187 F. 2d 502 (C. A. 8), certiorari denied 344000, rehearing denied 344 U. S. 865, and Thompson v. Stock & Sons, 93 F. Supp. 213 (E. D. Mich.), affirmed 194 F. 2d 493 (C. A. 6); Biggs v. Joshua Hendy Corp., 183 F. 2d 515, 187 F. 2d 447 (C. A. 9); Walling v. Dunbar Transfer and Storage Co., 3 W. H. Cases 284; 7 Labor Cases, par. 61835 (W. D. Tenn.); Lofton v. Seneca Coal and Co., 2 W. H. Cases 669; 6 Labor Cases, par. 61274 (N. D. Okla.); affirmed 189 F. 2d 539 (C. A. 10), certiorari denied 229 U. S. 772.

[31] Skidmore v. Swift & Co., 323 U. S. 134.
[32] Central Mo. Tel. Co. v. Connell, 170 F. (2d) 641 (C. A. 8).
[33] Skidmore v. Swift, 323 U. S. 134, 137.

example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during his meal period.

(e) *Sleeping time and certain other activities.*—Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities.

(1) *Less than 24-hour duty.*—An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy.[20]

A telephone operator, for example, who is required to be on duty for specified hours is working even though she is permitted to sleep when not busy answering calls. It makes no difference that she is furnished facilities for sleeping. Her time is given to her employer. She is required to be on duty and the time is worktime.

(2) *Duty of 24 hours or more.*—Where an employee is required to be on duty for 24 hours or more, the employer and employee may agree[21] to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.[22]

If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked.

If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted.[23] For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period, the entire time is working time.

(3) *Employees residing on employer's premises or working at home.*—An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is of course difficult to determine the exact hours worked under these circumstances, and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.[24]

(f) *Preparatory and concluding activities.*—In November 1947 the Administrator issued the Portal-to-Portal Bulletin. In dealing with this subject, the Bulletin, 29 C. F. R. 790.8 (b) and (c), said:

> (b) The term "principal activities" includes all activities which are an integral part of a principal activity. Two examples of what is meant by an integral part of a principal activity are found in the report of the Judiciary Committee of the Senate on the portal-to-portal bill. They are the following:
>
> (1) In connection with the operation of a lathe, an employee will frequently, at the commencement of his workday, oil, grease,

---

[20] *Central v. Central Missouri Telephone Co.*, 170 F. 2d 641 (C. A. 8); *Strand v. Garden Valley Telephone Co.*, 51 F. Supp. 898 (D. Minn.); *Whitsitt v. Enid Ice & Fuel Co.*, 2 W. H. Cases 664; 6 Labor Cases, par. 61226 (W. D. Okla.).

[21] Where an expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked. *General Electric Co. v. Porter*, 208 F. 2d 805 (C. A. 9), certiorari denied 347 U. S. 975.

[22] *Armour v. Wantock*, 323 U. S. 126; *Skidmore v. Swift*, 323 U. S. 134; *Bowers v. Remington Rand*, 64 F. Supp. 620 (S. D. Ill.), affirmed 159 F. 2d 114 (C. A. 7), certiorari denied 330 U. S. 843; *Rell v. Porter*, 159 F. 2d 117 (C. A. 7), certiorari granted 330 U. S. 817, grant of certiorari vacated and certiorari denied, 330 U. S. 812, rehearing denied 331 U. S. 864; *Ruley v. Day & Zimmerman*, 157 F. 2d 736 (C. A. 8); *Bridgeman v. Ford, Bacon & Davis*, 161 F. 2d 962 (C. A. 8); *McLaughlin v. Todd & Brown, Inc.*, 7 W. H. Cases 1014; 13 Labor Cases, par. 64006 (N. D. Ind.); See also: *Campbell v. Jones & Laughlin*, 70 F. Supp. 996 (W. D. Pa.). (If sleeping period is of more than 8 hours, only 8 hours will be credited.)

[23] See *Barber v. Federal Cartridge Corp.*, 64 F. Supp. 33 (D. Minn.).

