UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN J. WALSH, <br> SECRETARY OF LABOR, <br> U.S. DEPARTMENT OF LABOR, <br><br> Plaintiff, <br> v. <br><br> EAST PENN MANUFACTURING CO. <br><br> Defendant. | Case No. 5:18-cv-01194-GEKP |

**EAST PENN'S RESPONSE TO THE SECRETARY'S MOTION FOR SANCTIONS**

**I.   INTRODUCTION**

The Secretary's Motion for Contempt marks the third time that the government has attempted to infringe upon East Penn's constitutional right to communicate with its employees. The first two attempts were unsuccessful, and this latest attack should be as well.[1]  In the Court's August 6, 2019, Order, rejecting the Secretary's second attempt to limit East Penn's speech, the Court recognized the Supreme Court's command in *Gulf Oil v. Bernard* that any limit on employer communications must be "carefully drawn" to limit speech "as little as possible."  In accordance with this guidance, the only curb imposed by the Court in its August 6, 2019 Order was the parties should refrain from paraphrasing Court rulings or attempting to speak on behalf of the Court.  *See* dkt. no. 81 at n.2.  The April 27, 2021, communication that the Secretary currently challenges *does not even refer* to the existence of a Court ruling, and so the communication satisfies the August 6, 2019, Order.  Indeed, in telling employees that it was required to produce their names and contact information to the Department of Labor, East Penn

---

[1] In opposing these two unsuccessful attempts, East Penn fully briefed the issues that the Secretary argues again in the instant motion.  *See* dkt. nos. 71, 207, and 211.

1

accurately stated the *Secretary's* position on this issue under the Federal Rules of Civil Procedure.  In other words, East Penn's letter would have been just as accurate had it been sent before a Court ruling or if the matter had required no Court ruling at all.  Thus, the Secretary's Motion should be denied.

II. **THE APRIL 27 COMMUNICATION DOES NOT VIOLATE THE COURT'S AUGUST 6, 2019, ORDER BECAUSE IT DOES NOT PARAPHRASE, OR EVEN REFER, TO A COURT ORDER**

The April 27 communication does not purport to convey information about a Court ruling.  Therefore, the Court's directive to provide a copy of a Court order or opinion rather than paraphrasing it does not apply.  The Secretary claims that East Penn paraphrased the April 6 Order by stating that East Penn was "required" to provide the Department of Labor with employee contact information.  But East Penn did not refer to or acknowledge the existence of a Court ruling.

Nonetheless, claiming support from the dictates of grammar, the Secretary argues that East Penn's use of the passive voice implies that the Secretary, rather than the Court, required the supplemental production, and that this misleading implication is a prohibited paraphrase under the April 6 Order.  But to "paraphrase" Inigo Montoya in *The Princess Bride*, the word "paraphrase" does not mean what the Secretary thinks it means.   The Merriam Webster Dictionary defines the noun "paraphrase" as "a restatement of a text, passage, or work giving the meaning in another form" and the transitive verb "to paraphrase" as "to make a paraphrase of."  The transitive verb requires an object, i.e., the text being restated, which does not exist in this case because the April 27 communication does not refer to a Court ruling, or any other text.  In contrast, the Secretary incorrectly uses "paraphrase" as if it were an intransitive verb meaning "to be misleading."

Even accepting the Secretary's misconstruction of the word paraphrase, his argument misses the mark.  The Secretary assumes, without any basis, that East Penn employees will infer from the April 27 communication that "the Secretary rather than the Court required [East Penn] to provide the employees' personal contact information."  *See* dkt. no. 263 at 4.  To the contrary, the April 27 communication does not imply who or what required the production, be it the Court; the Secretary; another arm of the government; or federal, state, or local law.  It is also puzzling that the Secretary is so troubled by the possible employee inference that the Secretary required the production of the contact information.  The Secretary asked for the supplemental production of contact information and took the very clear position that the supplementation was required (not optional) by both the Department's own discovery requests and by Fed. R. Civ. P. 26(e).  *See, e.g.,* dkt. 252-1 at pages 1 and 2 ("Federal Rule of Civil Procedure 26(e) requires East Penn to supplement its discovery responses 'in a timely manner.'  ***  The Secretary's First Interrogatory requires East Penn to provide names and contact information for its employees who work in Pennsylvania.").

