IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARTIN J. WALSH,                          :
*Secretary of Labor*,[1]                  :          CIVIL ACTION
                                          :
            *Plaintiff*                   :
      v.                                  :
                                          :
EAST PENN MANUFACTURING                   :
CO., INC.,                                :          No. 18-1194
            *Defendant*                   :

## MEMORANDUM

PRATTER, J.                                            NOVEMBER 22, 2021

It should be no surprise that courts do not like surprises. Parties must be up front about their claims, theories, and evidence. If not, there are consequences. There ought to be no trials by ambush in federal civil cases.

East Penn manufactures batteries. Many of the battery materials are dangerous. So the employees that work with or near these materials must wear uniforms or personal protective equipment and must shower after their shifts. East Penn pays its employees for what it considers to be a "reasonable" time to don and doff this equipment and shower. The Secretary, contending that East Penn had to pay its employees for the "actual" time employees spent on these activities, sued to recover backpay. This case is about these 10,000 plus East Penn employees who don and doff uniforms and PPE.

Or at least it *was* until, at the Court's last conference, counsel announced that the Secretary also sought recovery for the 150 employees, mainly office workers, who did not have to put on

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the latest Secretary of Labor, Martin J. Walsh, is substituted for Eugene Scalia as the plaintiff in this action.

uniforms or PPE when they start a shift or shower after a shift. [2] East Penn objected, and the Court invited it to file a motion *in limine*. East Penn has now moved to prevent the Secretary from putting on evidence at trial concerning "secretaries, clerical workers, and other non-manufacturing hourly employees at East Penn who do not wear uniforms or [PPE]." Doc. No. 281-1, at 1. East Penn has also moved, in the alternative, for summary judgment in its favor as to these employees.

The Secretary did not provide notice that these office workers were in the case, preventing East Penn from timely developing a defense as to those employees. Furthermore, the Secretary has pointed to no evidence that East Penn underpaid these office workers. The Court grants East Penn's motion on both grounds.

DISCUSSION

## I.   The Secretary may not add a new damages theory this late in the case

Parties have a duty "to reveal basic information to their adversaries." Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, 8A *Federal Practice and Procedure* § 2053 (3d ed. 2010). To start a case, the complaint must provide "fair notice" of the legal claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Once discovery begins, each side must list potential witnesses, calculate their potential damages, and hand over relevant documents. Fed. R. Civ. P. 26(a)(1)(A). If anything changes during discovery, the party must "supplement or correct" his disclosures. *Id.* 26(e)(1). In other words, the parties must be clear about their claims and legal theories. If a party is not, and so does not fulfill his discovery obligations, the court has broad discretion to impose sanctions. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curiam). For example,

---

[2] Per East Penn, these non-uniformed employees include "secretaries, payroll and personnel staff, mail room workers, IT staff, engineers and the like." Doc. No. 281-1, at 2. For simplicity, the Court refers to them as "office workers."

the court can prohibit the party from asserting a certain claim or defense, or from introducing particular evidence on that claim or defense. Fed. R. Civ. P. 37(b)(2)(A)(ii).

East Penn seeks such sanctions here, requesting that the Court preclude the Secretary from asserting that East Penn underpaid it office workers.

### A. The Secretary did not provide proper notice that he sought to recover for the office workers

The Secretary faults East Penn—and this Court—for not discerning that these office workers have been in the case the entire time. As the Secretary sees it, he "has notified East Penn no fewer than eleven times that he is pursuing claims for *all* employees." Doc. No. 283, at 1 (emphasis added). The Secretary might have said all employees, but his actions and words made clear that he meant all the employees who wear uniforms or PPE. *See Aetna Inc. v. Mednax, Inc.*, 18-cv-2217, 2021 WL 949454, at *5 (E.D. Pa. Mar. 12, 2021) ("broadly" seeking damages for all overpayments insufficient to put defendant on notice that plaintiff "specifi[cally]" sought to recover one type of overpayment).

Start with the complaint. The Secretary accused East Penn of underpaying its employees. His theory? East Penn requires its employees to don and doff uniforms and PPE before and after shifts and then shower after a shift and yet fails to pay for the actual time spent doing so. Compl. ¶ 6. Nowhere does he plead that East Penn underpaid its office workers, much less plausibly explain how. *See Twombly*, 550 U.S. at 555.

