IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN J. WALSH,[1]  *Secretary of Labor*, | : : : | CIVIL ACTION |
| *Plaintiff* v. | : : : | |
| EAST PENN MANUFACTURING CO., INC., *Defendant* | : : : : | No. 18-1194 |

## MEMORANDUM

PRATTER, J.                                                        APRIL 20, 2022

A case is supposed to become more focused as it nears trial, not more diffuse. For the second time since the summary-judgment ruling, the Secretary of Labor has attempted to expand this already immensely cumbersome case with a battery of accusations against defendant and defense counsel. But it is too late for him to do so, and he chose the wrong procedural vehicle. The Court denies his motion for sanctions.

### BACKGROUND

The Secretary sued East Penn Manufacturing Company, claiming that East Penn underpaid its workers for the time spent donning and doffing uniforms and personal protective equipment (or PPE) in violation of the Fair Labor Standards Act, 29 U.S.C. § 203 *et seq*. On summary judgment, the Court ruled partly in the Secretary's favor, finding that East Penn had violated the FLSA's recordkeeping and overtime provisions in failing to record the actual amount of time that employees spent donning and doffing.

After the Court ruled on summary judgment, the Secretary tried to broaden his suit, claiming that he had actually been suing on behalf of office workers too, who did not (and never

---

[1]     The current Secretary of Labor, Martin J. Walsh, is substituted for Eugene Scalia as the plaintiff in this action. Fed. R. Civ. P. 25(d).

1

did) don and doff uniforms and PPE. The Court rejected his belated effort to expand the case, reasoning that the Secretary had not articulated that this suit was about anything other than donning and doffing, and it was too late for him to throw in new theories based on unpaid office workers.

Nine days after the Court issued its ruling excluding the office workers, the Secretary filed this motion for sanctions, once again attempting to expand the scope of this case. This time, the Secretary claims that East Penn withheld documents showing that production employees were underpaid for the time they actually spent producing the company's products, namely battery parts.

East Penn has two timekeeping systems. The first clock—called the time and attendance (or T&A) system—registers when an employee swipes in and out for the shift. The second clock—called the Human Machine Interface (or HMI) system—registers when the employee starts work on the production line. For employees paid piece rate or offered an hourly bonus, this HMI data is used to calculate pay or bonuses via the Employee Incentive Calculation System (or ECIS). Some of the production lines did not have these second HMI clocks to track productivity data. For those lines, supervisors tracked the relevant information on handwritten timecards, and secretaries then transferred that information into either a spreadsheet or directly into ECIS. To track productivity, East Penn ran summary reports to compare the HMI productivity data with the data from the T&A clock.

In his motion for sanctions, the Secretary accuses East Penn of withholding five types of documents:

- The summary reports comparing HMI productivity data with the T&A time data;
- The spreadsheets containing data transcribed from the handwritten time cards;
- Rate books, which show East Penn's internal calculations about how many units a piece-rate worker can reasonably produce during a given shift;
- Handwritten notes approving higher-than-usual production bonuses for certain employees;
- Records showing EICS entries that had been altered to match scheduled shift times.

2

Based on these allegedly withheld documents, the Secretary seeks extraordinary sanctions. Primarily, he wants the Court to dismiss with prejudice all of East Penn's affirmative defenses, functionally resulting in a default judgment against East Penn and leaving damages as the sole issue for trial.

The Secretary gave East Penn no notice of this motion, and apparently did not bother to inquire as to why these documents had not been produced or to see whether East Penn would produce the documents now. Such a unilateral attack directly contradicts this Court's admonition that a party moving for sanctions must have made "actual efforts ... to resolve the discovery dispute amicably" prior to seeking the Court's assistance. Judge Gene E.K. Pratter's General Pretrial and Trial Procedures 19–20. It also contradicts the Federal Rules of Civil Procedure and the local rules of this District. *See* Fed. R. Civ. P. 37(a)(1) (requiring a party moving for sanctions to have "in good faith conferred or attempted to confer with" the other side "in an effort to obtain [discovery] without court action."); E.D. Pa. Local R. 26.1(f) ("No [discovery] motion ... shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute.").

The Secretary says he learned of these documents from a "confidential" informant. Until the Court called the parties in for a hearing, the Secretary refused to disclose this informant's identity or permit East Penn to depose her. In doing so, the Secretary functionally asked this Court to take his word that the confidential informant exists, that she said what the Secretary claimed she said, and that the informant's unchecked testimony was so persuasive that the Court should decide the merits of this case in the Secretary's favor without permitting East Penn to test the accusations against it. Once the Court noted how unjust this request was, the Secretary backtracked and agreed to make the informant available to East Penn.

Now that it has had the benefit of deposing this informant, East Penn has provided an explanation for each of the five types of documents that the Secretary claims it failed to produce. Some documents, East Penn says, were already made available to the Secretary for his inspection; he just did not take advantage of that opportunity. Other documents, East Penn suggests, were not specifically requested, such that it did not understand what it was being asked to produce. For the rest, East Penn claims, it objected to the Secretary's request and the Secretary never moved to compel. The Secretary refutes East Penn's explanations and accuses it of withholding these documents to hide its supposed misdeeds.

## LEGAL STANDARDS

In discovery, parties are not required to throw open their doors and allow their adversaries unfettered access to everything stored within. The party seeking documents must make specific requests for "relevant" material that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If the other side does not cooperate, the Court may compel disclosure or, in its broad discretion, impose sanctions. *See* Fed. R. Civ. P. 37.

## DISCUSSION

Set aside East Penn's explanations and the Secretary's retorts. Look past the ambush-like nature of the motion, the confidential informant, and the exceptional remedies sought. Even if East Penn had, as the Secretary says, failed to produce these documents after the Secretary specifically requested them—and that is a big if—East Penn's failure would *still* not warrant sanctions. This suit is not about unpaid *productive* time spent building battery parts, but about whether East Penn failed to properly pay its employees for time spent *donning and doffing* uniforms and PPE. So none of the documents that the Secretary complains he did not receive are relevant or proportional to this suit.

## I. The Secretary brings his claim for unpaid productive time too late

From the start, this case has been about East Penn not paying its employees for the actual time spent donning and doffing uniforms and PPE. The complaint never mentioned unpaid productive time. Instead, the complaint focused exclusively on unpaid time spent donning and doffing. Take the complaint's sole substantive accusation against East Penn:

> Defendant's employees … regularly worked over 40 hours in a workweek. *Such employees spent time putting on and removing uniforms and protective gear before and after their scheduled shifts, and spent time showering after their scheduled shifts.* Defendant paid employees for a set amount of scheduled hours and failed to compensate such employees for those hours worked beyond the set amount of scheduled hours.

Compl. ¶ 6, Doc. No. 1 (emphasis added). Nothing in that paragraph (or the rest of the complaint) puts East Penn "on fair notice that [the Secretary] intended to pursue" a claim for unpaid productive time. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 n.1 (3d Cir. 1997). Based on the documents the Secretary produced, the Secretary never articulated that he was seeking to recover for unpaid productive time in his discovery requests. In his study of East Penn employees, the Secretary's expert, Dr. Radwin, stopped tracking employees before they went to the production line, meaning that he was not looking for unpaid productive time. And in connection with summary-judgment processes, the Secretary made clear that he did not consider unpaid production time to be part of this case: as he saw it, this suit seeks to recover "unpaid overtime compensation for the time the employees spent on *changing into and out of their required uniforms, putting on and removing personal protective equipment, showering, and related activities.*" Doc. No. 174, at 2–3 (emphasis added).

The Secretary could have included unpaid production work within the scope of this sprawling case, but he chose not to. As the Court has explained before, the Secretary must make clear the scope of his claims. *See Walsh v. East Penn Mfg. Co., Inc.*, No. 18-cv-1194, 2021 WL

5

5448961, at *4 (E.D. Pa. Nov. 22, 2021). He cannot lead his adversary and the Court to believe that the case is one thing, and then later claim that it has included another thing all along.

The Secretary suggests that he did not bring unpaid productive time into the case earlier because he did not have "a full picture of [East Penn's] FLSA violation" given East Penn's failure to hand over these particular documents. Doc. No. 308, at 10. The Court is not convinced.

For one, the Secretary has had the raw T&A, HMI, and ECIS data this entire time—the same data that he now claims proves that East Penn underpaid its employees for productive time. Attempting to justify why he did not interpret this data earlier, the Secretary complains that the data had been difficult to analyze because it was stored in immense spreadsheets that cross-referenced each other. But, as the Secretary concedes, Michael Murray, his damages expert, has been able to "decipher[]" the data. Dec. 14, 2021 Hr'g Tr. at 26:17–18, Doc. No. 296.

The Secretary has also had anecdotal evidence of potential unpaid productive time, yet failed to act on it. For example, during discovery, the Secretary interviewed and drafted declarations for 23 employees, seven of whom were workers who claimed to have performed production work outside of their scheduled shift times. Despite having this information in hand, the Secretary never sought leave to amend his complaint to include unpaid production time, nor did he even mention unpaid productive time in his motions for summary judgment. Instead, as East Penn notes, the Secretary used the declarations of these seven workers to argue that the piece-rate workers had not been properly paid for time spent donning and doffing.

Defending himself and his approach to this litigation, the Secretary suggests that the informant's testimony shows that East Penn's practices stretched far wider than he thought. Even if true (and East Penn has provided good reasons to believe otherwise), that does not excuse the Secretary's failure to diligently investigate and assert a claim for unpaid productive time. Faced

6

with seven employees who claimed to have worked outside their shift times, the Secretary could have probed that alleged unpaid productive work further or sought to interview other employees about unpaid productive time. Dr. Radner could have conducted a study of productive time, tracking employees beyond the locker room. Mr. Murray could have looked for patterns in the T&A, HMI, and ECIS data sooner. But the Secretary did not pursue any of these lines of inquiry.

Given that the Secretary could have raised this new and expensive theory of liability much, much earlier, the Court is not inclined to permit him to stretch—really, amend—his complaint to include this new theory and then reopen discovery so that East Penn can properly defend itself. *Cf. Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641–42 (3d Cir. 1993) (affirming district court's refusal to permit employee to add in new theory of employment discrimination after summary judgment). Going forward, the Court reminds the Secretary that requests to add or alter a theory of liability should be brought via a motion to amend the complaint, not hidden in a motion for sanctions. *See* Fed. R. Civ. P. 15.

## II. The Secretary has not shown how these documents are relevant and proportional to his donning-and-doffing claim

Shifting gears, the Secretary suggests that, even if this case is properly limited to donning and doffing, these documents should still be produced so the Secretary can use them at trial. But the Court is not at all convinced that these documents are relevant to the Secretary's claims, much less proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Taken together, these documents show the difference between the time the employee clocked in and the time the employee actually started work on the production line. That information does not say anything about when the employee donned his uniform. As shown at the summary-judgment phase of the case, some employees don their uniforms before they clock in, but others do so after that initial punch. *Walsh v. East Penn Mfg. Co.*, 555 F. Supp. 3d 89, 117 (E.D. Pa.

2021). Some even wait to don their uniform until after they have done non-compensable activities like putting their lunch box in their lockers or grabbing a coffee. *Id.*

Looking for a toehold, the Secretary suggests that for some employees, the production line clock-in time *might* precede the employee's shift start time, necessarily meaning that the theoretical employee was not paid for the time spent donning and doffing. But the Secretary already has—and has had—full access to both the T&A and the HMI data needed to prove this suspicion. The Secretary has not shown what extra evidentiary value would be added by these unproduced documents.

The Secretary also suggests that the documents would show that East Penn's "leadership was well aware of productive off-the-clock work," which, he says, shows that East Penn willfully violated the FLSA and so is subject to liquidated damages and a longer statute of limitations. Hampton Decl. ¶ 21, Doc. No. 288-5; *see* 29 U.S.C. §§ 255(a), 260. But East Penn's alleged knowledge of unpaid *productive* work has nothing to do with its alleged knowledge of unpaid time spent *donning and doffing*, which is, the Court is at pains to repeat, the Secretary's sole claim in this case.

Finally, the Secretary posits that the documents would prove that East Penn could easily "track employee time," thus defeating East Penn's de minimis defense that it would be too difficult for East Penn to count every minute that an employee actually spent donning and doffing uniforms and PPE. Doc. No. 288-3, at 22–23. That East Penn had machines in place that could track when an employee actually joins the production line has little to no bearing on whether East Penn could have feasibly tracked the exact times that its employees put on and took off their uniforms.

Even if these documents did have some minimal relevance, the Secretary has not explained how production of these documents would be "proportional to the needs of this case." Fed. R. Civ.

8

P. 26(b)(1). Discovery in this case spanned two years, and East Penn has produced 485,074 pages of time and punch records. Until this point, the Secretary has never claimed that the stacks of evidence he has are insufficient for him to prove his case at trial.

## CONCLUSION

For these reasons, the Secretary has not demonstrated that East Penn's failure to produce these documents—if East Penn did actually fail to produce these documents in response to particular discovery requests—is deserving of sanctions. The Court denies the Secretary's motion. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE