UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MARTIN WALSH, SECRETARY OF LABOR,　　)
U.S. DEPARTMENT OF LABOR,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiff,　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　Case No. 5:18-cv-01194-GEKP
　　　　　　　　　　　　　　　　　　　　)
EAST PENN MANUFACTURING CO.　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendant.　　　　)

**EAST PENN'S TRIAL MEMORANDUM**

　　　　Pursuant to the Court's Fourth Amended Scheduling Order (dkt. no. 445), East Penn Manufacturing Company respectfully submits this Trial Memorandum setting forth the legal issues as to which it anticipates adducing evidence and argument at trial.  The omission from this brief of particular sub-issues or particular exhibits or witnesses should not be construed as an admission that they are not relevant to issues for the jury's determination.

**I.　　INTRODUCTION**

　　　　The issues for trial are those identified by the Court in its Memorandum Opinion regarding the parties' motions for partial summary judgment and Opinion regarding East Penn's Motion for Reconsideration.  *See* dkt. nos. 273 and 279.   More recently, the Court articulated the issues remaining for trial at the status conference on May 12, 2022, when discussing East Penn's motion to bifurcate:  "As I understand it, the motion suggests that in phase one the jury would decide the liability issues that are still at play, which is, essentially how much [dressing and showering] time is it that is unpaid; is that time de minimis; is donning PPE compensable; and then there would be a second phase, as I understand the motion, for the jury to decide damages, including issues, such as, did East Penn act willfully, how much, if any, is owed."  5/12/22 Hrg. Tr. at 12:1-8.  Should the jury find that donning and doffing standard PPE is compensable, then the jury must also decide

1

if the Secretary has proved a recordkeeping violation with respect to those employees who do not wear uniforms and shower but wear standard PPE.[1]

In addition, for all the remaining liability issues for which the Secretary bears the burden of proof, he must carry his burden through representative evidence, which will be an issue for the jury to consider.[2]

## II.    ISSUES FOR TRIAL

### A.  Whether the Secretary Has Proved That the Employees on Amended Schedule A Have Been Denied Overtime Pay for Compensable Donning, Doffing, and Showering Activities

East Penn acknowledges that the Court ruled at summary judgment that East Penn did not record and pay uniformed employees for the actual time spent on changing into and out of the uniform and showering.[3]  However, it has not yet been established that, as a result, employees were denied overtime compensation as required by the FLSA.  *See* dkt. 273 at 25 (Secretary bears initial burden of establishing employees have not been properly compensated for liability purposes) and 30 (jury must decide whether the Secretary's time estimates presented through Dr. Radwin accurately measured compensable activities on a representative basis); 29 U.S.C. § 207(a)(1) (to prove FLSA overtime violation plaintiff must prove that employees worked over 40 hours in a workweek and defendant failed to pay employees overtime pay required by law); *see*

---

[1] Such non-uniformed employees comprise approximately 11% of the employees for whom the Secretary seeks back wages.

[2] After the conclusion of the trial, should judgment be entered against East Penn, then the Court must also decide whether to imposed liquidated damages, and East Penn will have the opportunity to present to the Court its good faith defense to liquidated damages pursuant to 29 U.S.C. § 260, and whether to grant the Secretary's request for injunctive relief.

[3] Out of an abundance of caution, East Penn notes that it does not agree with the Court's ruling on the record-keeping issue and concomitant ruling that East Penn is obligated to track and pay for "actual" time for start-of-shift and end-of-shift dressing and showering activities.  Defendant preserves those issues for any appeal.

*also Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2205  (2021) (Article III does not give federal courts the power to award relief to uninjured plaintiffs); *Butela v. Midland Credit Management Inc.,* 341  F.R.D. 581, 588 (W.D. Pa. 2022) (same).  Here, to establish that employees were denied overtime pay, the Secretary must prove the following through representative evidence:  (i) the amount of time spent on compensable donning, doffing, and showering activities; (ii) how much of that time was unpaid; and (iii) whether that unpaid time would have resulted in an employee reaching overtime status (i.e., more than 40 hours worked during the workweek).  At trial, East Penn will show that the Secretary cannot carry his burden of proof on these three issues for the following reasons:  (i) Dr. Radwin's numbers are not representative evidence of the time employees spend on compensable clothes-changing and showering activities, both with respect to the plants at which he performed his time study and those that he did not include in his time study, and there is no other "representative evidence" as to how long those activities take for each employee; (ii) Dr. Radwin's proffered numbers used by the Secretary to calculate damages do not take into account time already paid by East Penn for the activities at issue; (iii) the time employees spend on the activities at issue is far less than the time calculated by Dr. Radwin; (iv) at least some employees, such as those in Automotive Administration ("AAPP"), to the extent the Secretary continues to treat them as part of this case, are able to perform all of their donning, doffing, and showering on paid time; and (v) once time already paid by East Penn for the activities at issue is taken into account, not all employees on Schedule A will be entitled to recover under the FLSA.

East Penn will establish the first three points through (i) the cross-examination of Dr. Radwin; (ii) the direct examination of East Penn's expert witness Dr. Fernandez, who studied the same employees using the proper "elemental" method for time measurements and found daily times for the activities that are less than East Penn already pays; Dr. Fernandez also will critique

Dr. Radwin's time study and in particular note the improper inclusion of personal delays in the time measurements made by Dr. Radwin; (iii) testimony of hourly witnesses regarding the time they spend on the activities at issue and their use of the grace period; (iv) testimony from management witnesses about the amount of time, including their observations of employees lining up at the time clocks at the end of shift after having showered and changed into their street clothes, proving that the activities can (and are) done in less than the 10 minutes paid by East Penn to do so; (v) video documentation of employees lining up at the time clock at the end of shift waiting to clock out at the end of paid time and engaging in personal activities after changing into the uniform before shift; (vi) testimony from hourly and management employees at to the lack of complaints regarding not being paid enough for clothes-changing and showering activities; (vii) cross-examination of DOL witnesses regarding statements made by hourly employees during the investigation that they were able to perform the activities at issue on paid time, as well as other conclusions from the DOL's investigation proving that the times and practices are different by plant; (viii) management testimony regarding the existence and use of the grace period at the start of shift and provision of paid time at the end of shift to complete clothes-changing and showering activities; and (ix) cross-examination of the Secretary's damages witness, Michael Murray, and direct examination of East Penn's damages witness, Dr. Nathan Woods, regarding the number of employees who will not be eligible to recover under the FLSA in various scenarios regarding the amount of unpaid compensable time found by the jury.  In addition to these sources, East Penn will also adduce evidence of the amount of paid and unpaid time through a variety of other sources, such as examination of punch-out records, which show that approximately half of all employees at issue had completed their showering/dressing and punched out at the precise moment their pay ended.  In addition, there will be testimony showing that East Penn pays Metals Division

employees (Oxide 1, Oxide 2, and Transload) in an entirely different manner that is sufficient to cover the time spent by those employees on the activities, and that Dr. Radwin and DOL's other sources of evidence simply ignore.

### B. The Amount of Uncompensated Time Spent on Compensable Pre- and Post-shift Donning, Doffing, and Showering Activities, and Whether Such Time is De Minimis[4]

If the jury finds that the Secretary has proved that employees on Schedule A have been denied overtime pay for compensable donning, doffing, and showering activities, the jury must then determine whether the unpaid time spent on such activities is de minimis. If so, the Secretary cannot recover damages. This is true regardless of whether de minimis is a liability or a damages issue.[5]

The Court ruled at summary judgment that the jury will consider two prongs of the de minimis doctrine:  the aggregate amount of the time at issue and the administrative impracticality of recording the time. *See* dkt. no. 273 at 36. If the jury finds that the uncompensated time at issue is de minimis, then East Penn does not owe damages. *See, e.g., Albanese v. Bergen County*, 991 F. Supp. 410, 421-22 (D.N.J. 1997) ("To recover damages for uncompensated hours, employees must show that the amount of hours they worked was not de minimis."); *Barvinchak v. Indiana Regional Med. Center*, No. 3:2006-69, 2007 WL 2903911, at *16 (W.D. Pa. Sept. 28, 2007)

---

[4] At the time of filing this Trial Brief, the Secretary's Motion in Limine to Preclude the De Minimis Defense (dkt. no. 374) is pending.  East Penn incorporates by reference its arguments in its Opposition to that motion (dkt. no. 382) explaining why the de minimis issue remains an issue for trial.

[5] East Penn's position at summary judgment was that the de minimis doctrine is part of a plaintiff's burden of proof for liability, *i.e.*, that the Secretary must prove that any uncompensated compensable time is more than de minimis to establish liability.  However, East Penn recognizes the Court's ruling that the de minimis doctrine is an affirmative defense to damages, and we simply preserve our position on that point for appeal.  Either way, however, the Secretary is barred from recovering any damages and pursuing his willfulness claim if the jury finds the time at issue to be de minimis.

("Work lasting only a few seconds or minutes *beyond* the scheduled working hours may be disregarded.") (emphasis added); *Lindow v. United States*, 738 F.2d 1057, 1062-64 (9th Cir. 1984) (factors for evaluating de minimis include daily time spent on activities at issue, regularity of the tasks performed, and administrative difficulty in recording small amounts of time).

With respect to the first prong and uniformed employees, East Penn will prove through cross-examination of Plaintiff's expert Dr. Radwin that his proffered measures of time for performing clothes-changing and showering activities do not qualify as representative evidence, both from a statistical standpoint and because he did not measure all of the 24 locations that East Penn contends are at issue for trial.  This proof will be bolstered by the proffered testimony of East Penn's expert Dr. Fernandez, who will not only critique Dr. Fernandez's methodology, but will also explain that from his own stopwatch measurements of employees as well as his examination of Dr. Radwin's video measurements, time spent on the activities at issue is significantly less than that estimated by Dr. Radwin.  In addition, East Penn will demonstrate through the testimony of management and hourly witnesses that most if not all of the time that employees spend on compensable clothes-changing and showering activities is paid, such that any remaining unpaid time is within the range of time considered to be de minimis.

With respect to administrative practicality, East Penn will demonstrate through the testimony of management witnesses and examination of hourly and DOL witnesses that their time clock punches do not correspond to the time they spend on compensable clothes-changing and showering activities, meaning that changing East Penn's policies to pay punch to punch will not result in paying employees for time spent on such activities.  East Penn will also establish through the testimony of management witnesses that it would be impracticable to require employees to complete all of their compensable dressing and showering activities within a set number of minutes

due to difficulties enforcing such a policy and the unpopularity of such an approach with hourly employees.  This will be confirmed by the testimony of hourly employees that they use and enjoy the flexibility as to when they can don, doff, and shower under East Penn's current policy.

### C.  Whether Donning and Doffing Standard PPE Items Are Integral and Indispensable Activities to Employees' Productive Work

As East Penn will establish at trial through management witnesses and East Penn's Rule 1006 summary witness and damages expert Dr. Nathan Woods that approximately 11 percent of the employees for whom the Secretary seeks damages are non-uniformed employees who do not shower, but who wear at least some items of standard personal protective equipment ("PPE").  For these employees, the jury must determine whether donning and doffing standard PPE is "integral and indispensable" to employees' productive work duties.  In addition, the evidence that the Secretary adduces to meet his burden of proof on this question must qualify as representative evidence.  If the Secretary cannot carry his burden of proof through representative evidence, then there is *no* liability with respect to hourly employees who wear PPE but do not wear uniforms and shower, as the Secretary has conceded.  *See* dkt. 429 at 12 n.3  The Court has also been clear that this is an issue for trial:  "*At trial*, both sides may present evidence on whether that [standard PPE] equipment was integral and indispensable to the job, and, if so, whether East Penn compensated non-uniformed employees for that time."  Dkt. 279 at 5 (emphasis added).

The test for whether a preliminary or postliminary activity is integral and indispensable was set forth by the Supreme Court in  *Integrity Staffing v. Busk*, 574 U.S. 27 (2014):

> The Court of Appeals erred by focusing on whether an employer *required* a particular activity.  The integral and indispensable test is tied to the productive work that the employee is *employed to perform*. See, *e.g., IBP,* 546 U.S., at 42, 126 S.Ct. 514; *Mitchell, supra,* at 262, 76 S.Ct. 337; *Steiner,* 350 U.S., at 249–251, 76 S.Ct. 330; see also 29 CFR § 790.8(a) (explaining that the term "principal activities" was "considered sufficiently broad to embrace within its terms such activities as are indispensable to *the performance of productive work* " (internal quotation marks omitted; emphasis added)); § 790.8(c) ("Among the activities

included as an integral part of a principal activity are those closely related activities which are indispensable *to its performance* " (emphasis added)).  If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into "principal activities" the very activities that the Portal–to–Portal Act was designed to address.  The employer in *Anderson,* for instance, required its employees to walk "from a timeclock near the factory gate to a workstation" so that they could "begin their work," "but it is indisputable that the Portal–to–Portal Act evinces Congress' intent to repudiate *Anderson* 's holding that such walking time was compensable under the FLSA." *IBP, supra,* at 41, 126 S.Ct. 514.  A test that turns on whether the activity is for the benefit of the employer is similarly overbroad.

!

*Id.* at 37 (emphasis in original).

At trial, East Penn will establish through the testimony of management and hourly employee witnesses and exhibits that the standard PPE items worn during the work shift — including but not limited to safety shoes, earplugs, safety glasses, and gloves — are generic safety items worn in a wide variety of work and recreation contexts and not specific to battery-making, smelting, or lead or other chemical exposure.  East Penn will likewise establish through testimony that such items are not necessary to the employee's performance of his or her job.  Testimony from East Penn's health and safety department personnel will also establish that these standard PPE items are not *necessary* to ensure East Penn's compliance with OSHA's lead standard or other chemical exposure limit.[6]

East Penn will also establish through the testimony of hourly employees and management employees that at least some non-uniformed employees don and doff at least some of their standard

---

[6] East Penn does not dispute that the respirator worn on some occasions by some employee is an integral and indispensable piece of PPE.  However, East Penn will establish at trial through testimony of management and hourly employee witnesses, and exhibits, that the respirator can be and often is donned and doffed on paid time.  East Penn will also establish that not all employees wear a respirator, that those that do may wear the respirator for only part of the shift, and that employees may wear the respirator on some days but not others, or in some positions but not others.  Thus, the Secretary will not be able to prove through representative evidence that the respirator is donned and doffed on unpaid time.

PPE items on paid time, *i.e.*, once the employee has arrived at the work area and before the employee leaves the work area prior to the end of the paid shift. Such donning and doffing activities include (but are not limited to) putting on and taking off earplugs, gloves, hard hats, face shields, and plastic aprons and sleeves. With respect to safety shoes/boots and safety glasses, East Penn will prove through management and hourly employee testimony that such items may be donned during paid time during the five-minute grace period at the start of the paid shift and doffed during the paid five minutes allotted at the end of shift after employee are excused from their work area.

East Penn notes that Dr. Radwin did not separately study such employees and does not have a measure of time spent on donning and doffing standard PPE for non-uniformed employees. Thus, the Secretary cannot rely on Dr. Radwin's testimony as representative evidence with respect to non-uniformed employees and must rely instead on the testimony of hourly employees and management witnesses. *See* dkt. 273 at 42 ("So, whatever measurements from the [Radwin] time study are, they are not representative of time spent by employees who do not wear uniforms …."). East Penn will demonstrate through cross-examination of the Secretary's hourly witnesses, as well as through examination of East Penn management and hourly witnesses, that the Secretary's proof regarding the compensability of the standard PPE items and the amount of uncompensated time that it takes to don and doff such items (if found to be compensable) is not representative for all employees on the operative Schedule A who do not wear uniforms and shower. Rather, the reasonable time spent on such activities (if found to be compensable) will depend on the particular plant and department in which an employee works, due to such factors as variability in distances between the location where such PPE is donned and doffed and the work area and differences among departments and plants regarding PPE distribution and donning and doffing practices.

Should the jury find donning and doffing standard items of PPE compensable, and that East Penn has failed to compensate employees for such donning and doffing, then the jury must also find whether the unpaid time spent on such activities is de minimis.  If so, then the Secretary is not entitled to recover damages for such employees.

### D.  Whether the Secretary Has Proved That East Penn Failed to Keep Records of Time Spent Donning and Doffing Standard PPE

While the Court granted summary judgment to the Secretary on his recordkeeping claim, that ruling was necessarily limited to uniformed employees, as the compensability of donning and doffing standard PPE items worn by non-uniformed employees remains an issue for trial.  *See* dkt. no. 273 at 24-25.  The jury will not reach the recordkeeping claim with respect to non-uniformed employees unless it first finds liability as to these employees.  To prevail on a recordkeeping claim for non-uniformed employees, the Secretary must prove by a preponderance of the evidence and through representative proof that East Penn has failed to keep an accurate record of time spent donning and doffing standard PPE.  *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a); *See Anderson v. Mt. Clemens Pottery Co.*, 338 U.S. 680, 687-88 (1946),

### E.  The Amount of Damages Owed Should the Jury Find That the Amount of Unpaid Overtime Proved by the Secretary is More Than De Minimis

Under the FLSA, the Secretary has the burden of proving damages and will have carried his burden only if he proves that the employees have in fact performed work for which they were not paid and produces sufficient evidence to show the amount and extent of such work as a matter of just and reasonable inference.  *See Mt. Clemens Pottery Co.*, 338 U.S. at 687.  The burden then shifts to East Penn to come forward with evidence of the precise amount of uncompensated work performed or with evidence to negate the reasonableness of the inference to be drawn from the Secretary's evidence.  *See id.*  Only if East Penn fails to produce such evidence, may the jury award

damages to the employees on the operative Schedule A.  *See id*.  The Court ruled at summary judgment that the appropriate measure for damages is the *reasonable* time spent on the compensable activities at issue.  *See* dkt. no. 273 at 22 (To the extent that the concept of 'reasonableness' permeates this case, it is limited to the calculation of damages once liability is established.").

With respect to proving the non-de minimis amount of such unpaid overtime, the Court found at summary judgment that the Secretary had not yet "shifted" the burden by establishing the amount of unpaid, compensable time spent on the activities at issue by a just and reasonable inference.  *See* dkt. no. 273 at 25, 30 (leaving to the jury the determination of whether Dr. Radwin's measurements are representative and measured compensable activities).  As noted above, at trial, East Penn will show through cross-examination of Dr. Radwin and direct examination of Dr. Fernandez, as well as various other sources, that Dr. Radwin's measurements are *not* representative for all employees on Schedule A and did not accurately measure the amount of unpaid time spent on compensable activities.   Rather, Dr. Radwin's measurements are no more than "mere speculation" and do not shift the burden of proof under *Mt. Clemens Pottery*.  *See, e.g., Rosano v. Township of Teaneck*, 754 F.3d 177, 189 (3d Cir. 2014) (speculation as to amount of uncompensated work performed not sufficient to carry plaintiffs' burden of proof under *Mt. Clemens*).  Even if the jury were to find that the Secretary shifted his initial burden of proof, East Penn's cross-examination of Dr. Radwin and examination of Dr. Fernandez, coupled with testimony from hourly and management witnesses regarding the time they spend on the activities at issue, will "negate the reasonableness" of the inference of damages.

In addition, East Penn will establish through the cross-examination of Michael Murray, the Secretary's back-wage witness, that he simply added Dr. Radwin's daily time estimates to the time

already paid by East Penn to come up with the Secretary's proffered damages number, and that he did not account for numerous relevant facts, including differences determined by Dr. Radwin and DOL investigators from plant to plant, the amount of daily time already paid by East Penn, and the fact that many or most employees had already clocked out and left the plant before the endpoint for which the Secretary would award them damages.   Thus, should the jury find that East Penn owes back wages, it cannot rely on Mr. Murray's damages testimony for purposes of awarding such back wages.

### F.  Whether The Secretary Has Proved That East Penn Acted Willfully

The jury must consider whether East Penn acted willfully *only* if it first finds that the Secretary has proved through representative evidence that East Penn has failed to compensate the hourly employees on the operative Schedule A by more than a de minimis amount and thus owes such employees overtime pay.   Should the jury reach this issue, it must consider whether the Secretary has proved by a preponderance of the evidence that East Penn knew of the existence and effect of the FLSA and knowingly or recklessly violated or disregarded its requirements.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (willfulness requires plaintiff to prove that employer knew it was violating the law or acted in reckless disregard of the FLSA's overtime requirements).  If East Penn knew only that the law was potentially applicable, and did not act in reckless disregard as to whether its conduct was prohibited by the law, then its conduct was not willful, even if the jury finds that East Penn acted unreasonably.  *See Gonzalez v. Bustleton Servs., Inc.,* No. 08-4703, 2010 WL 1813487, at *5 (E.D. Pa. Mar. 5, 2010) ("I cannot equate an erroneous belief, however unreasonable, with a willful violation.").   In other words, willfulness *assumes* that the employer's belief regarding its compliance with the FLSA was wrong, but that erroneous belief alone is insufficient to prove willfulness.

As we have briefed elsewhere, the Secretary takes an unduly cramped view of what evidence is relevant to the willfulness determination and, in particular, erroneously contends that the only relevant facts are those facts *relied upon* by the employer at the time it adopted its employment policies. That is not the test, and indeed, the second part of the rest ("reckless disregard") by its nature is limited to things that an employer was aware of but did *not* rely upon. As the Third Circuit explained in *Brooks v. Vill. Of Ridgefield Park*, 185 F.3d 130 (3d Cir. 1999), the test is how "a reasonably prudent man [i.e., employer] would have acted under the same circumstances." *Id.* at 137. When considering the "circumstances," the Third Circuit has fairly clearly implied that *all* circumstances must be considered. *See Reich v. Gateway Press, Inc.*, 13 F.3d 685, 703 (3d Cir. 1994) ("The district court concluded that under all the circumstances, Gateway's actions were not willful. We are not inclined to disturb this conclusion."); *see also Rhea Lana, Inc. v. Department of Labor*, 824 F.3d 1023, 1031 (D.C. Cir. 2016) (noting that Department of Labor conceded that there is a "totality-of-circumstances inquiry regarding willfulness").

With respect to uniformed employees, at trial, East Penn' proofs demonstrating its lack of willfulness will include the following: (i) that it documented its five-minute grace period in the uniform policy adopted in 2003 in response to advice provided by its labor and employment counsel, Gary Melchionni; (ii) that Mr. Melchionni approved the 2003 uniform policy; (iii) that OSHA has routinely visited the Lyon Station campus, and even inquired about pay for shower time in the Metals Division during re-certification for OSHA's VPP program, yet did not indicate to East Penn that its pay practices were problematic; (iv) that the Wage and Hour investigation preceding this lawsuit was the first time that the Department of Labor had conducted an FLSA investigation of East Penn; (v) that the Department did not tell East Penn at the conclusion of the investigation how it expected East Penn to comply with the FLSA; (vi) that East Penn's use of

time clocks to record attendance is permitted by DOL regulation; (vii) that other than the S1 employee who complained to OSHA in 2016, no employee has complained about not receiving enough paid time for end-of-shift clothes-changing and showering and *no employee* ever complained about inadequate paid time for start-of-shift dressing; (viii) that the crux of the OSHA complainant's complaint is that other plants at Lyon Station received more paid time for showering; (ix) that OSHA official Tim Braun wrote to Wage and Hour Division official JoAnne Gregory about East Penn's response to the OSHA complaint and noted, "They want to be sure they are following the regulations";  (x) that East Penn expanded the amount of time paid for showering and dressing at the end of shift in 2016 to respond to the concern raised by the OSHA complainant, not because it believed that employees could not perform clothes-changing and showering in the time previously allotted; (xi) that Mr. Melchionni approved East Penn's 2016 revision to its uniform policy making the amount of time paid for showering and clothes-changing ten minutes across facilities; (xii) that East Penn personnel managers participate in professional human resources organizations to stay up to date with legal requirements affecting labor and employment issues; and (xiii) East Penn fully cooperated during the two-year investigation preceding this lawsuit, including producing a half-million pages of documents on a short turnaround without withholding or losing a single piece of evidence ever requested by DOL.

East Penn will establish these points proving that it acted proactively to investigate its legal obligations and comply with them, as well as proving that it was never put on notice by DOL (either through OSHA or the Wage-Hour Division, both of which are divisions under the Plaintiff Secretary of Labor) that East Penn should have been behaving differently.  This includes the examination of East Penn personnel employees, including Mr. Melchionni's main point of contact, head of Personnel Alison Snyder; other management involved in the 2003 and 2016 policy review

and adoption process; supervisors and hourly employees (regarding lack of complaints); Mr. Melchionni; head of Environmental Health and Safety Troy Greiss (regarding interactions with OSHA); and cross-examination of DOL officials (regarding the status of the 2016 investigation and what was communicated or not to East Penn during the investigation, including the closing conference, and what DOL documented internally regarding East Penn's state of mind).   In addition, East Penn will establish through the testimony of its expert witness Brian Farrington the objective reasonableness of East Penn's viewpoint, as permitted by the Court in ruling on the Secretary's Motion to Exclude the Expert Report and Testimony of Brian T. Farrington.  *See* dkt. no. 239 at 28.[7]  In addition, East Penn's proposed jury instructions include a requested instruction that the Court's summary judgment ruling marks the first time that a court with binding authority has ruled that the correct standard of payment for compensable clothes-changing and showering activities is actual, not reasonable, time.  *See* dkt. no. 273 at 64 ("Moreover, the Court is aware that this particular case presents a question of first impression with this Circuit as to the correct measurement of time for pre- and post-shift activities.").

With respect to standard PPE items and non-uniformed employees, should the jury find East Penn liable for unpaid overtime with respect to such employees, the Secretary must also prove willfulness with respect to these donning and doffing activities.   Indeed, courts to this day keep ruling that standard PPE items are noncompensable either because they are not "integral and indispensable" or because the time is de minimis as a matter of law.  *See, e.g., Tyger v. Precision Drilling Corp.,* 594 F. Supp. 3d 626, 661-62 (M.D. Pa. Mar. 25, 2022) (standard PPE such as steel-toed boots, hard hates, safety glasses, gloves, and earplugs did not protect against "transcendent

---

[7] The Court also ruled that Mr. Farrington's testimony "may provide background information concerning established customs and practices in his respective field [of Wage and Hour investigations]." *Id.*

risks" at the worksite and was therefore non-compensable); *Howard v. Post Foods, LLC.,* No. 1:19-cv-570, 2022 WL 4233221 (W.D. Mich. Sept. 14, 2022) (standard PPE was not "integral and indispensable" and is de minimis as a matter of law). Thus, the Secretary's supposed main proofs and arguments as to willfulness set forth in his Amended Trial Plan (dkt. no. 413-2 at 2) have no bearing on non-uniformed employees, and it remains unclear how the Secretary intends to prove this aspect of his case.[8]

### G.  Whether Certain Employees on Schedule A Wear PPE or Uniforms

East Penn will demonstrate at trial that certain individuals included on Schedule A do not meet the criteria for participating in a back wages award because during the limitations period they neither wore a uniform nor were required to begin and end their paid shift wearing standard PPE. The individuals include hourly employees who worked in engineering jobs; hourly employees who only wore a uniform or PPE when working as a temp worker at East Penn; one individual who worked as an office worker and interpreter; and hourly employees who worked in the office portion of the Manufacturing Service plant.

Dated:  January 27, 2023              Respectfully submitted,

                                    /s/ Michael J. Mueller
                                    Michael J. Mueller *pro hac vice*
                                    Evangeline C. Paschal *pro hac vice*
                                    Perie Reiko Koyama *pro hac vice*
                                    Brianne M. Reese *pro hac vice*
                                    HUNTON ANDREWS KURTH LLP

---

[8] In his Amended Trial Plan, the Secretary suggests that his willfulness presentation will include proof that East Penn knew of "on-the-floor compensable work" occurring outside of shift times. See dkt. no. 413-2 at 2.  However, alleged off-the-clock production work is not an issue in this litigation, as set forth more fully in East Penn's Motion in Limine to Preclude Plaintiff from Offering Evidence of and References to Unpaid Productive Time or "Other" Unpaid Compensable Work (dkt. no. 354); *see also* Mem. Op. of Apr. 20, 2022, dkt. no. 318 at 4 ("[t]his suit is not about unpaid productive time spent building battery parts." ).  Thus, such evidence cannot form part of the Secretary's proof on his willfulness claim.

2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
mmueller@huntonak.com
epaschal@huntonak.com
pkoyama@huntonak.com
breese@huntonak.com

/s/ Daniel B. Huyett
Daniel B. Huyett
Pa. Attorney I.D. No. 21385
STEVENS & LEE, P.C.
111 North Sixth Street, P.O. Box 679
Reading, PA 19603-0679
Telephone:  (610) 478-2219
Facsimile:  (202) 988-0801
dbh@stevenslee.com

*Counsel for Defendant*
*East Penn Manufacturing Co.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Michael J. Mueller, hereby certify that a true and correct copy of the foregoing was

served on counsel listed below on January 27, 2023, through the Court's ECF system:

OSCAR L HAMPTON
U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street, Mailstop SOL/22
Philadelphia, PA 19103-2968 (all further recipients are at this same mailing address)
215-861-5120; Email: hampton.oscar@dol.gov

ADAM F. WELSH
215-861-5159; Email: welsh.adam@dol.gov

ANDREA LUBY
215-861-5128; Email:  Luby.andrea@dol.gov

ALEXANDER E. GOSFIELD
215-861-5124; Email:  Gosfield.alexander.e@dol.gov

ELIZABETH A. KUSCHEL
215-861-5113; Email: kuschel.elizabeth.a@dol.gov


Dated:  January 27, 2023                              /s/ Michael J. Mueller
                                                     Michael J. Mueller