# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARTIN J. WALSH,** | : | |
| *Secretary of Labor,*[1] | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff* | : | |
| **v.** | : | |
| | : | |
| **EAST PENN MANUFACTURING** | : | |
| **CO., INC.,** | : | **No. 18-1194** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                    FEBRUARY *13*, 2023

     Groundhog Day has come and gone, but in this Court, it feels as if this case is stuck in a time-warp. That is because, once again, the Secretary of Labor wishes to broaden the scope of this Fair Labor Standards Act case, years after he filed his Complaint.[2]

     East Penn Manufacturing Company, Inc. is a battery manufacturer, and, because certain materials used in that manufacturing process are dangerous, the employees working near those materials must wear uniforms or personal protective equipment and shower after their shifts. East Penn has argued that it pays its employees for what it considers to be a "reasonable" time to don and doff this equipment and shower. The Secretary has asserted that East Penn must pay its employees for the "actual" time employees spent on these activities and has sued to recover backpay. All signs indicated that this case revolved around over 11,000 direct employees of East Penn who donned and doffed uniforms and PPE.

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), the latest Secretary of Labor, Martin J. Walsh, is substituted for Eugene Scalia as the plaintiff in this action.

[2]    A root cause of the déjà vu is a similar dispute that arose in late 2021, when the Secretary announced that he was seeking recovery for employees who wore neither uniforms nor personal protective equipment and were essentially office workers. *Walsh v. E. Penn Mfg. Co.*, No. 18-cv-1194, 2021 WL 5448961, at *5 (E.D. Pa. Nov. 22, 2021).

Then, the Secretary sought leave to amend Schedule A to his Complaint, which provides a list of 11,434 employees (as amended), on behalf of whom the Secretary expects to be entitled to recover in this suit. East Penn determined that two individuals on that list wore uniforms during the applicable limitations period only while engaged as *temporary* workers on a third-party employer's payroll, and they were therefore not East Penn employees at the relevant time. East Penn now moves to exclude temporary employees from trial.

The Secretary did not provide notice that temporary workers were to be involved in this case, preventing East Penn from timely developing any relevant defense. Finding that permitting the impending trial to go forward with temporary employees involved would blindside East Penn, the Court grants East Penn's motion for the reasons stated below.

## BACKGROUND

On March 20, 2018, the Secretary of Labor brought this action against East Penn Manufacturing Company, Inc., a battery manufacturer, alleging that East Penn failed to compensate its employees for time spent changing into and out of uniforms and personal protective equipment and showering at the end of a work shift, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 203 *et seq*. In his Complaint, the Secretary identified current and former employees of East Penn who could be owed back wages and liquidated damages for the alleged FLSA violations, all of whom are listed on Schedule A to the Complaint.

At the time the Complaint was filed, it was understood that Schedule A was not exhaustive. In fact, the Complaint sets forth that "employees presently unknown to the Secretary for the period covered by this Complaint . . . may be identified during this litigation and added to Schedule A." Compl. at 4.

The Secretary revised his Schedule A on October 11, 2019. He then filed a second revised Schedule A on February 19, 2021. East Penn objected, arguing that the Secretary ought to have

sought leave of the Court, and in any event, the motion was premature while the scope of the class was in flux pending a ruling on summary judgment. The Court granted East Penn's motion to strike the revised Schedule A without prejudice, stating that the Secretary could file a motion for leave to resubmit Schedule A, if any subsequent revisions implemented the narrowed scope of employees following the summary judgment ruling. On May 20, 2022, the Secretary properly filed a motion to amend Schedule A, and the revised schedule included two temporary workers. Finding that the names of the temporary workers could not be removed from the Secretary's schedule upon agreement of the parties without Court intervention, East Penn filed the instant motion to exclude temporary employees from trial.

## LEGAL STANDARD

There is a basic premise that "parties can be expected . . . to reveal basic information to their adversaries." 8A Charles A. Wright et al., *Federal Practice and Procedure* § 2053 (3d ed. 2022 update). The federal fair notice and pleading rules demand that a complaint give "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). During discovery, each side must list likely witnesses, compute their potential damages, and exchange relevant documents. Fed. R. Civ. P. 26(a)(1)(A). If a party learns that its disclosure during discovery for some reason becomes incomplete or incorrect, the party must "supplement or correct" those disclosures. Fed. R. Civ. P. 26(e)(1).

Where a party's disclosures are lacking, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "It is clear that Rule 26 was designed, in part, to eliminate the element of 'surprise' in civil litigation." *Burdyn v. Old Forge Borough,* 330 F.R.D. 399, 410 (M.D. Pa. 2019).

DISCUSSION

## I.    No Proper Notice of Recovery for Temporary Workers

Before June 2022, the Secretary provided no notice to East Penn or the Court that temporary workers employed by a third party were supposedly within the scope of this case. Reacting to East Penn's argument that the two temporary workers appearing on Schedule A are not within the scope of this trial, the Secretary hyperbolically suggests that East Penn is raising a defense not previously disclosed. The Secretary queries whether East Penn has been obfuscating thousands of temporary workers and now justifies pulling the wool over the Secretary's eyes by claiming East Penn lacked notice. In essence, the Secretary tries to defend his late effort to add a new category of workers by going on offense.

The Secretary's argument does not hold water. Looking to the Complaint first, the Secretary accuses East Penn of underpaying *its own employees*. The theory espoused in the Complaint is that East Penn requires *its own employees* to don and doff uniforms and PPE before and after shifts and then shower before leaving and yet fails to pay for the actual time spent doing so. There is no indication on the face of the Complaint that the Secretary seeks to recover wages for temporary workers engaged to work at East Penn by third-party employers, and the Secretary has failed to point to any paragraph that would put East Penn or the Court on notice that East Penn and the third-party employers should be considered as one so as to implicate the economic reality test.[3]

---

[3]      Courts use the economic reality test to determine whether a joint employment relationship exists between employers for purposes of the FLSA. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417–18 (3d Cir. 2012). The factors relevant to the test include whether one employer "(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records," although these factors are not exhaustive. *Id.* at 418.

Further, the Secretary points to no question or request that suggests the temporary worker issue was one he was actively pursuing during discovery. The Secretary's First Interrogatory asked for names, contact information, and work assignments of all East Penn *employees* during the relevant time period, and the Secretary concedes that East Penn did not withhold any information for individuals it understood to be its employees. Moreover, Steve Fedock, one of the Wage and Hour Investigators, was asked during his deposition why he had not requested East Penn's contract documents with independent contractors, subcontractors, or day laborers at its facilities, which would have been consistent with the letter Mr. Fedock and Investigator Aimee Iannelli sent on March 17, 2016. Doc. No. 339-1 at ECF 3. Mr. Fedock responded during his deposition that he had "ratcheted down" the investigation and was not seeking documentation of employer contracts or subcontracts for staffing during the investigation. Fedock Dep. Tr. 97:3–98:14 at Doc. No. 155-39; Doc. No. 339-1 at ECF 2–3.

Rather, the Secretary was actually put on notice *by East Penn* at various points during this litigation, before and after discovery, that temporary workers employed by staffing agencies were involved at some capacity at the battery manufacturer but were not believed to be within the scope of the impending trial. For example, in response to 25 informal questions penned by the Secretary's back-wage witness Michael Murray, East Penn responded that it would produce "track[ed] payroll for all East Penn (i.e., non-temporary) personnel . . . ." Def.'s Mot. to Exclude Temporary Employees at 2, Doc. No. 331. The Secretary does not deny that he never followed up on this response, despite discovery remaining open for five additional months.[4] East Penn also argues that after the close of discovery, on June 17, 2021, East Penn confirmed via email that it had not

---

[4]     It would require an impressive suspension of disbelief to accept the argument that the Secretary, *the head of the Department of Labor*, and investigators and attorneys working on his behalf in the Wage and Hour Division could not deduce from this reply that East Penn might be using the services of a third-party staffing agency and temporary workers.

provided contact information for temporary workers "because such individuals are not East Penn employees, do not have W2s issued by East Penn, and are not in East Penn's pay data." *Id.* at 3. Then, on April 1, 2022, East Penn also explained that certain employees had not been included in pay data productions because they "were temp employees, not East Penn employees, at the time of Dr. Radwin's study" and "[t]emp employees have never been part of this litigation." *Id.* The Secretary complains that these latter two examples of notice by East Penn came only after discovery and summary judgment briefing had closed. But the Secretary does not explain why he would wait to raise the issue of temporary workers with the Court until June 23, 2022, if the revelation that the parties were at odds as to the scope or categories of employees covered by this litigation occurred over a year prior, *i.e.*, June 17, 2021.

The Secretary has apparently only ever included two temporary workers in Schedule A. Schedule A lists the employees that the Secretary believes to be owed back wages. In his initial Schedule A, the Secretary listed about 6,900 manufacturing employees. He has moved for leave to revise Schedule A to list 11,434 names.[5] Again employing offense to raise his defense, the Secretary asserts that each of the contested individuals were included on earlier-disclosed versions of Schedule A, and East Penn is dilatory in raising its objections now. But East Penn asserts that the Secretary included the two temporary persons in error because they appear in pay data produced by East Penn for the time that they worked as *East Penn employees*, and when they worked in positions that did not require donning or doffing uniforms or PPE or showering after a shift.

A plaintiff must identify "each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(iii); *see Stewart v. Nanouh*, No. 17-cv-1458, 2021 WL 794936, at *3 (E.D. Pa. Mar. 2, 2021); 8A

---

[5] In other words, the instant motion relates to 0.017% of the employees within the scope of this case.

Wright et al., *Federal Practice and Procedure* § 2054 ("The basic goal is to avoid surprise at trial and facilitate receipt of evidence during the trial."). In labor cases, Federal Rule of Civil Procedure 26 is violated where employees are added in late stages of litigation and where "[t]he defendants would have generally approached and defended the case differently, approached settlement differently, potentially deposed different persons, and potentially called different witnesses" had they known the case concerned a different scope of employees. *Stewart*, 2021 WL 794936, at *4.

Here, the Court finds no indication in the Complaint, discovery requests, or summary judgment briefings that the Secretary meant to claim and recover back wages for workers employed on a temporary basis at East Penn facilities by third-party staffing agencies.   The Secretary has failed to offer persuasive facts that suggest East Penn was on notice that temporary workers were at issue in this case. Like the Secretary's attempt to add office workers to the scope, this is not a situation where the Secretary seeks to add more employees under the same theory of liability. *Cf. Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 47–48 (5th Cir. 1973) (permitting the Secretary to add new construction workers to trial claiming underpayment of hotel's construction workers). Instead, the Secretary seemingly seeks to pursue more information "through any means available" relating to temporary workers employed by third parties who are allegedly East Penn's employees under the economic reality test. Pl.'s Resp. to Def.'s Mot. to Exclude Temporary Employees at 1 n.1, Doc. No. 338. But he failed to exhaust readily available means in discovery years ago, so he cannot expand the scope of this trial now.

## II.   Adding Temporary Workers Now Is Neither Justified nor Harmless

A party who "fails to provide information . . . as required by Rule 26(a) or (e), . . . is not allowed to use that information . . . on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Secretary fails to confront

either justification or harmlessness and instead seeks to shift the burden to East Penn, claiming it is asserting a new defense it has never pleaded before.

"A party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Tolerico v. Home Depot*, 205 F.R.D. 169, 176 (M.D. Pa. 2002). To decide harm, this Court weighs the following "basic considerations":

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified [or against whom the excluded information would be used], (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule . . . would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).

Permitting the Secretary to seek recovery for temporary workers would unduly prejudice East Penn. East Penn was not on notice that the Secretary planned to seek recovery for this additional category of individuals, so it had no "adequate opportunity to develop the factual record to defend itself" on that theory during discovery. *Aetna Inc. v. Mednax, Inc.*, No. 18-cv-2217, 2021 WL 949454, at *6 (E.D. Pa. Mar. 12, 2021). Had East Penn been aware of the Secretary's intentions, East Penn might have interpleaded the temporary staffing agencies formally employing the temporary workers, moved to dismiss the claim, conducted more discovery, particularly as relevant to the economic reality test, or prepared a summary judgment brief on the issue. *See Kroeck v. UKG, Inc.*, No. 22-cv-66, 2022 WL 4367348, at *3–4 (W.D. Pa. Sept. 21, 2022) (dismissing FLSA claim for failure to plead that defendants were a joint employer); *Nagel v. RAM Indus. Servs.*, No. 20-cv-840, 2022 WL 17721083, at *8–9 (M.D. Pa. July 21, 2022) (granting summary judgment to employer following economic reality analysis); *Xiao v. Sichuan Gourmet*

*LLC*, No. 21-cv-482, 2022 WL 819096, at *12 (W.D. Pa. Mar. 18, 2022) (dismissing FLSA claim with regard to seven alleged employers under the economic reality test but finding that two employers plausibly could be in a single employer relationship with plaintiff).

Arguably, the only way East Penn could cure the resulting prejudice of an expanded scope of this litigation would be to reopen discovery. At the very least, this would be necessary for the Secretary to make back-pay computations for temporary workers, because East Penn produced only updated payroll data in its possession—that is, payroll data for its own employees. The parties have plowed this ground before. The Complaint in this case was filed five years ago, and since then, the parties have engaged in years of discovery, produced tens of thousands of pages in summary judgment briefings and exhibits thereto, manufactured dozens of motions effectively requesting reconsideration of this Court's orders and opinions, and submitted boxes upon boxes of evidence, the relevancy and admissibility of which is constantly in dispute. The employees *actually* at issue in this case deserve an orderly trial that can efficiently resolve the dispute about their wages. The Secretary may, within a matter of weeks, seek back pay for over 99.98% of the individuals listed on Schedule A as employees of East Penn. "[T]he heart of this case" will thus remain undisturbed by this ruling; the exclusion of these two individuals from Schedule A does not represent "an extreme sanction" to the Secretary because it "merely binds [the Secretary] to [his] own long-espoused theory of [the] case." *Aetna*, 2021 WL 949454, at *6.

East Penn does not explicitly argue that the Secretary has acted in bad faith by injecting the current issue at this stage of the litigation, and the Court does not draw that conclusion on its own. Still, the Secretary is ready to allege East Penn's deceit in failing to plead a defense when the Secretary's own Wage and Hour investigator noted in his deposition that subcontracted employees were beyond the scope of the case. *See* Fedock Dep. Tr. 97:3–98:16, at Doc. No. 155-39. "[A]

plaintiff remains master of his complaint, and can make choices accordingly," so "a defendant does not have the right to dictate the manner in which a plaintiff litigates the case." *Hereford v. Broomall Operating Co. LP*, 575 F. Supp. 3d 558, 564 (E.D. Pa. 2021). But the reverse of that coin is true, too—East Penn was under no obligation to plead a defense to a claim that was never apparent based on the Secretary's Complaint, his conduct during discovery, or his motions for summary judgment. If the Secretary will not make clear whom he is representing, that begs the question: who will?

Once again, the Court is mindful of its duty to prevent this case from being derailed. The long-anticipated multi-month trial draws nigh. Temporary employees will not be included at trial.

## CONCLUSION

Because the Secretary has once again failed to give notice of employees he asserts are within the scope of this litigation, the Court grants East Penn's Motion to Exclude Temporary Employees from Trial. The Secretary may not argue at trial about individuals working at East Penn facilities on a temporary basis at all times relevant to this case. The Secretary's Motion to Amend Schedule A is granted, provided that the resulting revised Schedule A does not include the names of the individuals who are temporary employees. Appropriate orders follow.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE