IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE SU, | : | |
| *Acting Secretary of Labor,*[1] | : | CIVIL ACTION |
| | : | |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| EAST PENN MANUFACTURING | : | |
| CO., INC., | : | No. 18-1194 |
| *Defendant* | : | |

**MEMORANDUM**

PRATTER, J.                                                    APRIL ⟨5⟩, 2023

Federal Rule of Evidence 1006, which permits the use of summary evidence to prove the content of other writings and records, is meant to keep the fact-finder from falling down a rabbit-hole of voluminous documents, spreadsheets, and calculations. But while the resulting aid to a jury may be significant in terms of time-saving, clarification, and convenience, admission of Rule 1006 evidence runs the risk of inaccuracy, allowing proponents, either purposefully or accidentally, to shrink or grow figures to the benefit of their case behind the obfuscating screen of other vast or complex piles of evidence.

East Penn Manufacturing Company, Inc. has filed a Motion to Exclude PX-1 and Associated Summaries of East Penn Employee Declarations, arguing that the summary charts that the Secretary of Labor plans to offer do not meet the admissibility requirements under the Federal Rules of Evidence. The Secretary contends that its summaries are based only on information contained in East Penn's 11,454,296 time and attendance records and 378 employee declarations gathered by East Penn itself, and any inaccuracies in the summaries are appropriately the subject

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), the Acting Secretary of Labor, Julie A. Su, is substituted for Martin Walsh as the plaintiff in this action.

1

of cross-examination when the preparing witnesses are before the jury. For the reasons discussed below, the Court will grant East Penn's motion to exclude.

## BACKGROUND[2]

The Secretary of Labor sued battery manufacturer East Penn Manufacturing Company, Inc., claiming that East Penn underpaid its workers for the they time spent showering and donning and doffing uniforms and personal protective equipment (PPE) in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203 *et seq.*, and failed to make and preserve adequate and accurate records of employee time. During the third week of trial, the Court heard *voir dire* of the Secretary's exhibit PX-1, offered as a Rule 1006 chart purportedly summarizing the contents of 378 employee declarations gathered by East Penn for the summary judgment phase of litigation and an underlying chart of East Penn's punch-in and punch-out times.

The Secretary produced PX-1 and associated documents underlying the chart on January 27, 2023. The "unpaid work minutes" information from PX-1 is incorporated by Excel function into a bar graph, which, the Secretary contends, divides in-scope East Penn employees based on the amount of time for which they were uncompensated. An intern in the Department of Labor created the chart, and at a later point, the Solicitor's Office provided Jason Mowday, Assistant District Director for the Wage and Hour Division of the Department of Labor, with the chart for his review and correction. Mr. Mowday estimated that he spent two months reviewing each of the employee declarations and editing the chart, line by line.

At the time it was provided to Mr. Mowday, the chart did not summarize all 756 employee declarations that East Penn had gathered, and Mr. Mowday did not know the criteria used by other authors of the chart to exclude or include the employee declarations. Mr. Mowday used his own

---

[2]     The Court assumes familiarity with the underlying facts of this case and presents only background matters that are directly relevant to the instant motion.

manual criteria to add or delete employees on PX-1, including whether the employee worked at a plant inside or outside the scope of the litigation, whether the employee was an hourly worker or a leader, and whether the declaration was "vague" or showed more than a twenty-minute gap between the start of the workday and the scheduled shift start.  Mar. 31, 2023 Tr. at 48:5–21. Mr. Mowday did not keep a record of why individual employees were removed or added to PX-1.

The majority of the 756 employee declarations did not specify the employee's shift start and end time. Where the declaration did not provide shift information, Mr. Mowday incorporated the start and end times of a given employee's shift from a summary of East Penn's time records prepared by the Secretary's witness, Michael Murray. Mr. Murray summarized over 12 million time and attendance records from East Penn's raw data for the period between November 23, 2014 through December 31, 2019. Mr. Murray, along with his supervisee, Thomas Roma, wrote and reviewed scripts that translated the raw data into a condensed summary. Mr. Murray and Mr. Roma did not exercise any discretion or subjectively evaluate the raw time data.

Mr. Mowday frequently used the arrival time of any given employee as stated in his or her declaration as the time when he or she began work. That is, Mr. Mowday sometimes incorporated an assumption that employees' "first touch" of their uniforms corresponds exactly with their arrival at the plant, without analyzing the distance of the employees' lockers from a given point of entry. Mr. Mowday acknowledged that most of the 756 declarations included language confirming that ten minutes is "sufficient" for end of shift doffing and showering activities. Nevertheless, Mr. Mowday did not incorporate such statements into his summary, instead assuming that the employee declarants are "not in charge of keeping their own records. They don't know if 10 minutes is enough." Mar. 31, 2023 Tr. at 34:24–25. Instead, to calculate unpaid time at the end of each shift, Mr. Mowday sometimes relied on the difference between an employee's shift end time

3

and when the employee punched out, as shown in Mr. Murray's time and attendance summary. At other times, Mr. Mowday calculated unpaid time at the end of the shift based on estimates set forth in a given employee's declarations. Mr. Mowday confirmed that there is no indication to a reader of PX-1 whether the underlying information comes from an employee's declaration or Mr. Murray's time and attendance summary.

At the March 31, 2023 *voir dire*, Mr. Mowday and Mr. Murray appeared as witnesses. Both East Penn and the Secretary submitted supplemental briefs. The motion is therefore ripe for decision.

**LEGAL STANDARD**

Per Federal Rule of Evidence 1006, a proponent of evidence

> may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006. "To have a summary admitted, the proponent of a summary must lay a proper foundation and show that the summation is accurate." *United States v. Malik*, 424 F. App'x 122, 128 (3d Cir. 2011). "Decisions in . . . connection [with the admissibility of Rule 1006 evidence] are committed to the sound discretion of the trial court, which in this context is very broad." *United States v. Bansal*, 663 F.3d 634, 668 (3d Cir. 2011).

Rule 1006, however, is "not a back-door vehicle for the introduction of evidence which is otherwise inadmissible." *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (quoting *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004)); *see also United States v. Jennings*, 724 F.2d 436, 441 (5th Cir. 1984) ("Recognizing the possibility for misuse of summary charts . . . a trial judge must carefully handle their preparation and use."). For example, where a chart purporting to be a Rule 1006 summary is "better described as a synthesis" and includes

4

"several assumptions, inferences, and projections about future events, which represent [a witness's] opinion, rather than the underlying information," then such evidence is properly held inadmissible. *Eichorn*, 484 F.3d at 650; *see also United States v. Fullwood*, 342 F.3d 409, 414 (5th Cir. 2003) ("[T]estimony by an advocate summarizing and organizing the case for the jury . . . [is] not justified by the Federal Rules of Evidence or our precedent. For example, summary witnesses are not to be used as a substitute for, or a supplement to, closing argument."). On the other hand, "[a] Rule 1006 summary chart need not accurately reflect *all* the facts in the case; it merely must accurately represent the facts *that it purports to summarize*." *United States v. Lynch*, 735 F. App'x 780, 786 (3d Cir. 2018) (emphasis added).

## DISCUSSION

### I.     The PX-1 Chart Purports to Summarize Sufficiently Voluminous Writings and Recordings

As a threshold matter, Rule 1006 is only applicable where the summary evidence is used to "prove the content of voluminous writings [or] recordings." Fed. R. Evid. 1006. "Rule 1006 evidence by its very nature embodies an opinion that it accurately interprets or summarizes the contents of the voluminous source material." 31 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Evidence § 8043 (2d ed. Apr. 2022 update). Thus, when summary evidence is not used in relation to an expert opinion (*i.e.,* it is in the form of a lay opinion) Rule 701 requires that the summary evidence is "helpful to . . . determining a fact in issue." Fed. R. Evid. 701(b).

The evidence purportedly summarized in PX-1 is indisputably voluminous. As Mr. Mowday testified, he spent approximately two months reviewing 756 employee declarations, determining which of those declarations warranted inclusion in the summary, and going line by line to determine the accuracy of the summary. Moreover, PX-1 allegedly incorporates, via Mr. Murray's summary, 12 million entries in East Penn's raw time and attendance data for the period between November 23,

2014 through December 31, 2019. This magnitude of evidence "cannot be conveniently examined in court," and, if accurate, could be "helpful" to the jury. Fed. R. Evid. 1006; Fed. R. Evid. 701; *see, e.g., United States v. Onque*, 169 F. Supp. 3d 555, 574 (D.N.J. 2015), *aff'd*, 665 F. App'x 189 (3d Cir. 2016) (noting that Rule 1006 does not require "that it be literally impossible to examine all the underlying records" and finding that hundreds of exhibits related to dozens of property transactions were sufficiently voluminous to warrant the use of a summary exhibit).

PX-1 therefore clears a preliminary admissibility hurdle of Rule 1006.

## II.    The Secretary Has Failed to Show That PX-1 Is Accurate

"To have a summary admitted, the proponent of a summary must lay a proper foundation and show that the summation is accurate." *Malik*, 424 F. App'x at 128. Moreover, the opponent of summary evidence is entitled to notice of the source materials underlying the summary such that the adverse party has adequate opportunity to test the accuracy of the Rule 1006 exhibit. 31 Wright et al., Federal Practice and Procedure Evidence § 8045.

East Penn's examination of Mr. Mowday at *voir dire* raised some doubt as to the accuracy of PX-1, the Rule 1006 chart. East Penn, in the limited time allotted to it during *voir dire*, showed five examples of errors related to the importing of underlying evidence into the Rule 1006 chart.[3] The Secretary avers that Mr. Mowday had no opportunity to reconstruct his reasoning without the relevant employee declarations before him, attributed alleged inconsistencies to East Penn's disagreement with how the language of the employee declarations should be interpreted, or were immaterial. However, Mr. Mowday confirmed that "[t]here very well could be" inaccuracies in PX-1, and he could not estimate when he had most recently reviewed the chart for accuracy. Mar.

---

[3]      The errors alleged by East Penn included: (1) a 30-minute difference between the time an employee reported in his declaration to be arriving at work versus the time he began work in PX-1, and (2) four instances where uncompensated end-of-shift time appeared to vary between Mr. Murray's time and attendance summary and the relevant PX-1 column.

31, 2023 Tr. at 7:13–22. But more significantly, even Mr. Mowday himself—despite by his own estimation spending *two months* reviewing the underlying evidence and editing and completing PX-1—could not determine whether the summary was accurate. That is because, for any given row in PX-1, there is nothing "to tell the reader what the source is for that information." Mar. 31, 2023 Tr. at 66:21–23. And given that shortcoming, the Court has discretion to prevent the use of such a summary when there was no sufficient opportunity for East Penn to establish its accuracy or inaccuracy. *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005) ("No federal rule is needed . . . to empower a district judge to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents before trial."). Because the Secretary's summary witness has testified that it took him two months to review and edit the Rule 1006 chart, East Penn cannot have had sufficient time—between when it received the summary on January 27, 2023 and when trial began on March 10, 2023—to review the summary when it did not even know from which documents the calculations of uncompensated time were derived.

The Secretary argues that it is entitled to present imprecise evidence to the jury under the burden-shifting framework established in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). In *Mt. Clemens*, the Supreme Court held that where an employer subject to an FLSA suit has failed to keep accurate or adequate records, the plaintiff "has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter *of just and reasonable inference*." *Mt. Clemens*, 328 U.S. at 687 (emphasis added). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's

evidence." *Id.* at 687–88. But the Secretary's right to put forward a *reasonable estimate* of uncompensated time under *Mt. Clements* should not be conflated with some right to introduce *inaccurate summaries* of otherwise admissible evidence under Rule 1006, thereby skirting the rules of evidence. For example, looking to the employee declarations, the Secretary may suggest that punch-in time is a reasonable estimate for when employees began to don their uniforms and PPE, but she cannot claim she is accurately summarizing such declarations by mislabeling that punch-in time as the time when employees actually began donning their uniforms. *Lynch*, 735 F. App'x at 786 ("A Rule 1006 summary chart need not accurately reflect all the facts in the case; *it merely must accurately represent the facts that it purports to summarize.*" (emphasis added)).

The Secretary has thus failed to meet her burden to show that the summation in PX-1 is accurate, so the summary is excludable on this basis.

### III.    PX-1 Presents a Synthesis Rather Than a Summary

"[C]alculations [going] beyond the data . . . summarized and includ[ing] several assumptions, inferences, and projections about future events, which represent [a summary witness's] opinion, rather than the underlying information" are not properly admissible under Rule 1006. *Eichorn*, 484 F.3d at 650. Where such inferences are included in a piece of evidence, summary charts are "properly classified as expert opinions that are 'subject to the rules governing opinion testimony' rather than Rule 1006." *Campbell v. Conway*, 611 B.R. 38, 45 (M.D. Pa. 2020).

Mr. Mowday made several judgment calls in editing the chart presented as PX-1.[4] First, in summarizing the employee declarations, he elected not to incorporate hundreds of employee

---

[4]    Although the Court acknowledges that Mr. Mowday was not the original author of PX-1 and is somewhat troubled that Mr. Mowday does not know the criteria by which that original author culled or added information from the underlying evidence, the fact that the original author is not available as a summary witness does not, in and of itself, destroy the admissibility of the exhibit. *See Lynch*, 735 F. App'x at 786 (finding that Rule 1006 does not require that the preparer of a summary be made available to testify).

statements that East Penn's end-of-shift pay period was sufficient to cover all time doffing uniforms and showering, determining instead that the declaring employees "don't know if 10 minutes is enough." Mar. 31, 2023 Tr. at 33:24–34:25. Where an employee's declaration and his or her corresponding row on Mr. Murray's time and attendance summary chart led to two possible estimations of that employee's unpaid minutes per day, Mr. Mowday agreed that he "gave the benefit to the employee" by incorporating the longer time into the summary chart. Mar. 31, 2023 Tr. at 32:18–21. Finally, Mr. Mowday disregarded East Penn's contention that it is "physically impossible" to don a uniform or complete showering simultaneously with punching-in or punching-out given the configuration of punch clocks at East Penn facilities, instead electing to conflate arrival or punch-in times with the start of compensable work activities, and departure or punch-out times with the end of compensable work activities. Mar. 31, 2023, Tr. at 21:16–23; 30:5–13. It is difficult to fathom how such subjective and scattershot "methodology" in summarizing evidence is anything other than cherry-picking, and leads to a conclusion that such restatement and distillation of other pieces of evidence is not a Rule 1006 summary, but rather "a written argument." *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997).

The Secretary attempts to salvage her argument by citing to *United States v. Wadley*, No. 19-2931, 2022 WL 1011693, at *4 (3d Cir. Apr. 5, 2022), to show the Third Circuit Court of Appeals' approval of summaries incorporating significant assumptions. In that criminal conspiracy case, FBI agents used wiretap evidence to estimate the quantities of drugs for which each defendant was responsible during the entire conspiracy. *Id.* at *1. The Special Agents kept track of drug sales on 19 days and used conservative estimates and historical information from repeat customers to approximate how many grams of heroin and crack cocaine were sold per day. *Id.* The Government then extrapolated that information by multiplying the amount of drugs sold per day by the number

of days each defendant was a member of the conspiracy. *Id.* But the Secretary's attempted comparison falls flat—the summary charts in *Wadley* were never admitted *as evidence* under Rule 1006, but instead served *as demonstratives aids* under Rule 611(a). *Id.* at *4. Moreover, the district court in Wadley appropriately "provided a thorough jury instruction on the charts" and declined to provide the charts to the jury during deliberations because they were not "substantive evidence in their own right." *Id.* at *4, *4 n.8.

Here, in contrast, the Secretary seeks to have PX-1 admitted as evidence under Rule 1006. The Court declines to place its imprimatur on PX-1 when it is apparent that the chart is not a mere summary of admissible evidence but rather, at the very least, a supplement to the Secretary's closing argument, the inclusion of which would mislead the jury. *See Fullwood*, 342 F.3d at 414. The Court also disagrees that the Secretary can cure any of its concerns with the chart by renaming rows and columns in the summary. Indeed, Mr. Mowday's discretionary decisions are so pervasive throughout the chart that "[t]he Court cannot discern a viable way to 'scrub' [the analysis] such that [it] can be presented in the form of summary evidence," at least with adequate time left for East Penn to, once again, review the 378 rows for accuracy and raise additional objections. *Freedom Mortg. Corp. v. LoanCare, LLC*, No. 16-cv-2569, 2023 WL 2570201, at *10 (D.N.J. Mar. 20, 2023).

*   *   *

## CONCLUSION

The Secretary may not perambulate the Federal Rules of Evidence and use Rule 1006 as a back door to its closing argument. The Court will grant East Penn's Motion to Exclude PX-1 and Associated Summaries of East Penn Employee Declarations. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

11