IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JULIE SU,[1]                               :
*Acting Secretary of Labor,*               :          **CIVIL ACTION**
                *Plaintiff*   :
                               :
         **v.**                     :
                                 :
                                 :
**EAST PENN MANUFACTURING**                :
**CO., INC.,**                             :
                *Defendant*   :          **No. 18-1194**

## MEMORANDUM

PRATTER, J.                                        NOVEMBER     , 2023

      The Secretary of Labor initiated this action against East Penn Manufacturing Co., Inc., a battery manufacturer, alleging that East Penn failed to pay many of its employees for the time they spend on clothes-changing and showering at a number of the facilities at East Penn's Lyon Station campus. After years and years of pre-trial free-wheeling accusations, recriminations, challenges, combative and costly discovery, and legal head-butting leading to Proustian piles of paper and a two-month trial, the jury returned a unanimous verdict against East Penn, awarding a portion of the amount of back-pay sought by the Secretary. East Penn successfully defeated the Government's effort to secure $22,253,087.56 in liquidated damages. Nonetheless, East Penn is determined to reanimate this dispute. Through its Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, or Remittitur (Doc. No. 638), East Penn tries to spark some life

---

[1] Throughout the life of this case, the Department of Labor has been led by a number of Secretaries or Acting Secretaries. Julia Su is the latest. Accordingly, case citations for this litigation will include different plaintiff names.

back into its claim that it is in fact not liable for any damages at all. In this, East Penn is unsuccessful. The Court will deny East Penn's motion and leave the jury's verdict intact.

## BACKGROUND

The background of this case has been extensively recounted elsewhere. East Penn Manufacturing Company is a large manufacturer of lead acid batteries, battery accessories, wires, cables, and related components. Because lead exposure is an associated hazard of battery manufacturing, East Penn requires most of its hourly employees to wear uniforms. Apr. 10, 2023 Trial Tr. at 157:22–24. The time that uniformed employees spend donning, doffing, and showering is compensable under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 203 *et seq. See Walsh v. E. Penn Mfg. Co.*, 555 F. Supp. 3d 89, 102 (E.D. Pa. 2021).

Prior to 2003, East Penn's Time Clock and Pay Procedures required each employee to be at his or her workstation at shift starting time. Doc. No. 157 ¶ 71; Doc. No. 176-1 ¶ 71(a). East Penn operated multiple shifts each day, often staggered among its many buildings at its campus in Lyon Station, Pennsylvania. Doc. No. 157 ¶¶ 2, 19; Doc. No. 176 ¶ 19(a). In 2003, on the advice of its outside labor and employment counsel, East Penn implemented a formal five-minute "grace period" during which employees could don their uniforms prior to reporting to their workstations. Doc. No. 155-56, at 2, Apr. 19, 2023 Trial Tr. 226:13–20. This 2003 Uniform Policy also allotted five minutes in which East Penn employees could doff their uniforms and shower post-shift. Doc. No. 155-56, at 2. East Penn did not conduct a formal, data-driven investigation into the amount of time East Penn employees actually needed to don, doff, and shower. Apr. 24, 2023 Trial Tr. at 161:14–25, 257:19–25. Instead, the company determined—based on management's collective anecdotal surmising and experience—that five minutes on each side of the shift was a reasonable amount of time in which employees could complete their donning, doffing, and showering activities on the actual East Penn premises. *See* Snyder July 16, 2019 Dep. Tr. 124:10–21, 146:21–

147:6; Apr. 19, 2023 Trial Tr. at 215:12–17. Moreover, it appears that some number of East Penn's employees continued to arrive to their workstations, in uniform, at the start of their scheduled shifts, even after the 2003 Uniform Policy went into effect on July 21, 2003. March 14, 2023 Trial Tr. at 54:19–55:3; May 3, 2023 Trial Tr. at 154:2–8.

In 2016, East Penn doubled the amount of paid time allotted post-shift for doffing and showering from five minutes to ten minutes. PX-8; *see also* DX-4; Apr. 19, 2023 Trial Tr. at 255:5–16. The amount of paid time for pre-shift activities—like donning uniforms—did not change. *See* DX-4. Shortly thereafter, the DOL Wage and Hour Division commenced the two-year investigation into East Penn that ultimately ended with the filing of this lawsuit. Apr. 19, 2023 Trial Tr. at 248:19–249:1; Apr. 25, 2023 Trial Tr. at 241:3–5; *see also* Complaint, Doc. No. 1.

The docket hints at the pre-trial dynamics of this case. Eventually, this case proceeded to a jury trial. The issues for the jury were: (1) whether East Penn failed to pay its *uniformed* employees the overtime compensation required by law in 24 of its facilities; (2) whether that unpaid-for time was *de minimis*; (3) what sum of money would fairly compensate the uniformed employees for damages; (4) whether *non-uniformed* employees' donning and doffing of Personally Protective Equipment (PPE) was compensable; (5) whether East Penn had failed to pay those non-uniformed employees their overtime pay; (6) whether such time was *de minimis*; (7) what sum of money would fairly compensate those non-uniformed employees; (8) whether East Penn had acted willfully to violate the FLSA; and (9) if the Government had proved by a preponderance of the evidence that certain employees even came within the scope of the litigation. *See* Verdict Form, Doc. No. 589. During the two-month trial,[2] approximately 60 witnesses appeared, and over 400

---

[2] During several pre-trial case management conferences, counsel for both parties were adamant that the case could not be tried in less than four months, during which some 700 witnesses were supposedly expected to appear. Counsel were repeatedly disabused by the Court of the likelihood of such a spectacle.

exhibits were offered and admitted. The Secretary made her case using several "buckets"[3] of evidence, including employee testimony and declarations, security camera footage, East Penn's relevant policies and procedures, and the testimony of Dr. Robert Radwin, an avowed expert witness for the Government who had conducted what he called a "time-study" to determine the amount of time East Penn's employees spent on pre- and post-shift activities.

The jury found that East Penn had violated the FLSA as to its 11,780 hourly uniformed employees, that the violations were not *de minimis*, that East Penn had not acted willfully, and that it owed back wages in the amount of $22,253,087.56. *See* Verdict Form, Doc. No. 589. The jury also found in favor of East Penn that the time non-uniformed employees spent donning and doffing PPE was non-compensable under the FLSA, and likewise found that the Secretary had also failed to prove that any of the 33 named employee individuals on the verdict sheet belonged in the litigation. *Id.*

East Penn timely filed its Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, or Remittitur, seeking various forms of relief from the verdict under Federal Rules of Civil Procedure 50(b) and 59(a) and (e). Doc. No. 638.[4] The issues presented in this Motion are not outside the ambit of preserved challenges, objections, and other rulings adverse to East Penn and disputed during the case. Hence, they merit consideration in substance.

---

[3]     *See* May 3, 2023 Trial Tr. at 98:18-99:8 (counsel for the Secretary describing different "buckets" of evidence).

[4]     East Penn moved for judgment as a matter of law after the Secretary's case-in-chief, *see* Apr. 13, 2023 Trial Tr. 90:18-20, and filed its written motion and accompanying memorandum on April 17, 2023. Doc. No. 562. East Penn renewed its motion under Rule 50(a), *see* May 2, 2023 Charge Conf. Tr. 4:2-8, and again moved for judgment as a matter of law after the Secretary's rebuttal case and close of record. *See* May 3, 2023 Trial Tr. 71:11-14. East Penn filed its written motion on May 10, 2023. Doc. No. 586. The jury issued its verdict on May 11, 2023, *see* Doc. No. 589, and the Court entered judgment in favor of the Secretary and against East Penn in accordance with that verdict on May 31, 2023. Doc. No. 591. East Penn filed this Motion, seeking relief under Rules 50(b) and 59(a) and (e), on June 28, 2023. Doc. No. 638.

DISCUSSION

## I.      Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b)

"A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If the court does not grant a Rule 50(a) motion, "[n]o later than 28 days after the entry of judgment … the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). A Rule 50(b) motion "should only be granted if the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Raiczyk v. Ocean Cnty. Veterinary Hosp.*, 377 F.3d 266, 269 (3d Cir. 2004) (internal citations omitted). In considering

> whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.

*Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 218 n.8 (3d Cir. 2021) (internal citation and quotation marks omitted); *see also Monroe v. FTS USA, LLC*, 860 F.3d 389, 401 (6th Cir. 2017). ("[W]hen assessing the sufficiency of the evidence, 'the only issue we must squarely decide is whether there was legally sufficient evidence—representative, direct, circumstantial, in-person, by deposition, or otherwise—to produce a reliable and just verdict.'" (quotation omitted)).

East Penn argues it is entitled to judgment as a matter of law on two grounds. First, consistent with the persistent presence of this issue throughout the case, East Penn asserts that the Secretary "failed to establish representative evidence of 5½ minutes of unpaid overtime for all uniformed employees at all 24 plants." Doc. No. 638-1, at 9. According to East Penn, the Secretary did not provide sufficient representative testimony and evidence, largely because only a statistically insignificant number of employees testified at trial. *See id.* at 5. Moreover, these

5

employees arguably offered varied testimony, further undermining, according to East Penn, the Secretary's position that this testimony is representative of all the relevant employees.

East Penn also argues that Dr. Radwin's study—which underlies the damages calculation submitted to the jury—is not a valid additional source of representative evidence because Dr. Radwin studied only a subset of the plants at issue. *See id.* at 20. Therefore, to the extent the verdict was based on Dr. Radwin's study, East Penn contends that it cannot stand. *Id.* East Penn further asserts that the Secretary cannot rely on the 756 pre-trial employee-written declarations offered at trial as additional representative evidence because none of those declarations addressed the amount of paid or unpaid time. *Id.* at 22. Finally, East Penn asserts that neither its pay policies nor its time records constitute representative evidence of unpaid time at all 24 plants.

Second, East Penn argues it is entitled to judgment as a matter of law because there is substantial evidence to show that any unpaid overtime was legally *de minimis*, especially "given the jury's finding of 5½ minutes [] and the lack of substantial evidence of any practical way for East Penn to administratively track that time." Doc. No. 638-1, at 1–2.

The Secretary counters East Penn's first argument for judgment as a matter of law by pointing out that because East Penn failed to keep adequate records, the Secretary's burden of proof is low. According to the Secretary, she offered sufficient evidence to satisfy that burden, including the collection of representative employee testimony and evidence, East Penn's policies and time records, and Dr. Radwin's time study. Doc. No. 643 at 8. The Secretary also points out that such evidence and testimony are sufficiently "representative" if they show that employees perform substantially similar unpaid work, so, argues the Government, East Penn's nitpicking about the minor variations in employee routines makes mountains out of mole hills. *See* Doc. No.

643, at 6–7.  In sum, the Secretary asserts that she produced more than enough evidence—representative and/or otherwise—to support the jury's verdict.

The Secretary also disagrees that there is substantial evidence that any uncompensated time was *de minimis* as a matter of law because (1) the *de minimis* defense is a balancing test and any one factor could be determinative, so the regularity of the unpaid work at issue here could alone support the jury's finding that the time was not *de minimis*; (2) East Penn could in fact have tracked the work at issue; and (3) the aggregate amount of unpaid work (*i.e.,* even a small one-off amount of time, when multiplied by the number of days, weeks, months, and years at issue and further multiplied by the number of employees) was undeniably substantial.

## A. The Secretary Presented Sufficient Evidence of the Unpaid Work for Rule 50(b) Purposes

Considering the whole of the trial, there is sufficient evidence in the record upon which the jury could properly reach a verdict for the Secretary. Due to East Penn's failure to keep adequate records,[5] the Secretary is only required to produce evidence sufficient to show the amount and extent of uncompensated work "as a matter of just and reasonable inference." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88; *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297–98 (3d Cir. 1991). To make her prima facie case, the Secretary does not have to bring every employee seeking back wages to court to testify. *See Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."). There is no precise do-or-die percentage of the workforce that must appear. Rather, the law merely provides that the Secretary can rely on representative evidence and testimony and any existing records or documentary evidence to establish a pattern of violations affecting non-

---

[5]    *See E. Penn Mfg. Co.*, 555 F. Supp. 3d at 113 (granting summary judgment in favor of the Secretary regarding East Penn's failure to keep adequate records).

testifying employees. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 441, 455–59 (2016); *Selker Bros*, 949 F.2d at 1298. East Penn must then "rebut the existence of the violations ... or ... prove that individual employees are excepted from the pattern or practice." *Gateway* Press, 13 F.3d at 702 (internal citation omitted); *see Mt. Clemens Pottery*, 328 U.S. at 687–88 (Employer must counter with "evidence *of the precise amount of work performed* or with evidence to negative the reasonableness of the inference to be drawn from the employees evidence.") (emphasis added). If East Penn fails to do so, the jury may then award damages to all injured employees, "even though the result *may be only approximate*." *Mt. Clemens Pottery*, 328 U.S. at 688; *see Selker Bros.*, 949 F.2d at 197–98 (emphasis added).

East Penn did not produce evidence of the precise amount of work performed[6] or prove that any individual employees awarded back pay are excepted from the violations—after all, East Penn maintained throughout the trial that it did not owe *any* back wages because *none* of the hourly, uniformed employees (testifying and non-testifying) completed unpaid compensable work.[7] Thus, judgment as a matter of law could only be appropriate if East Penn can show that, even considering the Secretary's low burden of proof, the trial record is so deficient that the jury's determination as to the amount and extent of unpaid work could not be based on "just and reasonable inference[s]."

East Penn's attempt to dispose of each "bucket" of evidence in isolated, piecemeal fashion is unsuccessful. Like the jury, the Court now considers the evidence all together. When viewed as

---

[6]     It would be surprising for East Penn to argue otherwise, considering that East Penn's *de minimis* argument rests almost entirely on its claim that it cannot possibly have reliably tracked the amount of time employees spent donning, doffing, and showering.

[7]     East Penn did not submit its own damages calculation, choosing instead to double-down on its arguments that the short amount of time any individual employee spends donning, doffing, and showering is well within the grace-periods allotted for those activities and, to the extent those activities take longer than five to ten minutes, that unpaid time is *de minimis. See* May 3, 2023 Trial Tr. at 203:18- 213:20.

a whole, the evidence presented at trial addressed all 24 plants and provided sufficient grounds for the jury to award a verdict in favor of the 11,780 uniformed employees.[8]

East Penn first attacks the Secretary's "representative employee evidence," arguing the employee testimony offered at trial was numerically and substantively insufficient to "fairly represent" the non-testifying employees. According to East Penn, the Secretary did not "achieve a representative sample" of hourly, uniformed employees because the Secretary called only 39 employees—0.33% of the relevant workforce—to testify.[9] Doc. No. 638-1, at 5–6. This low percentage is allegedly insufficient because "[w]hile there is no bright-line test of what percentage of employees is necessary . . . the Secretary has admitted that she has to meet the 2.7% blessed in *Mt. Clemens Pottery*." Doc. No. 638-1, at 5 (quoting Apr. 5, 2023 Trial Tr. at 120:21-121:1 (Mr. Hampton)). But with this, East Penn gives away the game: *there is no bright-line test requiring a*

---

[8]     The trial record contains sufficient evidence from which the jury could reasonably and justly infer how long employees took at each plant to complete clothes-changing and showering activities, and the extent to which those activities occurred on paid or unpaid time. Every single plant is represented by (1) employee testimony at trial; (2) Dr. Radwin's time study; (3) the 756 employee declarations; and/or (4) security footage. Additionally, the Secretary presented East Penn's relevant policies and procedures, which applied to uniformed employees at all 24 plants. East Penn challenges several of these "buckets" of evidence by arguing something to the effect of: "this evidence does not address specifically the issue of 'paid or unpaid time,' and therefore it cannot have assisted the jury in reaching its verdict." *See e.g.*, Doc. No. 638-1, at 22–23. But just because the words "paid or unpaid time" do not appear in, for example, the 756 employee declarations, does not mean such evidence is irrelevant to the jury's verdict. The 756 employee declarations conceivably could have provided the jury with a reasonable basis to infer that uniformed employees spent generally the same amount of time donning, doffing, and showering, supporting its decision to issue a lump-sum award to uniformed employees at all the plants. *See* PX-2; *see also East Penn Mfg.*, 555 F. Supp. 3d at 118 ("[T]he Court has reviewed the contents of employee declarations that include estimates of the amount of time to don a uniform and walk to their workstations. Without weighing the credibility of these declarants, the Court notes a pattern among employees who attest to spending between three and nine minutes on these activities."). Likewise, recognizing that Dr. Radwin may be unimpressive to some, that does not mean the jury could not have overlooked his less compelling style, commentary, and characteristics and accepted features of his conclusions.

[9]     East Penn is dismissive of the fact that some of these testifying employees were team-leaders who testified not only about their own donning, doffing, and showering activities, but also about what they observed their team-members do. *See e.g.*, March 14, 2023 Trial Tr. PM Test. at 94:4–95:1 (testimony of Mr. Seyfried, supervisor of 30–40 employees, about observing employees in three plants clocking in and out in full uniform).

*certain percentage of employees to testify.*[10] And counsel's statements at trial cannot create a statutory or judicially declared rule that does not otherwise exist.[11] While certainly not endorsing a .33% measurement for use in other cases, in this particular case the quantity of the workforce-witnesses, given the quality of the testimony, is sufficiently representative.

East Penn's substantive challenge to the employee testimony is also unsuccessful. Making what is an entirely appropriate, quintessentially jury argument for a closing, East Penn asserts to the Court now that the small number of employees who did testify gave testimony that "varied widely," thus undermining their status as "representative witnesses" of the alleged overtime violations. *See* Doc. No. 638-1, at 8. To illustrate the allegedly problematic variations, East Penn offers a chart, spanning multiple pages of its brief, tracking each employee's testimony about how long it takes for him or her to don, doff, and shower. *See* Doc. No. 638-1, at 12–19. As impressive as this chart looks at first glance, it can be more harmful to East Penn's argument than helpful: it shows alleged variances in donning, doffing, and showering times "roughly consistent" with the degree of variation permitted in *Bouaphakeo* and *Mt. Clemens. See Bouaphakeo*, 577 U.S. at 456

---

[10]     *See e.g., Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 926 n. 20 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990), and *aff'd sub nom, Appeal of Solid Waste Servs., Inc.*, 897 F.2d 524 (3d Cir. 1990); *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 66–68 (2d Cir. 1997) (2.5% of employees testified); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982) (2.4% of employees testified); *Morgan v. Family. Dollar Stores, Inc.*, 551 F.3d 1233, 127677 (less than 1% of employees testified).

East Penn also relies on a quote from *Bouaphakeo*: "'[r]epresentative evidence that is statistically inadequate … could not lead to a fair or accurate estimate of the uncompensated hours an employee has worked.'" *See* Doc. No. 638-1, at 4 (quoting *Bouaphakeo*, 577 U.S. at 459. But this statement about statistical adequacy "was made in the context of the *admissibility* of representative evidence." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 401 (6th Cir. 2017) (emphasis added) (citing *Bouaphakeo*, 577 U.S. at 1049 (citing *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579 (1993))). East Penn is not challenging the admissibility of the employee testimony, but rather its sufficiency as representative evidence once admitted into the record.

[11]     Counsel's alleged intemperate or arguably bombastic invocation of this "2.7% threshold" can be seen as irrelevant to the resolution of this Motion because counsel mentioned the Secretary's "obligation" after the jury had been excused. *See* Apr. 5, 2023 Trial Tr. at 112:5–9, 116:22–23, 138:13–16.

(citing *Mt. Clemens*, 328 U.S., at 685) ("The variance in walking time among workers [in *Mt. Clemens*] was alleged to be upwards of 10 minutes a day, which is roughly consistent with the variances in donning and doffing times here."); *see also Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1064 (6th Cir. 2019) (holding that, although employee witnesses offered inconsistent accounts of the exacts days and hours of overtime, the Secretary established "as a matter of just and reasonable inference" the amount of uncompensated overtime.).[12] The variances are not significant enough to disqualify the employee testimony from being considered as representative evidence; the jury was free to rely, to whatever extent it did, on this testimony in reaching its verdict.[13]

---

[12]    East Penn asserts that "because each employee's routine is different day-to-day and different from one another, the small fraction of testimonial evidence presented in this trial cannot be extrapolated to 24 different plants and 11,780 different employees." Doc. No. 638-1, at 9–10. This is so because, according to East Penn, "some employees chose to arrive an hour or more earlier" or "spen[d] this extra time on personal activities such as sitting in the cafeteria," or that "some days employees chose to change into their uniform and clock in later, whereas other days they chose to clock in first and change afterwards." *Id.* at 9. But a close read of *Bouphakeo* and *Mt. Clemens* reveals that the question is whether the work *at issue* varies significantly from employee to employee. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (citing *Mt. Clemens*, 328 U.S., at 685) ("The variance in *walking time* among workers [in *Mt. Clemens*] was alleged to be upwards of 10 minutes a day, which is roughly consistent with *the variances in donning and doffing times here*.") (emphasis added). Here, the Secretary sought damages for unpaid donning, doffing, and showering activities—not time spent reading the newspaper or sitting in the parking lot before shift. The employees who testified at trial reported that they spent around 2-10 minutes changing into their uniforms (except for one employee, who claimed he needed 20-25 minutes) and 2-15 minutes doffing and showering. Doc. No. 638-1, at 12–19. In other words, as demonstrated by East Penn's own chart, the apparent variance in time spent donning, doffing, and showering in this case is "roughly consistent" with the variances allowed in *Mt. Clemens* and *Bouaphakeo*. A restricted range, much less precise identity, either person-to-person or in a single person's day-to-day behavior, is not required or reasonable to expect. Clearly, the jury did not demand any such thing.

[13]    East Penn's arguments on this point are inconsistent. On the one hand, East Penn asserts that the verdict cannot stand because the employees testified that they exercised personal choice as to their routines and sometimes donned, doffed, and showered on paid time. But with the same breath, East Penn acknowledges that the lesser verdict award (as compared to what the Government sought) would seem to reflect that the jury agreed with East Penn that some of the activities at issue were in fact completed on paid time. *See* Doc. No. 645 at 24. In this regard, it seems that East Penn really takes issue with the Secretary's *characterization* or *interpretation* of the verdict, not the verdict itself. *See* Doc. No. 645 at 24–25 ("[T]he jury appeared to largely agree with East Penn's position, awarding only approximately 5 ½ minutes per day of unpaid time. The Secretary seems to take the verdict as a sign that the jury imposed damages for the grace period. However, any such interpretation of the verdict is inconsistent with all of the employee testimony that they *used* the grace period."). Or, rather, East Penn is unhappy with the idea of a verdict that

East Penn next attacks the jury's verdict to the extent it was based on Dr. Radwin's time-study because, according to East Penn, that study is not an additional source of representative evidence because Dr. Radwin studied "only eight plants." Many of East Penn's challenges to Dr. Radwin and his study boil down to understandable arguments about credibility and weight, but because the Court already determined that Dr. Radwin's study is admissible,[14] "its persuasiveness is, in general, a matter for the jury." *Bouaphakeo*, 577 U.S. at 459. That East Penn is again challenging the persuasiveness of Dr. Radwin's testimony is underscored by East Penn's references to the testimony of its own expert witness, Dr. Fernandez, who also examined the subjects studied by Dr. Radwin. *See* Doc. No. 638-1, at 21. According to East Penn, Dr. Fernandez's "unrebutted testimony" "established that Dr. Radwin's eight-plant average cannot be applied to any particular plant." *Id.* The jury was presented with the testimony of both experts and apparently made some determination about the credibility and/or persuasiveness of those experts— whether agreeing or not with any given assessment of the experts, the Court may not now "weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 492 (3d Cir. 2002).

---

seems to have bought into the Secretary's damages model, but such an argument is very much cherry-picking by East Penn. On the face of East Penn's own arguments in favor of judgment as a matter of law, it would appear that the verdict is not wholly unmoored from the evidenced adduced at trial, but is instead the product of just and reasonable inference.

[14] The Court denied East Penn's "*Daubert*" motion, Doc. No. 171, which sought to exclude Dr. Radwin's expert opinion testimony. *See* Doc. No. 239. In that motion, East Penn challenged the admissibility of Dr. Radwin's testimony and report for many of the same reasons it takes issue with the "sufficiency" of that study at this juncture. Specifically, both in this Motion and in East Penn's *Daubert* motion, East Penn faults Dr. Radwin for calculating one average, to then be extrapolated to other plants, based on data purportedly collected from a subset of the plants. *Compare* Doc. No. 638-1, at 20 *with* Doc. No. 171-1, at 29–33. But, as this Court noted in denying the *Daubert* motion, this criticism goes toward the *weight* of Dr. Radwin's testimony. Of course, "[r]easonable minds may differ as to whether the average time [Dr. Radwin] calculated is probative of the time actually worked by each employee. Resolving that question, however, is the *near-exclusive* province of the jury." *See Bouaphakeo*, 577 U.S. at 459 (emphasis added). In that regard, it appears that the jury may have accepted some aspect of the Radwin material. The Court offers no commentary on whether the newly amended Federal Rule of Evidence 702 might raise the bar for a future matter of a similar nature.

East Penn also argues that, because the damages model submitted to the jury "relied entirely on Dr. Radwin's study," the jury "had no substantial basis in evidence to make its damages award." Doc. No. 638-1, at 21–22. [15] This argument is unsuccessful for several reasons. First, East Penn misstates the test by a rather significant measure: to survive a Rule 50(b) motion, the damages award need not have a "*substantial basis* in evidence." The question is whether the record is "critically deficient of that *minimum quantum of evidence* from which a jury might *reasonably* afford relief." *Patzig v. O'Neil*, 577 F.2d 84, 846 (3d Cir. 1978) (quoting *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir. 1969)) (emphasis added). And the record here is not so critically deficient: the Secretary presented several different "buckets" of representative evidence, including (but not limited to) Dr. Radwin's testimony, from which the jury could reasonably approximate the amount of unpaid work occurring across all 24 plants and then calculate damages commensurate with that approximation. *Cf. Mt. Clemens Potter*, 328 U.S. at 687–88.

Second, East Penn's description of Dr. Radwin's study may be somewhat unfairly reductive because although he only studied eight plants, the sample of employees studied in those plants covered 80% of *all* uniformed workers on the Lyon Station campus. March 27, 2023 Trial Tr. at 190:7–23. And Dr. Radwin testified that his study was designed to be representative of the entire uniformed employee population. *Id.* at 187:20–190:23. Considering that Dr. Radwin's study relied on a sample encompassing most of the uniformed employees, it is not inherently unreasonable or unjust for the jury to credit Dr. Radwin's study as sufficiently representative and reference it (to whatever extent it did) in calculating damages. *Cf. Tyson Foods, Inc.*, 577 U.S. at 456–57 (juries may reasonably infer hours worked from a study similar to Dr. Radwin's so long

---

[15]     Although a bit beside the point, the Court notes that in attacking the verdict in this manner, East Penn is attempting to have its cake and eat it too because East Penn did not submit its own damages model. The Court will not grant a Rule 50(b) motion based on an alleged issue with the verdict traceable to the movant's own trial strategy.

as the court determined it is admissible and did not conclude that "no reasonable juror could have believed that the employees spent roughly equal time donning and doffing.").

Finally, East Penn's arguments that a verdict based on Dr. Radwin's study would be improper are belied by the actual verdict awarded. The jury awarded only a modest portion of the damages sought by the Secretary based on Dr. Radwin's calculations, so the jury did not simply rubber-stamp the Secretary's damages model[16] or take at face-value Dr. Radwin's conclusions. In other words, the Court cannot overturn the jury's verdict awarding $22.2 million in damages "to the extent it was based on Dr. Radwin's study" because it is not clear that the jury relied substantially, if at all, on Dr. Radwin's calculations in awarding that amount. The Court has neither a time-machine nor a scrivener's mirror, and thus cannot determine with any certainty how, if at all, Dr. Radwin influenced the jury's award. Nor would it be of any help to East Penn if the Court could indeed divine the jury's thought process, as long as it does not present itself as patently unreasonable or irrational. For the reasons described above, Dr. Radwin's testimony and study constitute admissible representative evidence and it would not be unreasonable or unjust for the jury to infer from Dr. Radwin's study (and the rest of the record) $22.2 million in unpaid work across all 24 plants for the time period at issue in the trial.

In sum, none of the "issues" identified by East Penn with each "bucket" of evidence are enough to counteract the resonance among the witnesses and the evidence that hourly, uniformed employees at all 24 plants were subject to the same pay practices. This resonance is further reinforced by the fact that the testifying and non-testifying employees were all subject to the same

---

[16]    Paradoxically, East Penn takes issue with the jury's decision to award less than the Secretary's back wage computation. But, as the Secretary points out, there is no case law to support East Penn's argument that a jury is not allowed to award less than the Secretary's proffered back wage computation. *Cf. Bouaphakeo*, 577 U.S. at 451–52 (leaving undisturbed verdict of less than half of the damages requested, despite employer challenge).

pay and uniform policies that provided insufficient time to complete clothes-changing and showering activities on East Penn's campus. The core of East Penn's argument for overturning the verdict is really that the Secretary did not prove with precision the *exact* amount of unpaid work that occurred. The Court must remind East Penn of its own failure to have the records that would have allowed for greater precision or exactitude. East Penn can hardly expect to succeed with an audacious argument that it should benefit from its own poor recordkeeping. An approximate award is not only appropriate in the absence of accurate records, *see Mt. Clemens Potter*, 328 U.S. at 687–88, but necessary to ensure that employees are not further harmed by their employer's inadequate recordkeeping practices by making proving damages an "impossible hurdle." *See id.* This is why the burden was on East Penn, not the Secretary, to present "evidence of the precise amount of work performed or [counter] with evidence to negative the reasonableness of the inference to be drawn from the employees evidence." *See Mt. Clemens Potter*, 328 U.S. at 687–88. "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the [Act]." *Id.* at 688.

For the reasons discussed above, East Penn's unsuccessful, piecemeal attack of each "bucket" of evidence does not negate the reasonableness of the jury's verdict.

## B. The Evidence Supports the Jury's Determination that the Unpaid Overtime Was Not *De Minimis*

East Penn also seeks to overturn the jury's verdict on the ground that there is substantial evidence that any unpaid work that occurred was *de minimis* as a matter of law. If *de minimis*, then the employer can avoid liability.

The three factors for determining if otherwise compensable time is *de minimis* are: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of

compensable time; and (3) the regularity of the additional work." *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007) (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)). The *de minimis* doctrine applies "only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." *De Ascencio*, 500 F.3d at 374 (quoting 29 C.F.R. § 785.47). The Court ruled at the summary judgment phase of this case that the donning, doffing, and showering activities are indeed regular. *East Penn Mfg. Co.*, 55 F.Supp.3d at 119. East Penn asserts that, despite the Court's ruling on regularity, the time spent on these activities is *de minimis* as a matter of law because "the aggregate amount of unpaid compensable time is within 10 minutes" and "the only evidence adduced supports East Penn's position that accurately capturing the time at issue is not administratively practicable." Doc. No. 638-1, at 29.

As an initial matter, there is, of course, no bright line or even arbitrary rule that ten minutes a day is *de minimis*.[17] *See e.g., Peterson v. Nelnet Diversified Sols., LLC*, 15 F.4th 1033, 1036, 1047 (10th Cir. 2021) (stating that two minutes, worth $0.48, per shift is not *de minimis* in the aggregate). Rather, the *de minimis* defense[18] involves balancing the three factors, only one of

---

[17]       The Court of Appeals for the Third Circuit has stated that courts should follow the letter of this prong and should actually consider the *aggregate* amount of unpaid time. *See De Asencio*, 500 F.3d at 375. Such an approach can be particularly appropriate where, as here, the district court cannot determine with any certainty exactly how much unpaid time the jury found for each individual employee—East Penn appears quite certain that, based on the verdict, the jury determined an amount of 5 and a half minutes per employee, but as far as the Court can divine, that is only a reverse-engineered guess.

[18]       East Penn takes issue with this characterization of the *de minimis* rule, arguing that it is not a defense to liability, but is instead an element of the Secretary's case and, therefore, her burden to prove that the unpaid time is not *de minimis*. The Court has already rejected this "on its head" argument. *See East Penn Mfg. Co.*, 2021 WL 4215503, at *2 (E.D. Pa. Sept. 16, 2021) (first citing *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011), then citing *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 372 (4th Cir. 2011). Because neither the Court of Appeals for the Third Circuit nor the Supreme Court has decided whether the *de minimis* doctrine is a defense at all, the Court properly considered persuasive authority from the Seventh and Fourth Circuits on this issue. The Court of Appeals for the Tenth Circuit has since joined these courts in placing the burden on the employer, further bolstering the Court's acceptance that the doctrine is a defense and, as a defense, lines up as a defendant's burden. *Nelnet Diversified Solutions, LLC*,

which deals with the aggregate amount of unpaid time. *Compare Peterson*, 15 F.4th at 1049 (two minutes per day was not *de minimis* because the regularity of the work and the employer's ability to track the time outweighed the relatively short time) *with Lindow*, 738 F.2d at 1064 (finding that although the aggregate amount of unpaid time was high, the practical administrative difficulty rendered that work *de minimis*); *see also Sec'y Dept. of Labor v. Mosluoglu, Inc.*, No. 22-2749, at 8 n.6 (3d. Cir. 2023) ("Depriving wage earners of thousands of dollars over a three-year period is not de minimis, and [the employer] does not support its contentions with any persuasive legal arguments."). Thus, seen through one lens, the Court's determination that the donning, doffing, and showering activities were regular (and, thus, mounting without interruption) could in of itself support the jury's finding that the unpaid work was not *de minimis* as a matter of law. *See Peterson*, 15 F.4th at 1048–49; Final Jury Instructions pp. 24–25, May 4, 2023 Trial Tr. at 28:14–22.

East Penn incorrectly asserts that, with respect to the administrative practicality factor, "the only evidence adduced supports East Penn's position that accurately capturing the time at issue was not administratively practicable." Doc. No. 638-1, at 29. On the contrary, the evidence presented at trial tracks closely with the evidence in *Mountaire Farms*, in which the Fourth Circuit Court of Appeals rejected the employer's claim of great administrative difficulty because "the time expended in [preshift and postshift donning and doffing] is not so miniscule that it would be difficult to measure" and the employer "already ha[d] a timekeeping system" that could be modified to track that time. 650 F.3d at 374–75; *see also* Doc. No. 638-1, at 29 (not disputing that East Penn uses time clocks that can record time down to the minute). Here, on this issue, it appears really to be a question of perspective: is not "administrative difficulty" really primarily a question of assessing the value and importance of an activity? For one side, it is easy to be dismissive

---

15 F.4th at 1042-43 ("It is the employer's burden to show that the de minimis doctrine applies.") (citing *Kellar*, 664 F.3d at 176).

because it would be too much trouble to do something. For the other side, the reward might well relieve some trouble in the recipient's life. No court has yet definitively drawn a line at "too much trouble." While the Court does not suggest that the test is or should be "Is it possible at all?" nor does the Court see the factor as being so easily met as allowing an employer to engage in hyperbole when the matter is really one of undesirable inconvenience.

In any event, the jury here could have rejected East Penn's arguments—just like the Fourth Circuit Court of Appeals did in *Mountaire Farms*—that to track this time, the employer would be "compelled to 'micromanage' the amount of time employees spend donning and doffing to ensure that the employees are not wasting time during these activities." 650 F.3d at 374–75; *see also* Doc. No. 638-1 ("At the same time, the Secretary had no answer to the testimony of [East Penn's] witnesses . . . who explained the difficulties in enforcing a policy requiring employees to be in the locker room dressing and showering only at set, strictly enforced times, including difficulty in monitoring whole shifts of employees in the locker rooms."). Just like the employer in *Mountaire Farms*, East Penn was "free to set policies restricting the employees' nonessential conduct during the donning and doffing process." 650 F.3d at 375. The Court will not disturb the jury's finding that the amount of unpaid back wages was not *de minimis*.

## II.     New Trial Under Fed. R. Civ. P. 59(a)

"The court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial can be granted "purely on a question of law," "on a matter that initially rested within the discretion of the court, *e.g.,* evidentiary rulings or prejudicial statements made by counsel," or because "the jury's decision is against the weight of the evidence." *Klein v. Hollings*, 992 F.2d 1285, 1289–90 (3d Cir. 1993)

(internal citations omitted). "The authority to grant a new trial resides in the exercise of sound discretion by the trial court ...." *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995). And that discretion is broad if the stated reason for a new trial is "a matter that initially rested within the discretion of the court." *Klein*, 992 F.2d at 1289–90.

East Penn argues that it is entitled to a new trial because: "(1) several of the Court's jury instructions constituted legal error that could have confused or misled the jury; (2) the Court erred by failing to bifurcate the trial by plants and including a lump sum damages question on the verdict form; and (3) statements made by Secretary's counsel throughout the trial were unduly prejudicial and constituted impermissible vouching for the Department of Labor's own employees who testified." Doc. No. 638-1, at 10. East Penn also asserts that it is entitled to a new trial because, for the reasons described in support of its Rule 50(b) Motion, the "great weight of the evidence is contrary to the jury's determination" regarding the issue of unpaid overtime for hourly, uniformed employees. [19] *Id.* at 31.

The Secretary counters by arguing that East Penn is not entitled to a new trial based on alleged errors in the jury instructions because (1) East Penn did not properly preserve its objections

---

[19]     Following the lead of the parties, the Court will not focus a great deal of attention on this argument. Although a new trial may be granted even where the evidence is legally sufficient to support the verdict, *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735–36 (3d Cir. 1988), the Court of Appeals for the Third Circuit has cautioned that courts should grant a new trial on the basis that the verdict is contrary to the weight of the evidence "only where a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). "This stringent standard is necessary 'to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus. Inc.*, 278 F.2d 79, 90 (3d Cir. 1960) (en banc). As discussed at length above, the Secretary was only required to prove the overtime violations as a matter of "just and reasonable inference." And the Secretary produced sufficient evidence to show by a preponderance of the evidence that hourly, uniformed employees at all 24 plants were subject to the same pay practices. East Penn has not pointed to any specific material evidence that it believes the jury ignored, and instead appears to stand on its argument that the Secretary simply did not make her case, at least to East Penn's satisfaction. The Court, however, is satisfied that the verdict was not "contrary to the weight of the evidence." *Williamson*, 926 F.2d at 1352.

to these instructions[20] and (2) the instructions accurately and fairly set forth the current status of the law and properly apprised the jury of the issues.

## A. The Jury Instructions Were Fair and Adequate

East Penn challenges three instructions. First, East Penn asserts that the Court erred by instructing the jury that "[t]he amount of damages is the difference between the amount you conclude that East Penn employees should have been paid and the amount they were paid, if that is less than the amount you conclude should have been paid." Doc. No. 638-1, at 32. According to East Penn, this instruction is erroneous because it "failed to articulate the reasonable time standard for damages that the Court embraced at summary judgment. In particular, the instruction did not mention excluding time spent on personal activities." *Id.* At summary judgment, the Court did connect "reasonableness" with the calculation of damages: "To the extent that the concept of 'reasonableness' permeates this case, it is limited to the calculation of damages once liability is established." *East Penn Mfg. Co.*, 555 F. Supp. 3d at 11. But this sentence is by no means a "ruling" that the appropriate measure of damages is the reasonable *time* spent on the compensable activities at issue.[21] That East Penn hangs its hat on this *flexible* reading of dicta in the Court's summary judgment opinion is telling: East Penn cannot point to any cases that would require the Court to instruct the jury using East Penn's "reasonable time" standard for calculating damages. Moreover, the Court is not convinced that the jury required explicit instruction that East Penn did not have to pay for time spent on personal activities. For one thing, when read as a whole, the jury instructions draw a clear line between what might constitute compensable "work" and what would not. And

---

[20]    East Penn did properly preserve its objections by "stating distinctly the matter objected to and the grounds of objection" before the jury begins deliberations. *See* Fed. R. Civ. P. 51(c)(1); *see also* May 4, 2023 Trial Tr. at 48:25–49:10, 49:20–50:7.
[21]    Rather, the Court was alluding to the fact that, to support her claim for damages, the Secretary has the burden of producing evidence sufficient to show the amount and extent of uncompensated work "as a matter of just and *reasonable* inference." *Mt. Clemens Pottery Co.*, 328 U.S. at 687–88 (emphasis added).

the verdict itself reflects that the jury understood that only certain activities—even if performed on East Penn's premises—are compensable. *See* Verdict Form, Doc. No. 589 (finding that time spent donning and doffing PPE is not compensable). In sum, the instruction regarding the calculation of damages accurately and fairly sets forth the current status of the law and presents the issues of the case without confusing or misleading the jury.

East Penn next argues that the Court erred by instructing the jury that the *de minimis* doctrine is an affirmative defense for which East Penn had the burden of proof. According to East Penn, this is an error because "courts within the Third Circuit have explained that the *de minimis* concept is part of the plaintiff's burden of proof with respect to liability." Doc. No. 638-1, at 33. But, as discussed above, the Court is not bound by the decisions of other trial courts in the Third Circuit, and, in the absence of binding caselaw holding otherwise, the Court may turn to persuasive authority in other courts of appeals and properly determine that the *de minimis* doctrine is an affirmative defense. Thus, the challenged instruction is consistent with the law of the case, *see East Penn Mfg. Co.*, 2021 WL 4215503, at *2, and with recent decisions by the courts of appeals in the Seventh, Fourth, and Tenth Circuits. *See Kellar*, 664 F.3d at 176; *Mountaire Farms*, 650 F.3d at 372; *Nelnet Diversified Solutions*, 15 F.4th at 1042–43 ("It is the employer's burden to show that the de minis doctrine applies."). Consequently, the jury instruction used in this trial regarding the *de minimis* defense was not erroneous and certainly not a violation of any controlling authority.

Finally, East Penn takes issue with "the inclusion of 'documentary evidence' as a type of representative evidence" in the jury instruction regarding the Secretary's burden of proof. Doc. No. 638-1, at 35. East Penn asserts that by including "documentary evidence" within the definition of representative evidence, the instruction "incorrectly implies that the Secretary could rely on these types of documents to shift her burden of proof under *Mt. Clemens*." *Id.* at 35–36. But in this

situation, "documentary" vs. "representative" is a distinction without a difference: there is nothing in *Mt. Clemens*, or subsequent cases dealing with *Mt. Clemens* burden-shifting, to prevent the jury from considering any and all evidence properly admitted at trial, regardless of whether lawyers would label that evidence "representative" or "documentary." *Cf. Bouaphakeo.*, 577 U.S. at 454–55 ("A representative or statistical sample, *like all evidence*, is a means to establish or defend against liability.") (emphasis added). In other words, to the extent the Court "erred" by including "documentary evidence" within the definition of representative evidence, that error was harmless. It was, after all, the advocates' jobs to present evidence to the jury—or to explain such evidence as there was—that would assist the jury on each issue in dispute, including damages. Whether this jury had crystal clear or only opaque evidence to use in the final analysis is a matter that the jury answered by rendering a verdict that is certainly the product of a calculation by it.

### B.  The Court Properly Declined to Bifurcate the Trial

East Penn is also not entitled to a new trial due to the Court's decision not the bifurcate the trial into over 20 "mini-trials." The Court has broad case management discretion in deciding whether to bifurcate, and an abuse of that discretion may only be found where the "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Bayside Prison Litig.*, 157 F. Appx. 545, 547 (3d Cir. 2005) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004)). East Penn argues that the Court should have bifurcated the trial by holding "mini-trials" for each individual plant because "the jury's verdict did not distinguish among plants in reaching" the damages figure.[22] *See* Doc.

---

[22]     East Penn also argues that the Court erred in including Question 4A on the verdict form, which asks the jury for a unitary damages number for all plants if the jury determined there was unpaid compensable time at all 24 plants. *See* Doc. No. 638-1, at 37. But the verdict form explicitly presented the jury with the opportunity to find that the Secretary had failed to establish unpaid, compensable work as to some facilities but succeeded in others. *See* Doc. No. 589, at 1–5. And, had the jury found that unpaid compensable time occurred only at a subset of plants, it was instructed to designate what sum of money

No. 638-1, at 36. The lump-sum award is a problem, according to East Penn, because Article III of the U.S. Constitution does not give federal courts power to award relief to uninjured persons, and some employees at some plants might not actually have engaged in unpaid work. *See* Doc. No 645 at 45 (citing *Bouaphakeo*, 577 U.S. at 463-64 (Roberts, C.J. concurring)). But this argument is premature, and is instead properly raised in "a challenge to the proposed method of allocation," not in a Rule 59(a) Motion. *Bouaphakeo*, 577 U.S. at 461 ("[T]he question whether uninjured class members may recover is one of great importance . . . It is not, however, a question yet fairly presented by this case, because the damages award has not yet been disbursed, nor does the record indicate how it will be disbursed.").

Moreover, holding "mini-trials" for each plant here would not have been the least bit sensible, convenient, or expeditious. *See* Fed. R. Civ. P. 42(b) (instructing that a court may order a separate trial for, in part, convenience). Many, if not most, of the witnesses and experts would have been called to give duplicative testimony—perhaps over 20 times—and the Court would have expended judicial resources calling up to 24 different jury pools and proceeding through *voir dire* on each panel (or would have impressed into service the same jury to serve in two dozen different trials). The impracticality of either scenario is overwhelming. The Court properly exercised its discretion in declining to bifurcate the trial.[23]

## C. Statements Made by the Secretary's Counsel Do Not Necessitate a New Trial

Conduct by counsel only justifies a new trial where "he or she engaged in 'argument injecting prejudicial extraneous evidence' . . . such that the 'improper statements . . . so pervade[d]

---

would fairly compensate the uniformed employees at each individual facility in the chart on Question 4B. *Id.* at 4–5. Thus, the verdict sheet did allow the jury to tailor the damages awarded to each plant if the jury deemed that to be appropriate.

[23]    The Court also notes in passing that in spite of repeated invitations to counsel to propose alternative structures for trying this case, the lawyers did not ever demonstrate any interest or ability to work with each other or the Court to address economies or efficiencies in that regard.

the trial as to render the verdict a product of prejudice.'" *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 399 (3d Cir. 2016) (first quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 210 (3d Cir. 1992), then quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 96 (3d Cir. 1978)). "[A]n isolated improper remark will not support the grant of a new trial." *Fineman*, 980 F.2d at 208. Rather, the "test is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Id.* at 207.

East Penn asserts that it was unfairly prejudiced "by repeated comments by the Secretary's counsel that explicitly or implicitly suggested that East Penn acted in conformance with bad character." *See* Doc. No. 638-1, at 38. But as the Secretary points out, almost all of these statements allegedly implying "bad character" were related to the outstanding question of whether East Penn violated the FLSA willfully. *See e.g.,* March 14, 2023 AM Trial Tr. At 20:14–23; 25:4–7. Thus, these statements did not inject prejudicial extraneous evidence because they alluded to evidence probative of an issue still in dispute.[24] And, to the extent Secretary's counsel made "improper comments" not relevant to the question of willfulness, those remarks in the presence of the jury (without "counting" the countless comments during the long life of the case) were isolated and infrequent and not sufficient to support the grant of a new trial.[25]

---

[24]    The comments, while perhaps reflecting more on the speaker than on the opposing litigant, were not prejudicial—the jury found no willfulness.

[25]    The Court will also note that one of the comments complained of—an "accusation" that East Penn was "spreading lead dust" into workers' homes and the community—is an example of East Penn perhaps engaging in over-sensitive reading of opposing counsel's remarks. *See* March 14, 2023 AM Trial Tr. At 23:10–15 ("And just like East Penn, to protect itself from legal liability of spreading lead dust back into the workers' home and in the community, that employer also furnished locker room facilities and showers and required the men to take a shower and put on their uniform."). Additionally, counsel's reference to the "recordkeeping part of [the] case" was not prejudicial to East Penn because the comment did not indicate to the jury how the recordkeeping issue was resolved. Finally, the Court also rejects as a reason for a new trial East Penn's argument that it is entitled to a new trial because, at closing, the Secretary's counsel "improperly vouched" for the witnesses who work or worked for the Department of Labor. *See* May 3, 2023 Trial Tr. at 133:18–24. Again, isolated comments like these do not warrant a new trial, especially considering that these comments are swamped by the *two months' worth of evidence* presented during the trial. In any event, the Court repeatedly gave appropriate and rather pointed instructions that counsel's

### III.    Remittitur of the Damages Award

Finally, East Penn argues the Court should enter an order of remittitur reducing the verdict to $16,960,487.97 because the damages award purportedly fails to reduce the back wages calculation consistent with the jury's finding of no willfulness and no liability as to non-uniformed employees. *See* Doc. No. 638-1 at 44–47. East Penn supports this argument by pointing out that the only damages number presented to the jury—$106,414,764.85—was calculated assuming the jury would find willfulness and therefore include an extra year in the limitations period. *See id.* at 44–45.

"The rationalization for, and use of, the remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986). "Remittitur may be proper where the district court concludes that the evidence was too speculative to support the damages awarded by the jury." *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Comm'cns Sols., Inc.*, No. 15-cv-405, 2023 WL 4755109, at *20 (E.D. Pa. July 26, 2023). But the Court may reduce the jury award "only if the verdict is so grossly excessive as to shock the judicial conscience." *Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1038 (3d Cir. 1987) (internal citations omitted).

Here, the jury awarded $22,253,087.56, which is essentially 20% of the total amount of back wages sought by the Secretary. The award, therefore, is not "grossly excessive" in the most obvious sense. And despite East Penn's best efforts, *see* Doc. No. 638-1, at 45, neither party can truly determine formulaically how the jury actually reached its verdict—it is not particularly

---

opening and closing arguments and objections were not to be treated as evidence by the jury. *Vandenbraak v. Alfieri*, 209 F. App'x 185, 190 (3d Cir. 2006) ("[J]ury instructions can sufficiently negate any prejudice that might result from counsel's errant arguments to the jury.") (internal citations omitted). The Court is confident that by the end of the trial, the jurors were well-schooled in these advocates' techniques.

apparent mathematically from the record or the verdict itself that the jury award is clearly unsupported and/or excessive, and the Court will not reduce it simply because East Penn has submitted a series of its own, after-the-fact equations purporting to show that the jury *could* have awarded a lesser amount of back wages.[26]

CONCLUSION

For the reasons set out in this Memorandum, the Court denies East Penn's Motion for Judgment as a Matter of Law Under Rule 50(b) or, in the Alternative, for a New Trial Under Rule 59(a) or Remittitur Under Rule 59(e), (Doc. No. 638). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[26] As East Penn concedes, its own calculations do not clarify how the jury reached its number because there is a $250,034.67 difference between the award calculated using East Penn's interpretation of the jury's math and the actual amount awarded. *See* Doc. No. 638-1, at 45 n. 3. East Penn has not identified specific evidentiary deficiencies warranting remittitur, but is instead seeking to reduce the damages award based on its own, speculative calculations. The Court will also note that this is a matter of East Penn's own making. Initially, the parties proposed that the jury should decided the number of minutes, rather than the dollar amount of back wages owed, but at the Final Pre-Trial Conference, East Penn insisted that a monetary award was the only way to vindicate its Seventh Amendment rights. *See* Feb. 14, 2023 Tr. at 74:22–75:18. East Penn will not now "profit from the difficulty it caused." *Bouaphakeo*, 577 U.S. at 461–62.