[24] *Liberty Oil Co. v. Jackson*, 194 Okla. 185, 148 P. 2d 182 (Okla. Sup. Ct. 1944); *Thompson v. Loring Oil Co.*, 50 F. Supp. 213 (W. D. La.); *Myers v. Southwestern States Telephone Co.*, 52 F. Supp. 885 (N. D. Tex.).

or clean his machine, or install a new cutting tool. Such activities are an integral part of the principal activity, and are included within such term.

(2) In the case of a garment worker in a textile mill, who is required to report 30 minutes before other employees report to commence their principal activities, and who during such 30 minutes distributes clothing or parts of clothing at the workbenches of other employees and gets machines in readiness for operation by other employees, such activities are among the principal activities of such employee.

Such preparatory activities, which the Administrator has always regarded as work and as compensable under the Fair Labor Standards Act, remain so under the Portal Act, regardless of contrary custom or contract.

(c) Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity. However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities.

These principles have guided the Administrator in the enforcement of the act. Their application has been challenged in two cases which are now pending before the Supreme Court of the United States. In one case employees changed their clothes and took showers in a battery plant where the manufacturing process involved the extensive use of caustic and toxic materials which made the changing of clothes and showering indispensable. The United States Court of Appeals for the Sixth Circuit upheld the view expressed in the Portal-to-Portal Bulletin that these activities were an integral part of the employee's principal job and that they were not activities which were excluded by the Portal-to-Portal Act.[20]

In another case the Court of Appeals for the Ninth Circuit held that the sharpening of knives by knifemen in a meatpacking plant before and after the scheduled workday was a preliminary and postliminary activity and was not to be considered time worked under the statute.[21] If the Supreme Court should decide these cases contrary to these views, the Administrator will make and publish whatever revision may be required under the circumstances.

Section 3 (o) of the act provides an exception to the general rule for employees under collective-bargaining agreements. This section provides for the exclusion of time spent in changing clothes or washing at the beginning or end of the workday, if the time is excluded by the express terms of or by a custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

(g) *Adjusting grievances.*—Time spent in adjusting grievances between an employer and employees during the time the employees are required to be on the premises is hours worked, but in the event a bona fide union is involved the counting of such time will, as a matter of enforcement policy, be left to the process of collective bargaining or to the custom or practice under the collective-bargaining agreement.

(h) *Lectures, meetings, and training programs.*—Attendance at lectures, meetings, training programs, and similar activities need not be counted as working time if the following four criteria are met: (1) Attendance is outside of the employee's regular working hours; (2) attendance is in fact voluntary; (3) the course, lecture, or meeting is not directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance.

---

[20] *Steiner v. Mitchell*, 215 F. 2d 171 (C. A. 6).
[21] *Cf. Mitchell v. King Packing Co.* 216 F. 2d 618 (C. A. 9), contra.

Attendance is not voluntary, of course, if it is required by the employer. It is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by non-attendance.

The training is directly related to the employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job. For example, a stenographer who is given a course in stenography is engaged in an activity to make her a better stenographer. Time spent in such a course given by the employer or under his auspices is hours worked. However, if the stenographer takes a course in bookkeeping, it may not be directly related to her job. Thus, the time she spends voluntarily in taking such a bookkeeping course, outside of regular working hours, need not be counted as working time.

Of course, if an employee on his own initiative attends an independent school, college, or independent trade school after hours, the time is not hours worked for his employer even if the courses are related to his job.

There are some special situations where the time spent in attending lectures, training sessions, and courses of instruction is not regarded as hours worked. For example, an employer may establish for the benefit of his employees a program of instruction which corresponds to courses offered by independent bona fide institutions of learning. Voluntary attendance by an employee at such courses outside of working hours would not be hours worked even if they are directly related to his job, or paid for by the employer.

As an enforcement policy, time spent in an organized program of related, supplemental instruction by employees working under bona fide apprenticeship programs may be excluded from working time if the following criteria are met: (1) the apprentice is employed under a written apprenticeship agreement or program which substantially meets the fundamental standards of the Bureau of Apprenticeship, U. S. Department of Labor; (2) such time does not involve productive work or performance of the apprentice's regular duties. If the above criteria are met the time spent in such related supplemental training shall not be counted as hours worked unless the written agreement specifically provides that it is hours worked. The mere payment or agreement to pay for time spent in related instruction does not constitute an agreement that such time is hours worked.

(i) *Medical attention.*—Time spent by an employee in waiting for and receiving medical attention on the premises or at the direction of the employer during the employee's normal working hours on days when he is working constitutes hours worked.

(j) *Civic and charitable work.*—Time spent in work for public or charitable purposes at the employer's request, or under his direction or control, or while the employee is required to be on the premises, is working time. However, time spent voluntarily in such activities outside of the employee's normal working hours is not hours worked.

(k) *Suggestion systems.*—Generally, time spent by employees outside of their regular working hours in developing suggestions under a general suggestion system is not working time, but if employees are permitted to work on suggestions during regular working hours the time spent must be counted as hours worked. Where an employee is assigned to work on the development of a suggestion, the time is considered hours worked.

(l) *Traveltime.*—The principles which apply in determining whether or not time spent in travel is working time depend upon the kind of travel involved. The subject is discussed under the headings "Travel from home to work," "Travel that is all in the day's work," and "Travel away from home." At the outset a brief reference must be made to the Portal Act as it applies to traveltime.

The Portal Act provides in section 4 (a) that except as provided in subsection (b) no employer shall be liable for the failure to pay the minimum wage or overtime compensation for time spent in "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform either prior to the time on any particular work day at which such employee commences, or subsequent to the

time on any particular workday at which he ceases, such principal activity or activities."

Subsection (b) provides that the employer shall not be relieved from liability if the activity is compensable by express contract or by custom or practice not inconsistent with an express contract.

Thus traveltime at the commencement or cessation of the workday which was originally considered as working time under the Fair Labor Standards Act (such as underground travel in mines, or walking from time clock to workbench) [20] need not be counted as working time unless it is compensable by contract, custom or practice. If compensable by express contract or by custom or practice not inconsistent with an express contract, such traveltime must be counted in computing hours worked. However, ordinary travel from home to work (see (1) below) need not be counted as hours worked even if the employer agrees to pay for it.

(1) *Travel from home to work.*—An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites.

While normal travel from home to work is not worktime, if an employee receives an emergency call outside of his regular working hours and is required to travel to his regular place of business or some other work site, all of the time spent in such travel is working time.

A problem arises when an employee who regularly works at a fixed location in one city is given a special 1-day work assignment in another city. For example, an employee who works in Washington, D. C., with regular working hours from 9 a. m. to 5 p. m., may be given a special assignment in New York City, with instructions to leave Washington at 8 a. m. He arrives in New York at 12 noon, ready for work. The special assignment is completed at 3 p. m., and the employee arrives back in Washington at 7 p. m. Such travel cannot be regarded as ordinary home-to-work travel occasioned merely by the fact of employment. It was performed for the employer's benefit and at his special request to meet the needs of the particular and unusual assignment. It would thus qualify as an integral part of the "principal" activity which the employee was hired to perform on the workday in question; it is like travel involved in an irregular emergency call (described above), or like travel that is all in the day's work (see (2) below). All the time involved, however, need not be counted. Since, except for the special assignment, the employee would have had to report to his regular work site, the travel between his home and the railroad depot may be deducted, it being in the "home-to-work" category. Also, of course, the usual mealtime would be deductible.

(2) *Travel that is all in the day's work.*—Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work and must be counted as hours worked regardless of contract, custom, or practice.[21] If an employee normally finishes his work on the premises at 5 p. m. and is sent to another job which he finishes at 8 p. m. and is required to return to his employer's premises arriving at 9 p. m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p. m. is home-to-work travel and is not hours worked.

(3) *Travel away from home.*—Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also

---

[20] Tennessee Coal, Iron & RR. Co. v. Muscoda Local, 321 U. S. 590; Anderson v. Mt. Clemens Pottery Co., 328 U. S. 680; Walling v. Anaconda Copper Mining Co., 66 F. Supp. 913 (D. Mont.).

[21] Walling v. Mid-Continent Pipe Line Co., 143 F. 2d 308 (C. A. 10).

during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a. m. to 5 p. m. from Monday through Friday, the traveltime during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

If an employee is offered public transportation but requests permission to drive his car instead, the employer may count as hours worked either the time spent driving the car or the time he would have had to count as hours worked during working hours if the employee had used the public conveyance.

Any work which an employee is required to perform while traveling must of course be counted as hours worked. An employee who drives a truck, bus, automobile, boat, or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer.

**Section 785.4** *Recording working time.*—Section 11 (c) of the act authorizes the Secretary to promulgate regulations requiring the keeping of records of hours worked, wages paid, and other conditions of employment. These regulations are published in 29 C. F. R., Chapter 5, Part 516. Copies of the regulations may be obtained on request.

In recording working time under the act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are *de minimis*.[31] This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however

small, of the employee's fixed or regular working time or practicably ascertainable periods of time he is regularly required to spend on duties assigned to him.[32]

Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods, provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

**Section 785.5** *Applicable statutory provisions.*—(a) *Fair Labor Standards Act.*—(1) Section 6 (a) of this act provides that "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates: (1) not less than 75 cents an hour; * * *."[33]

---

[31] *Anderson v. Mt. Clemens Pottery Co.*, 328 U. S. 680.

[32] See *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F. 2d 981, 987 (C. A. 8), certiorari denied, 344 U. S. 866, rehearing denied, 344 U. S. 888, holding that working time amounting to $1 of additional compensation a week is "not a trivial matter to a workingman," and was not de minimis; *Addison v. Huron Stevedoring Corp.*, 204 F. 2d 88, 95 (C. A. 2), certiorari denied 346 U. S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." *Hawkins v. E. I. du Pont de Nemours & Co.*, 12 W. H. Cases 448, 27 Labor Cases, par. 69,047 (E. D. Va.), holding that 10 minutes a day is not de minimis.

[33] The minimum rate becomes $1 an hour on March 1, 1956.

9                                                                                                                          785.5 (a)

(2) Section 7 (a) of this act provides that "Except as otherwise provided in this section no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than 40 hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

(3) Section 3 (g) of this act provides that "'Employ' includes to suffer or permit to work."

(4) Section 3 (o) of this act provides that "Hours worked—in determining for the purposes of sections 6 and 7 the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from the measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employees."

(b) *Portal-to-Portal Act.*—Section 4 of this act provides that (a) Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Davis-Bacon Act, on account of the failure of such employer to pay an employee's minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

(b) Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

(c) For the purposes of subsection (b) of this section, an activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable.

(d) In the application of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act of 1938, as amended, of the Walsh-Healey Act, or of the Davis-Bacon Act, in determining the time for which an employer employs an employee with respect to walking, riding, traveling, or other preliminary or postliminary activities described in subsection (a) of this section, there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of subsections (b) and (c) of this section.

DOL-FOIA-00000036

Offices of the Wage and Hour and Public Contracts Divisions are located in:

Region I—(Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont)
    *Regional Office:* Boston, Mass.
Region II—(New Jersey, New York)
    *Regional Office:* New York, N. Y.
Region III—(Delaware, Maryland, Pennsylvania)
    *Regional Office:* Philadelphia, Pa.
Region IV—(Alabama, Florida, Georgia, Mississippi, South Carolina)
    *Regional Office:* Birmingham, Ala.
Region V—(Michigan, Ohio)
    *Regional Office:* Cleveland, Ohio
Region VI—(Illinois, Indiana, Minnesota, Wisconsin)
    *Regional Office:* Chicago, Ill.
Region VII—(Colorado, Iowa, Kansas, Missouri, Nebraska, North Dakota, South Dakota, Wyoming)
    *Regional Office:* Kansas City, Mo.
Region VIII—(Arkansas, Louisiana, New Mexico, Oklahoma, Texas)
    *Regional Office:* Dallas, Tex.
Region IX—(Arizona, California, Idaho, Montana, Nevada, Oregon, Utah, Washington)
    *Regional Office:* San Francisco, Calif.
Region X—(Kentucky, Tennessee, Virginia, West Virginia)
    *Regional Office:* Nashville, Tenn.
COOPERATING STATE AGENCY—(North Carolina)
    North Carolina Department of Labor: Raleigh, N. C.

Alaska: Juneau.    Hawaii: Honolulu.    Puerto Rico: Santurce.

U. S. GOVERNMENT PRINTING OFFICE: 1955

DOL-FOIA-00000037