Even if employees uniformly were to interpret the communication in the manner that the Secretary speculates that they would, such inference would not be incorrect. Indeed, East Penn's statements in the April 27 communication would have been equally correct had East Penn agreed with the Secretary's position that supplementation was required and the issue had not been raised with the Court, or had been resolved before the Court ruled.  This demonstrates why the Secretary's position fails, as in that scenario no Court order would have existed, and thus the Secretary could not accuse East Penn of paraphrasing anything.  By the same token, had East Penn attached the Court's April 6 Order, it too would have ratified the inference that the Secretary fears employees would have made—it would have proven that East Penn's conduct

3

was required by the Secretary's discovery request and Rule 26(e). *See* dkt. 260 at 3 ("But Rule 26(e) does not give East Penn permission to supplement its prior discovery production—it expressly imposes a duty to do so on the producing party.").

The Secretary also complains about other true statements in the April 27 letter, including East Penn's reason for issuing it, namely because after the first production of contact information (during discovery), some employees told East Penn that the Department of Labor had been trying to contact them. The Secretary does not dispute the assertion that some employees have informed East Penn management that the Department of Labor has contacted them about the lawsuit. Further, East Penn is not obligated to justify its communications with its employees beyond complying with the anti-retaliation provision of section 15(a)(3) of the FLSA and observing the Court's instruction not to paraphrase Court rulings, which the April 27 statement does not do. But, in any event, East Penn had good reason for the communication. As East Penn explained in the parties' May 17, 2021 status report, the employee contact information that East Penn produced included information normally treated as confidential, such as email addresses and cell phone numbers. It was important to East Penn to inform employees who might be alarmed that their employer had released their private contact information to DOL that East Penn was obligated to do so.[2] It is also unpersuasive for the Secretary to claim that East Penn's communication might cause employees to infer that the Secretary is trying to harass them.

---

[2] This is especially true given the employee reactions to Dr. Radwin's team's uncapping their video cameras in the locker rooms during the Secretary's time study. That incident motivated East Penn's June 24, 2019 communication to employees explaining that East Penn was not the party responsible for that conduct. The August 6, 2019, Order setting ground rules for the parties' communications about this lawsuit addressed that letter and denied a similar attempt by the Secretary to censor East Penn's statements to employees. In fact, the April 27, 2021 statement at issue on the current motion was modeled on that letter as well as the anti-retaliation portions of East Penn's counsel's interview script when seeking employee declarations, which also survived review by this Court.

4

Surely if any employees feel that way it would be because of the *Secretary*'s conduct in contacting them, not East Penn's statement explaining that it was required to provide the contact information.

The Secretary's complaint that East Penn did not provide him with a copy of the April 27 communication is also meritless. *See* dkt. no. 263 at 5. The communication is not relevant to the claims or defenses in the case, and therefore East Penn had no discovery obligation to produce it. In fact, the Secretary does not assert that the letter is responsive to any discovery request. The Secretary is not entitled to review all communications between East Penn and its employees merely because the Department is a litigant.

**III.    THE SECRETARY'S MOTION FOR SANCTIONS IS THE THIRD TIME THAT THE SECRETARY HAS TRIED TO INTERFERE WITH EAST PENN'S CONSTITUTIONAL RIGHT TO COMMUNICATE WITH ITS EMPLOYEES**

The Secretary claims that East Penn has a "history of misleading its employees" about this litigation, dkt. no. 263 at 2, and implies that East Penn has communicated with its employees numerous times about the lawsuit. This is not true. The Secretary can point to only one other written communication between East Penn and employees about the lawsuit since it was filed (and there only is one). That communication explained the circumstances surrounding Dr. Radwin's team and their use of video cameras in the locker rooms. In the August 6, 2019, Order, the Court denied the Secretary's request for an injunction, which sought to grant the Secretary the ability to review and challenge any future communications between East Penn and its employees about the lawsuit. Other than requiring parties to refrain from paraphrasing Court rulings, the August 6 Order did not find fault in East Penn's communication about Dr. Radwin's visit, nor did the Court grant the Secretary's request for injunctive relief. As East Penn noted in the May 2021 status report, the company used that prior communication about Dr. Radwin's

5

team, and the Court's instruction in the August 6 Order not to paraphrase Court statements, as a model for the April 27 statement. In other words, the Secretary is attempting a "redo" of an issue as to which the law was already briefed without offering any new legal reasoning.

The only other "communication" with employees about this lawsuit that the Secretary has challenged is one that he omits from mentioning in his Motion for Protective Order. That "communication" was East Penn's counsel's declaration gathering project, which the Secretary challenged in his Motion for Protective Order, dkt. no. 203. Not only did the Court deny the Secretary's Motion, but the Court also issued one of the lengthiest opinions in the litigation to date, in which the Court recognized East Penn's constitutional right to communicate with its employees: "Although courts have a responsibility to guard against coercive communications, courts also have a responsibility to not infringe upon litigants' constitutional rights." Dkt. no. 225 at 13. Quoting the Supreme Court's decision in *Gulf Oil v. Bernard*, 452 U.S. 89 (1981), which addressed the constitutional concerns with restrictions on communications between a company and employees who were potential class members, the Court explained:

> For good measure, the Court also notes that even if the evidence weighed in favor of limiting East Penn's communications with its employees, the outright ban in taking additional statements that the Secretary seeks is in no way 'carefully drawn' in a manner 'that limits speech as little as possible.' *Gulf Oil*, 452 U.S. at 102.

*Id.* at 20 n.15

Ignoring the Supreme Court's command in *Gulf Oil*—and the Court's recognition of the same—the Secretary cites only two cases to support his requested relief, both of which are inapposite. With respect to *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65 (3d Cir. 1994), the Secretary ignores the fact that the Third Circuit reversed the district court's extraordinary injunctive remedy in that case, whereby the district court had improperly enjoined a sovereign country for actions taken in its territory. The Secretary's quotation from that case is

6

also misleading. The first part of the quote from *Republic of the Philippines*, referencing a deep-seated belief in the integrity of the fact-finding process, occurs at the beginning of the opinion, where the Third Circuit notes that the case examines the intersection of this belief with the settled principles courts must heed when considering whether to enjoin a foreign sovereign's actions in the sovereign's own territory, which is not at issue here. The second part of the quote occurs pages later, and not on the page cited by the Secretary. It ushers in a discussion of a district court's authority to preserve judicial integrity, in which the Third Circuit cites *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). In *Chambers*, the Supreme Court reaffirmed that a court has inherent authority to sanction those who abuse the *judicial process*, finding it appropriate for a district court to order a party to pay the other party's attorney's fees incurred due to the sanctioned party's bad faith conduct during litigation. The April 27 communication at issue here does not interfere with the judicial process, but rather is an exercise in East Penn's constitutional right to communicate with its employees, an issue implicated by neither *Republic of the Philippines* nor *Chambers*.

The other case cited by the Secretary, *Talavera v. Leprino Foods Co.*, Case No. 1:15-cv-105-AWI-BAM, 2016 WL 880550, at **6-7 (E.D. Cal. Mar. 8, 2016), likewise does not support his position. The Secretary relied on *Talavera* in his unsuccessful motion for protective order asking the Court to order East Penn to take "corrective action" regarding the declaration gathering project. As East Penn pointed out in its opposition to that motion, *Talavera* involved employer communications with employees in a private FLSA lawsuit prior to conditional collective action certification. *See* dkt. 207 at 21-22. While the challenged communication involved an employer telling employees that plaintiffs' counsel might contact them, it was not the fact of communication that concerned the court. Rather, the court took issue with the

employer's reference to employees possibly facing a perjury charge if they were not truthful in their statements to plaintiffs' counsel, noting that corrective notice was not warranted in cases *not* involving references to perjury.  The court's concern was that the reference to perjury could scare employees away from joining the collective action.  Here, dissuasion from joining a private collective action is not at issue, nor does the April 27 communication at issue here refer to perjury.[3]

## IV.     THE SECRETARY HAS NO BASIS FOR THE RELIEF HE REQUESTS, AND HIS ATTEMPT TO ACT AS A GOVERNMENT CENSOR SHOULD BE DENIED

The Secretary's request that East Penn be required to provide employees with a copy of the April 6 Memorandum and Order as well as any Order entered on this instant motion is unnecessary and counter-productive.  The Secretary can, if he so wishes, provide employees with copies of them.  He does not need a Court order directing East Penn to do so, which would be unconstitutional.  *See C.N. v. Ridgewood Bd. Of Educ.*, 430 F.3d 159, 188 (3d Cir. 2005) (government violates First Amendment when it forces a private speaker to embrace a particular message that the government favors) (citing *Turner Broadcasting Sys., Inc. v. Federal Communications Commc'ns*, 512 U.S. 622, 642 (1994) ("[l]aws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny [as applied to regulations that suppress, disadvantage, or impose differential burdens on speech because of its contents]")).

But even were the Court to grant the Secretary's requested relief, it would not solve the problem that the Secretary claims the April 27 communication has created.  If the Secretary is

---

[3] To the contrary, rather than scaring employees away, East Penn's April 27 communication informs employees of their right to speak to DOL and assures them that they will not face retaliation if they choose to do so.  One would think that the Secretary would welcome such language by an employer and, notably, the Secretary's pending motion simply ignores that part of the communication.

concerned that the April 27 communication makes it seem as if he required the production of contact information, then the Court's April 6 ruling will *ratify* that inference by proving that the Secretary sought an order requiring supplemental production that he had contended was *already* required by his own discovery request and the Federal Rules.  If the Secretary wants to engage in such a Pyrrhic exercise, he can do so by distributing the April 6 ruling himself

The Secretary's request that East Penn be required to produce any future communications about this litigation, even though they are not relevant to the claims and defenses in this case, should also be denied.  In unsuccessfully challenging East Penn's communication regarding Dr. Radwin, the Secretary likewise sought such a right to preview and pass judgment on any communication with employees.  While this request was denied, the Secretary is still eager to assume the mantle of censor.  This time, the Secretary has instead asked to review East Penn communications with employees after the fact so that he can "file any necessary motions" to "remedy any harm caused by such communications." Dkt. no. 263 at 8.   But this is just censorship by a different name, as any compelled speech "remedying" a communication could have the effect of undoing East Penn's constitutionally-protected right of free speech.  Accordingly, it should be denied.

        Respectfully submitted,

/s/ Michael J. Mueller
Michael J. Mueller *pro hac vice*
Evangeline C. Paschal *pro hac vice*
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
mmueller@huntonak.com
epaschal@huntonak.com

/s/ Daniel B. Huyett
Daniel B. Huyett
Pa. Attorney I.D. No. 21385
STEVENS & LEE, P.C.
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679
Telephone: (610) 478-2219
Facsimile: (202) 988-0801
dbh@stevenslee.com

*Counsel for Defendant*
      *East Penn Manufacturing Company*

June 4, 2021

## **CERTIFICATE OF SERVICE**

I, Michael J. Mueller, hereby certify that a true and correct copy of the foregoing was served on counsel listed below on June 4, 2021, through the Court's ECF system:

OSCAR L HAMPTON
U.S. DEPARTMENT OF LABOR
1835 Market Street, Mailstop SOL/22170 S. INDEPENDENCE MALL WEST
PHILADELPHIA, PA 19103-2968  (all further recipients are at this same mailing address)
215-861-5120; Email: hampton.oscar@dol.gov

ADAM F. WELSH
215-861-5159; Email: welsh.adam@dol.gov

BERTHA M. ASTORGA
215-861-5126; Email: Astorga.Bertha.M@dol.gov

PATRICK M. DALIN
215-861-5165; Email: dalin.patrick@dol.gov

ETHAN M. DENNIS
215-861-5142; Email: dennis.ethan.m@dol.gov

ANDREA LUBY
215-861-5128; Email:  Luby.andrea@dol.gov

ALEXANDER E. GOSFIELD
215-861-5124; Email:  gosfield.alexander.e@dol.gov


Dated:  June 4, 2021                                              /s/ Michael J. Mueller
                                                                                Michael J. Mueller