Likewise, the Secretary's initial discovery requests dealt almost exclusively with uniformed employees. *See* Doc. No. 283-5; *cf. Acosta v. Holland Acquisitions, Inc.*, 2017 WL 4685304, at *4–5 (W.D. Pa. Oct. 18, 2017) (permitting Secretary to add new employees "whose names have been floating among the parties throughout discovery"). True, in his first set of interrogatories, the Secretary requested that East Penn provide contact information for "each and

every" employee. Doc. No. 283-3, at 1. And East Penn handed over the contact information for the *uniformed* employees listed in Schedule A. Doc. No. 283-4, at 3. But it objected to handing over information for the many "[u]pper-level management, finance personnel, office clerks, IT professionals, drivers, carpenters, nurses, sales people, advertising personnel, product developers, engineers, and a wide variety of other personnel" who do not wear uniforms or shower at the plant, explaining that "[s]uch employees are beyond the scope of the Complaint." *Id.* at 2. In response, the Secretary insisted that he was entitled to that information "because [those employees] may possess information relevant to the claims and defenses in this case"—not because he considered those office workers to be part of the potential recovery class. Doc. No. 283-5, at 2. Bearing this out, the Secretary deposed several office workers, but asked them only about East Penn's timekeeping practices. He never probed if *they* had performed compensable work outside of their scheduled shift. *See, e.g.,* Doc. Nos. 158-29, 159-5, 159-13.

The Secretary has never included any office workers in his Schedule A. The Schedule A, attached to the Secretary's Complaint, lists the employees that the Secretary believes to be owed back wages. In his initial Schedule A, the Secretary listed about 6,900 manufacturing employees who wear uniforms, but not a single office worker. *See* Doc. No. 155-26, at 111:7–14 (explaining that the employees listed were those believed "to wear a uniform"). Later, the Secretary submitted two revised Schedule As, both of which added hundreds or thousands of employees. Doc. Nos. 103-1, 250. From what the Court can tell, those revised Schedule As listed no office workers.

In his disclosures, a plaintiff must identify "each *category* of damages claimed." Fed. R. Civ. P. 26(a)(1)(iii) (emphasis added); *see Stewart v. Nanouh*, No. 17-cv-1458, 2021 WL 794936, *3 (E.D. Pa. Mar. 2, 2021). In labor cases, that means that the Secretary must identify at least the general groups of employees for which he seeks damages. Here, the Secretary clearly indicated

that he sought back pay for uniformed employees and non-uniformed employees who wear PPE or must shower. But he never explained that he wanted back pay for the office workers too.

Indeed, the Secretary practically disavowed any such claim at summary judgment. East Penn moved for summary judgment on all non-uniformed employees. Doc. No. 156-1, at 14. In response, the Secretary asserted that the non-uniformed employees had "worked unpaid time …, performing activities such as putting on personal protective equipment." Doc. No. 174, at 23–24. For support, he pointed to three non-uniformed employees who had to wear PPE. *See id.* at 24–25. He never specifically argued, much less provided proof, that non-uniformed employees who did *not* wear PPE or shower had been underpaid.

The Court denied East Penn's motion accordingly. The Secretary had provided some proof that some non-uniformed employees had not been compensated for the time spent donning PPE. And he had provided sufficient notice that these employees were in the case: the Complaint had sought damages for those employees who spend time "putting on and removing … protective gear before and after their scheduled shifts." Compl. ¶ 6. Because there was "a genuine issue as to whether these employees were compensated for the time spent donning and doffing their company-mandated PPE," the Court let these employees proceed to trial. Doc. No. 273, at 44. The Court never said, however, that the non-uniformed employees who did *not* wear PPE or shower remained in the case. For the Secretary, in his response, had not asserted that they did.

In sum, the Secretary did not put East Penn on timely notice that he sought to recover for the office workers. This is not a situation where the Secretary added more employees *within* a category. *Cf. Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 45, 47–48 (5th Cir. 1973) (permitting Secretary to add new construction workers to trial claiming underpayment of hotel's construction workers). Instead, the Secretary seeks to add an entirely new category of employee to this suit. It

is too late for that. *Cf. Zorilla v. Carlson Restaurants Inc.*, 255 F. Supp. 3d 465, 475–79 (S.D.N.Y. 2017) (permitting new plaintiff, a "tipped worker," to join suit brought by other tipped workers but dismissing her new legal theory not raised by the original plaintiffs).

### B. Adding office workers now would severely prejudice East Penn

That means that the Secretary's damages request for the office workers must be excluded unless the Secretary can show that his failure to identify it earlier "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Nelson v. Cnty of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995) (new plaintiff may be added to case if the defendant "has received such notice" that it "will not be prejudiced in maintaining a defense on the merits") (quoting Fed. R. Civ. P. 15(c)(3) (1991)). The Secretary has not explained why he did not make it reasonably clear from the start that he considered the office workers to be in the case. Nor has he shown that his failure to do so was harmless.

To decide harm, this Court considers certain possible factors:

- Would East Penn be prejudiced if the Secretary was allowed to advance this damages request now?

- Can that prejudice be cured?

- Would the new request "disrupt the orderly and efficient trial of the case"?

- Did the Secretary act in bad faith in waiting so long to bring this request?

- How crucial is this damages request?

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977).[3]

---

[3] With this list, the Court does not suggest it is either exhaustive or that each is necessary. These are simply matters suggested for consideration as the Court takes up its balancing task.

Permitting the Secretary to recover for these employees now would unfairly prejudice East Penn. East Penn was not on notice that the Secretary planned to seek recovery for these employees, so it did not know "to develop the factual record to defend itself" on that theory during discovery. *Aetna Inc.*, 2021 WL 949454, at *5. To remedy this prejudice, the Court would have to reopen the already extensive and lengthy discovery. The Court will not do that and so disrupt the orderly administration of this case. Following nearly two years of discovery, the parties filed dueling summary judgment motions, with exhibits stretching tens of thousands of pages. Each side also filed expert reports and moved to exclude testimony of the other side's experts. The Court will not see that process start all over, especially for a small side issue in a complex case. Plus, this does not leave the Secretary without damages; he can still seek back pay for the other 98.5% of employees who work at East Penn. *See id.* at *6 (excluding belated damages calculation on tangential claim where proffering party could still seek "the damages at the heart of [its] case").

The Court does not believe that there is proof to conclude that the Secretary acted in bad faith. Still, the Secretary is not without blame. "In our adversary system," we "rely on the parties to frame the issues for decision." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). "[P]arties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Id.* at 244 (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring)). This is "particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear" in federal court. *Id.* (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring)). If the Secretary does not make clear who he represents, neither the Court nor his opponent have a duty to go searching for hidden potential employees or protectees.

This Court does, however, have a duty to prevent this case from being sidetracked. The parties, and the public, have a strong interest in the prompt and efficient resolution of these claims. To protect that interest, this Court has broad power to, in its "sound discretion," keep the parties focused and moving towards a final resolution. *In re Fine Paper Antitrust Lit.*, 685 F.2d 810, 817 (3d Cir. 1982). The parties are currently gearing up for a multi-month trial. The Court will not let the Secretary derail that with his new damages request.

### C. The Secretary has produced no evidence that the office workers were underpaid

Even if the Secretary had shown that his failure to disclose was harmless, the Court would still not permit him to seek damages for these office workers, given that the Secretary has presented no evidence that the office workers were underpaid.

In addition to its motion *in limine*, East Penn renews its motion seeking summary judgment on these office workers. The Secretary bears "the burden of proving that [the office workers] performed work for which [they were] not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Per East Penn, the Secretary has not even made a facial showing. That means it is "put up or shut up time." *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal quotation marks omitted). The Secretary must point to enough "facts in the record" from which reasonable jurors could conclude that East Penn underpaid its office workers, or else that claim does not get to go to trial. *Id.*

For his proof, the Secretary, gesturing to the time records, argues that East Penn has a "pattern and practice of shaving its employees' time." Doc. No. 283, at 8. If employees clocked in early or out late, East Penn adjusted the time to reflect their shift times. The Secretary's expert averaged those adjustments for each employee group, including the office workers. Doc. No. 174, at 3–6. But, as the Court previously explained, those adjustments do not necessarily correspond to

*compensable* time. *See* Doc. No. 273, at 31–32. Indeed, a number of uniformed East Penn employees said that they clock in, eat or drink something or chat with others, and then get to work once their shift officially starts. *See id.* at 32. Presumably, office workers likely do the same. So these time records, by themselves, do not show that the office workers were not paid for compensable work.

That leaves the Secretary in a tough spot. For he has no evidence—not even a single declaration—that the office workers did compensable work between clocking in and the start of their shift. The Secretary points out that "East Penn's own supervisors" testified that many employees arrived at their workstations prior to the shifts. Doc. No. 283, at 8, 13. But these were manufacturing supervisors who managed *uniformed* employees. Doc. No. 176-1 ¶¶ 96–98. That testimony does not show that the office workers started compensable work early.

Left without proof, the Secretary spends most of his response making a big procedural fuss, insisting that East Penn should not be permitted to belatedly exclude these employees. True, as the Secretary notes, motions for summary judgment are typically due shortly after the close of discovery. But the Court can "order[] otherwise," and the Court did *invite* East Penn to file this motion at the last status conference. Fed. R. Civ. P. 56(b). Besides, as discussed above, this is not the first time that East Penn has sought summary judgment on these employees. The Court, based on the Secretary's response to East Penn's first motion, understood the Secretary not to seek recovery for office workers, and ruled accordingly. Given the Secretary's recent reversal, he cannot now fault East Penn for reviving its motion. So let the Court now shut this door for good: because the Secretary has not pointed to sufficient evidence for a reasonable juror to find that East Penn underpaid its office workers, the Court grants East Penn's motion for summary judgment.

## CONCLUSION

The Secretary must give fair notice of the employees he represents. Because he did not, the Court grants East Penn's motion *in limine*. In the alternative, the Court grants East Penn's motion for summary judgment. The Secretary may not argue at trial that East Penn underpaid its employees who do not wear uniforms or PPE or shower. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE